**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

FOMETAL S.R.L.,
an Italian Limited Company,

                                                    **COMPLAINT**

            Plaintiff,

     -against-                                      Case No.:


KEILI TRADING LLC, a Washington Limited
Liability Company, MENDEL LEVITIN a/k/a MENDY
LEVITIN, an individual, RELIANCE STEEL &
ALUMINUM CO., a Delaware corporation, ADMIRAL
SERVICENTER COMPANY, INCORPORATED, a
Massachusetts Corporation, and O'NEAL FLAT ROLLED
MEATS aka METAL WEST LLC, a Colorado Limited
Liability Company

            Defendants.

---------------------------------------------------------------x



     PLAINTIFF FOMETAL S.R.L. ("Fometal"), by and through its undersigned counsel, files
this Complaint ("Complaint") against KEILI TRADING LLC ("Keili"), MENDEL LEVITIN
a/k/a MENDY LEVITIN ("Levitin"), RELIANCE STEEL & ALUMINUM CO. ("Reliance"),
ADMIRAL SERVICENTER COMPANY, INCORPORATED ("Admiral"), and O'NEAL FLAT
ROLLED MEATS aka METAL WEST LLC, ("Metal West") (collectively "the Defendants"")
avers as follows.

## <u>NATURE OF THE ACTION</u>

     Plaintiff Fometal brings this action against individual and corporate defendants who have
engaged in a scheme to defraud Plaintiff Fometal. Plaintiff Fometal files this complaint against
Defendants Keili, Levitin, Reliance, Admiral, and Metal West for a claim under the United States

Nations Convention on Contracts for the International Sale of Goods, breach of contract, common law fraud, conversion, unjust enrichment, tortious interference with contractual relations, civil conspiracy, for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act (18 U.S.C. § 1961–1968), piercing the corporate veil, account stated and respondent superior. Defendants Admiral, and Metal West with the assistance of Defendant Levitin and entities under his control including Defendant Keili have engaged in a series of fraudulent acts and deceitful conduct that has caused substantial damage to the Plaintiff.

Defendants' scheme to defraud and unlawfully take possession of Plaintiff's shipped goods and related improper acts, encompass numerous predicate acts listed in 18 U.S.C. § 1961. These include without limitation theft from interstate shipment, relating to fraud and related activity in connection with identification documents, and relating to wire fraud. In furtherance of their illicit scheme, Defendants used the internet, e-mail, interstate wires, and engaged in monetary transactions derived from specified unlawful activity.

### PARTIES

1.      Pursuant to corporate records filed with the Companies' Register of Rome under the registration Fiscal Code and VAT no 00899720676, Plaintiff Fometal Srl is a foreign corporation for profit organized under the laws of Italy with its principal place of business located at C.da Valle Cupa, 64010 Colonnella, Teramo, Italy.

2.      Plaintiff's operations are located in the State of Italy.

3.      Pursuant to corporate records filed with the Secretary of State of the State of Washington, Defendant Keili is a limited liability company organized under the laws of the State of Washington, with its principal place of business located at 4027 NE 60th St., Seattle, Washington 98115.

4.      Pursuant to corporate records filed with the Secretary of State for the State of Washington, Defendant Keili is a single member limited liability company with Defendant Levitin being its sole member.

5.      Upon information and belief, Defendant Levitin is domiciled in the borough of Brooklyn, the City of New York in the State of New York.

6.     Upon information and belief, Defendant Keili is owned and controlled by Defendant Levitin and is the alter ego of Defendant Levitin through which he holds investments and conducts transactions.

7.     Defendants Keili and Levitin at all material times acted as the agents on behalf of Defendants Admiral and Metal West regarding each of the transactions the subject of this lawsuit. A copy of correspondence and a signed purchase order evidencing this is annexed as Exhibit A.

8.     Pursuant to corporate records filed with the Secretary of State of the State of Massachusetts, Defendant Admiral is a corporation organized under the laws of the State of Massachusetts, with its principal place of business located at 11 Forbes Road, Woburn, Massachusetts 01801.

9.     Pursuant to corporate records filed with the Secretary of State of the State of Massachusetts, Defendant Admiral has one of its regional offices located in Albany at Northeast Industrial Park, 2 Van Buren Blvd, Guilderland, New York 12085.

10.    Pursuant to corporate records filed with the Secretary of State of the State of Delaware, Defendant Reliance is the successor in interest to Defendant Admiral since on or about December 14, 2021, after the acquisition of Defendant Admiral by Defendant Reliance.

11.    Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Metal West is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 1229 S. Fulton Avenue, Brighton, Colorado 80601.

12.    Plaintiff is informed and believes that at all times mentioned herein, each of the Defendants was the agent, employee, and partner of each of the remaining defendants, and was acting within the scope and authority of such agency, employment, and partnership and with the knowledge, consent, approval, and ratification of the remaining defendants, and each of them.

13.    Plaintiff is informed and believes that any limited liability companies affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

14.     Plaintiff is informed and believes that any corporations affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

15.     Plaintiff is informed and believes that any general partnerships affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

16.     Plaintiff is informed and believes that any limited liability partnerships affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

17.     Plaintiff is informed and believes that any individuals affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

18.     Plaintiff is informed and believes that at all times mentioned herein, there has existed a unity of interest and ownership between Defendant Levitin and Defendant Keili such that any individuality or separateness between Defendant Levitin and Defendant Keili has ceased and Defendant Keili is now a mere shell and alter ego of Levitin in that Levitin controlled and dominated Keili's business affairs and organized and operated Keili as a mere extension and subsidiary of his personal business endeavors.

## JURISDICTION AND VENUE

19.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000).

20.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C § 1331(a), as federal subject-matter jurisdiction exists because the Plaintiff's claims arise under 18

U.S.C. § 1962 and the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), a treaty of the United States.  Under CISG Article 1, the Convention is applicable to commercial contracts for the sale of goods between parties who operate as industry merchants and whose places of business are in different signatory nations.

21.    The United States of America signed the CISG on August 31, 1981, and the Senate ratified it on December 11, 1986.

22.    Italy signed the CISG on September 30, 1981, and ratified it on December 11, 1986.

23.    The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Civil Procedure in circumstances where Defendant Metal West retained the services of Defendant Levitin to act as their broker and agent in the transactions complained of within. See Exhibit A.

24.    The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Civil Procedure in circumstances where Defendant Admiral retained the services of Defendant Levitin to act as their broker and agent in the transactions complained of within. See Exhibit A.

25.    Upon information and belief, Defendant Levitin is a citizen of the State of New York having his domicile in Brooklyn, New York, in the State of New York.

26.    The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Civil Procedure in circumstances where the Defendants have availed themselves of the laws of the jurisdiction of this Court during the time period complained of in these proceedings.

27.    Defendant Admiral has its regional offices in Albany in the State of New York.

28.    Defendant Reliance acquired Defendant Admiral and acquired Defendant Admiral's regional offices in Albany in the State of New York.

29.    Defendant Reliance avails itself of the laws of the state of New York by virtue of Defendant Reliance's status as a publicly-traded corporation trading on the New York Stock Exchange.

30.     Venue is proper under 28 U.S.C. §1391(b)(2) as all or substantially all of the incidents alleged herein giving rise to the claims asserted occurred within the territorial jurisdiction of this Court. To the extent any Defendant may reside outside of this district, the ends of justice require such Defendant or Defendants to be brought before this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

31.     The RICO enterprise consists of Defendant Keili.

32.     As stated on its website, since 2002, "Defendant Keili facilitates the logistics of importing hundreds of containers each year into North America, Europe, and the UK the company is engaged in global sourcing of metal products…..all without having to compromise on quality or service!"

33.     As will be more thoroughly discussed throughout this Complaint, Defendants each committed, directed, or otherwise participated in the alleged RICO acts by utilizing Keili as a front.

34.     On or about November 27, 2018, Defendants Keili and Levitin were retained by three customers based in the United States of America being Primrose Alloys, and the Defendants Metal West and Admiral.

35.     Defendants Keili and Levitin entered into purchase orders with Plaintiff on behalf of these three customers for the delivery of pallets of aluminum sheets. A copy of these purchase orders evidencing this is annexed as Exhibit B.

36.      Plaintiff fully performed by delivering the pallets of aluminum sheets to Primrose Alloys, and Defendants Metal West and Admiral.

37.     Primrose Alloys paid Plaintiff Fometal directly immediately following the delivery to them of the pallets of aluminum sheets.

38.     Primrose Alloys did not pay Defendants Keili and Levitin.

39.     Defendants Metal West and Admiral failed to pay Plaintiff Fometal directly for the delivery of the pallets of aluminum sheets.

40.     Defendants Metal West and Admiral refused to pay Plaintiff Fometal directly for the delivery of the pallets of aluminum sheets.

41.     Defendants Metal West and Admiral instead agreed to a plan to pay Defendants Keili and Levitin instead of the Plaintiff Fometal.

42.     Defendants Metal West and Admiral's plan was designed to defraud Plaintiff Fometal.

43.      Plaintiff Fometal never received payment for delivering the pallets of aluminum sheets to Defendants Metal West and Admiral.

**Goods One**

44.     On November 27, 2018, Defendant Metal West through its agents, Defendants Keili and Levitin, placed an order by signing a contract under POOG14004 with Plaintiff Fometal for pallets of aluminum sheets (hereafter "Goods One"). See Exhibit B.

45.     The total order price is seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

46.     The contract for Goods One was a destination contract with transportation free on board ("FOB") from Porto di Venezia, Italy to the United States of America.

47.     Plaintiff Fometal delivered Goods One under container Caru 5732532, Seal 1186568 to Long Beach, in the State of California.

48.     Plaintiff Fometal delivered Goods One to the destination specified in the contract with Defendant Metal West.

49.     Defendant Metal West as the consignees for Goods One had an obligation to notify Plaintiff Fometal of any issue with Goods One entering into the United States of America

50.     Plaintiff Fometal delivered Goods One in a timely fashion to Defendant Metal West.

51.     Plaintiff Fometal fully discharged its contractual obligations owed to Defendant Metal West.

52.     Plaintiff Fometal sent an invoice to Defendant Metal West seeking payment in amount of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28) for delivery of Goods One. A copy of this invoice is annexed hereto as Exhibit C.

53.     Defendant Metal West did not and has not paid Plaintiff Fometal the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

54.     This sum remains outstanding inclusive of the date of filing this lawsuit.

55.     This sum exclusive of interest remains due and owing to Plaintiff Fometal from Metal West.

**Tortious Interference and conspiracy to defraud**

56.     Defendant Keili was aware of the existence of a contract between Plaintiff Fometal and Defendant Metal West.

57.     Upon the arrival of the Goods in Long Beach, in the State of California, in the United States of America, Defendant Metal West communicated to Defendants Keili that "it could not be listed as a registered importer" of Goods One.

58.     Defendant Metal West did not have the requisite import license to take custody of the Goods upon arrival in the United States of America.

59.     Defendant Metal West as the consignee for Goods One was obliged to inform Plaintiff Fometal or the clearing agent, RTW that they did not have the license and it could not receive Goods One.

60.     Alternatively, Defendant Metal West at that point could return Goods One to Plaintiff Fometal.

61.     Defendant Metal West did neither.

62.     Defendant Metal West instead unlawfully arranged for Defendant Keili to take possession of Goods One.

63.     Defendant Keili and its clearing agent, RTW, asked Defendant Metal West to "provide a document that would transfer the Goods to Defendant Keili so that Defendant Keili could take the title and clear the Goods."

64.     Defendant Metal West complied with this request.

65.     Defendant Metal West did not have authorization from Plaintiff Fometal to release the document to transfer the Goods to Defendants Keili and Levitin.

66.     Defendant Metal West as the consignee for Goods One never communicated this request to Plaintiff Fometal with regards to Goods One.

67.     At this point, Goods One had not been paid for by Defendant Metal West causing Plaintiff Fometal to have a superior right and title to Goods One.

68.     Defendant Metal West was precluded from writing this transfer document as they had not paid for Goods One.

69.     The transfer document could only have been prepared by Plaintiff Fometal as the owner of Goods One.

70.     Defendant Metal West was the only party who could take possession of Goods One unless they elected not to accept the Goods One.

71.     Defendant Metal West at no point communicated to Plaintiff Fometal that it did not wish to accept the Goods.

72.     Defendant Metal West at no point communicated to Plaintiff Fometal that it wished to return the Goods to Plaintiff Fometal.

73.     Defendant Metal West at no point communicated to Plaintiff Fometal that it was rejecting Goods One.

74.     Defendant Keili did not have permission or consent from Plaintiff Fometal to have Goods One transferred to it from Defendant Metal West pursuant to the transfer document.

75.     Defendant Metal West intended to have Goods One unlawfully transferred to Defendants Keili and Levitin.

76.     Defendant Metal West's actions were designed to defraud the Plaintiff Fometal.

77.     Defendant Metal West's actions were designed to withhold payment to Plaintiff Fometal for Goods One.

78.     Defendant Metal West's actions were designed to deprive Plaintiff Fometal of payment for Goods One.

79.     Defendants Keili and Levitin were aware of the November 27, 2018, purchase order contract under POOG14004 between Defendant Metal West and Plaintiff Fometal for Goods One. See Exhibit B.

80.     Defendants Keili and Levitin intended to have Goods One unlawfully transferred to Defendant Keili from Defendant Metal West.

81.     Defendant Keili's actions were designed to tortiously interfere with an existing contract between Plaintiff Fometal and Defendant Metal West.

82.     Defendant Levitin's actions were designed to tortiously interfere with an existing contract between Plaintiff Fometal and Defendant Metal West.

83.     Defendant Metal West's actions were designed to defraud Plaintiff Fometal.

84.     Defendant Metal West instead elected to pay Defendant Keili through the parties' plan to defraud Plaintiff Fometal.

85.     Defendant Metal West never paid Plaintiff Fometal for delivery of Goods One.

86.     Defendant Keili never paid Plaintiff Fometal for delivery of Goods One.

87.     Defendants Metal West, Keili and Levitin never intended to pay Plaintiff Fometal for delivery of Goods One.

88.     Defendant Metal West, Keili and Levitin acted together to defraud Plaintiff Fometal.

89.     Defendant Metal West intentionally refused to pay Plaintiff Fometal for delivery of Goods One with the assistance, knowledge, and support of Defendants Keili and Levitin.

90.     As a result of Defendants Metal West, Levitin and Keili's acts, Plaintiff Fometal suffered loss and damages.

91.     As a result of Defendants Metal West, Levitin and Keili's omissions, Plaintiff Fometal suffered loss and damages.

92.     Plaintiff Fometal was never paid for its delivery of Goods One to Defendant Metal West.

93.     This sum remains outstanding inclusive of the date of filing this lawsuit.

94.     This sum exclusive of interest remains due and owing to Plaintiff Fometal from Metal West.

**Goods Two**

95.     On October 25, 2018, and July 9, 2019, Defendant Admiral placed orders through their agents Defendants Keili and Levitin pursuant to purchaser order numbers 87001814 and 87002153 with Plaintiff Fometal for pallets of aluminum sheets (hereafter "Goods Two"). A copy of correspondence and the purchaser orders evidencing this are annexed hereto as Exhibit D.

96.     Defendant Admiral ordered Goods Two from the Defendant Admiral's regional office in Albany Northeast Industrial Park, 2 Van Buren Blvd, Guilderland, New York 12085 in the State of New York.

97.     The contract for Goods Two was a destination contract with transportation free on board ("FOB") in three containers from two locations in Italy to the United States of America.

98.     Two (2) containers were shipped from the port of Naples by MSC Mediterranean Seal Pring Company (hereafter "MSC") identified by container numbers TCLU7066327 and MSCU4529025).

99.     One (1) container was shipped from the port of Venice by Krohone Logistik identified by container number MSCU5669037).

100.    Goods Two promptly arrived to the Port of New York, United States of America.

101.    Plaintiff Fometal delivered Goods Two to the destination specified in the contract with Defendant Admiral.

102.    Goods Two were delivered to Admiral as the consignees for Goods Two.

103.    Defendant Admiral did not have the requisite import license to take custody of the Goods upon arrival in the United States of America.

104.    At that point, Defendant Admiral as the consignee for Goods Two was obliged to inform Plaintiff Fometal or the clearing agents, MSC and Krohone Logistik that they did not have the license and it could not receive Goods Two.

105.    At that point, Defendant Admiral could return Goods Two to Plaintiff Fometal.

106.    Defendant Admiral did neither.

107.    Defendant Admiral acknowledged that it received Goods Two in the three containers shipped.

108.    The third parties, MSC and Krohone Logistik were authorized to release Goods Two only and exclusively to the consignee, Defendant Admiral.

109.    Defendant Admiral as the contractual party upon receiving Goods Two was obliged to pay Plaintiff Fometal the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

110.    Plaintiff Fometal sent Defendant Admiral the three invoices requesting payment for Goods Two in the amount of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79). A copy of these invoices is annexed hereto as Exhibit E.

111.    The first invoice was sent on February 14, 2019.  See, Exhibit E.

112.    The second invoice was sent on August 2, 2019.  See, Exhibit E.

113.    Defendant Admiral failed to pay Plaintiff Fometal for Goods Two.

114.    Since August 2, 2019, Defendant Admiral has refused to pay Plaintiff Fometal for Goods Two.

115.    On or about December 14, 2021, Defendant Admiral was acquired by Defendant Reliance, a Delaware corporation traded on the New York Stock Exchange.

116.    On information and belief, Defendant Reliance acquired a controlling interest in Defendant Admiral becoming its successor in interest.

117.    On information and belief, Defendant Admiral is an agent of Defendant Reliance.

118.    Defendant Admiral never paid Plaintiff Fometal the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

119.    This sum remains outstanding inclusive of the date of filing this lawsuit.

120.    This sum exclusive of interest remains due and owing to Plaintiff Fometal from Defendant Admiral.

**Tortious Interference and conspiracy to defraud**

121.    As the consignee of Goods Two, Defendant Admiral had no authority to assign the title of Goods Two to Defendant Keili.

122.    Defendant Admiral as the consignee for Goods Two never communicated a request to Plaintiff Fometal to assign the title of Goods Two to Defendant Keili.

123.    Goods Two had not been paid for by Defendant Admiral causing Plaintiff Fometal to having a superior right and title to Goods Two.

124.    Defendant Admiral did not have authorization from Plaintiff Fometal to transfer the Goods Two to Defendants Keili and Levitin pursuant to a transfer document.

125.    Defendant Admiral was precluded from writing this transfer document.

126.    The transfer document could only have been prepared by Plaintiff Fometal as the owner of Goods Two.

127.    Defendants Keili and Levitin were aware of the existence of a contract between Plaintiff Fometal and Defendant Admiral. See Exhibit D.

128.    As the consignee of Goods Two, Defendant Admiral had no authority to assign the title of Goods Two to Defendants Keili and Levitin pursuant to a transfer document with MSC and Krohone Logistik.

129.    Only Plaintiff Fometal could do so as the owner of Goods Two prior to payment from Defendant Admiral.

130.    At no time did Defendant Admiral communicate to MSC and Krohone Logistik that it was not satisfied with the Goods Two.

131.    At no time did Defendant Admiral communicate to Plaintiff Fometal that it was not satisfied with the Goods Two.

132.    At no time did Defendant Admiral communicate to MSC and Krohone Logistik that it wished to return Goods Two to Plaintiff Fometal.

133.    At no time did Defendant Admiral communicate to Plaintiff Fometal that it wished to return Goods Two to Plaintiff Fometal.

134.    Defendant Admiral at no point communicated to Plaintiff Fometal that it was rejecting Goods Two.

135.    Defendant Admiral assigned the title of Goods Two to Defendants Keili and Levitin without obtaining Plaintiff Fometal's express and/or implied permission and/or consent.

136.    Defendants Keili and Levitin as Defendant Admiral's agents never informed Plaintiff Fometal of the assignment of title of Goods Two to them from Defendant Admiral.

137.    Defendants Keili and Levitin as Defendant Admiral's agents never obtained Plaintiff Fometal's express and/or implied consent for the assignment of title of Goods Two to them from Defendant Admiral.

138.    The only company which had the right to use Goods Two in the three containers upon arrival in the United States of America was Defendant Admiral, as the consignee.

139.    Defendant Admiral's assignment of title of Goods Two to Defendant Keili was unlawful and a breach of the agreements by and between Defendant Admiral and Plaintiff.

140.    Following this assignment, Defendant Keili paid Defendant Admiral for Goods Two and not Plaintiff Fometal.

141.    Defendant Admiral never paid Plaintiff Fometal for Goods Two.

142.    Defendant Keili never paid Plaintiff Fometal for Goods Two.

143.    Defendant Keili's actions tortiously interfered with an existing contract between Plaintiff Fometal and Defendant Admiral.

144.    Defendants Admiral and Keili never intended to pay Plaintiff Fometal for delivery of Goods Two.

145.    Defendants Admiral and Keili acted together to defraud Plaintiff Fometal.

146.    Defendant Admiral refused to pay Plaintiff Fometal for delivery of Goods Two with the assistance, knowledge, and support of Defendant Keili.

147.    As a result of Defendants Admiral and Keili's acts, Plaintiff Fometal suffered loss and damages.

148.    As a result of Defendants Admiral and Keili's omissions, Plaintiff Fometal suffered loss and damages.

149.    Plaintiff Fometal was never paid for its delivery of Goods Two to Defendant Admiral.

150.    On November 8, 2021, via electronic mail message, Defendant Admiral's attorney stated Defendant Admiral did not request Goods Two from Plaintiff Fometal. A copy of this electronic mail message is annexed hereto as Exhibit F.

151.    This is factually untrue where Defendant Admiral was the customer for the Goods Two from Plaintiff Fometal. See Exhibit A.

152.    Defendant Admiral's attorney in the same electronic mail message stated that Defendant Admiral had purchased Goods Two from Defendant Keili.

153.    This is factually untrue when Defendant Admiral admitted via electronic mail message on December 11, 2019, it placed the order for Goods Two from Plaintiff Fometal via Defendant Admiral's agent, Defendant Keili. See Exhibit A.

154.    In addition, Slim Aluminum S.p.a, (based in Italy) who was the original producer of the Goods Two confirmed in their packing list for Goods Two that Plaintiff Fometal was the business to receive Goods Two and Defendant Admiral was the customer/recipient, not Defendant Keili. A copy of this packing list is annexed hereto as Exhibit G.

155.    Defendant Admiral's attorney's statement in the electronic mail message is factually untrue.

156.    Defendant Admiral was the customer for the Goods Two from Plaintiff Fometal.

157.    Defendants Keili and Levitin were not the customers for the Goods Two from Plaintiff Fometal.

158.    Defendants Keili and Levitin acted as agents on behalf of Defendant Admiral. See Exhibit F.

159.    Defendant Admiral's attorney's statement of November 8, 2021, was false.

160.    Defendant Admiral's attorney's statement of November 8, 2021, was calculated to delay the Plaintiff's filing of this lawsuit.

161.    Defendant Admiral was in the final stages of being acquired by Defendant Reliance.

162.    Pursuant to Defendant Reliance's press release issued on December 14, 2021, Defendant Reliance's acquisition of Defendant Admiral was completed on or about December 14, 2021.  See a copy of this press release marked as Exhibit H.

163.    Defendant Admiral's statement was made in order for Plaintiff Fometal to rely on the false statement and not file a lawsuit against Defendant Admiral to buy Defendant Admiral time to consummate Defendant Reliance's acquisition of Defendant Admiral.

164.    Plaintiff by initially relying on this statement from Defendant Admiral did not file this lawsuit in November 2021.

165.    Defendant Reliance's acquisition of Defendant Admiral was completed on or about December 14, 2021.  See, Exhibit H.

166.    Between November 2021 and the present, no payments were made to Plaintiff Fometal for Goods Two.

167.    Plaintiff Fometal instead has suffered loss and damages by investigating further the Defendants Admiral's statements from its attorney which are false.

**Common law fraud by Defendants**

168.    On July 9, 2019, via electronic mail message, Defendants Keili and Levitin as the agents on behalf of Defendants Admiral and Metal West represented via electronic mail message as fact to Plaintiff Fometal that Defendant Keili and Levitin would send an international high priority wire to Plaintiff Fometal as payment for the shipped Goods by July 10, 2019. A copy of this electronic mail message is annexed hereto as Exhibit I.

169.    Defendant Levitin's representation was false.

170.     Defendant Keili's representation was false.

171.     Defendants Keili and Levitin did not send an electronic wire to Plaintiff Fometal for Goods Two on or before July 10, 2019.

172.     On July 11, 2019, Plaintiff Fometal's agent sent an electronic mail message to Defendant Levitin stating: "the July 10 was yesterday, please send me the wire." A copy of this electronic mail message is annexed hereto as Exhibit J.

173.     Plaintiff Fometal had relied on Defendant Levitin's representation of July 9, 2019.

174.     Defendant Keili never sent an electronic wire to Plaintiff Fometal for Goods Two.

175.     Defendant Keili never paid Plaintiff Fometal for Goods Two.

176.     On July 9, 2019, Defendants Keili and Levitin acknowledged in this electronic mail message that Defendant Keili owed Plaintiff Fometal money for Goods Two. See Exhibit I.

177.     On July 11, 2019, Defendant Levitin via electronic mail message made a further representation as fact to Plaintiff Fometal's agent that Defendant Keili should have the electronic wire "any time now and once I get confirmation will send it to you". A copy of this electronic mail message is annexed hereto as Exhibit K.

178.     On July 11, 2019, Defendant Keili via electronic mail message made a further representation as fact to Plaintiff Fometal's agent that Defendant Keili should have the electronic wire "any time now and once I get confirmation will send it to you".  See Exhibit K.

179.     This representation was false.

180.     Defendant Keili did not send an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

181.     On July 16, 2019, Plaintiff Fometal's agent sent an electronic mail message to Defendant Levitin stating: "Dear Mendy, following phone conversation please send me now promised the wire……..for total amount of $151.171.79 USD related to Admiral invoices." A copy of this electronic mail message is annexed hereto as Exhibit L.

182.    Plaintiff Fometal had relied on Defendant Levitin's representation of July 11, 2019, and telephone conversation with Defendant Levitin.

183.    Defendant Keili never sent an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

184.    Defendant Keili never paid Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

185.    On July 17, 2019, Defendant Levitin via electronic mail message made a further representation as fact to Plaintiff Fometal's agent that Defendant Keili should have the electronic wire "tomorrow if Fometal cannot wait I totally understand". A copy of this electronic mail message is annexed hereto as Exhibit M.

186.    Defendant Keili did not send an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal on or before July 18, 2019.

187.    Defendant Levitin's representation was false.

188.    Defendant Keili's representation was false.

189.    Defendant Keili never sent an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

190.    Defendant Keili never paid Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

191.    As a result of Defendants Keili and Levitin's acts, Plaintiff Fometal suffered loss and damages.

192.    As a result of Defendants Keili and Levitin's omissions, Plaintiff Fometal suffered loss and damages.

**Notice to the defendants of loss and damage prior to filing this lawsuit**

193.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Metal West setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit N.

194.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Admiral setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit O.

195.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Keili setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit P.

196.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Levitin setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit Q.

197.    With the exception of acknowledging receipt of the demand letter Defendants Keili and Levitin have failed and/or refused to respond to Plaintiff Fometal.

198.    No payment has been offered or made by any of the Defendants since then to compensate Plaintiff Fometal for its continuing loss and damages.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT UNDER THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS against all Defendants

199.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

200.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

201.    Both the United States of America and Italy have at all material times been signatories, parties, and contracting states to the United Nations Convention on Contracts for the International Sale of Goods ("CISG")

202.    Defendant Metal West placed a purchasing order with Plaintiff Fometal for delivery of Goods One from Italy.

203.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

204.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods One, Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

205.    At all times relevant herein Defendant Admiral placed a purchasing order with Plaintiff Fometal for delivery of Goods Two from Italy.

206.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

207.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods One, Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

208.    These purchase orders are existing and enforceable contracts between Plaintiff and Defendants Metal West and Admiral.

209.    At all times relevant herein, Defendants have failed to tender payment, on the outstanding principal cumulative balance of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) to the Plaintiff.

210.    Plaintiff elects to pursue its remedies under Article 74 of the Sale of Goods Convention, since Defendants have breached their contractual obligations with the Plaintiff by refusing to pay for the goods they accepted.

211.    By reason of Defendants' acts and/or omissions, Plaintiff suffered loss and damages.

212.    By reason of the foregoing, Defendants are liable to Plaintiff in the sum of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) exclusive of interest.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT against all Defendants

213.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

214.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

215.    Both the United States of America and Italy have at all material times been signatories, parties, and contracting states to the United Nations Convention on Contracts for the International Sale of Goods ("CISG")

216.    Defendant Metal West placed a purchasing order with Plaintiff Fometal for delivery of Goods One from Italy.

217.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

218.    Defendant Admiral placed a purchasing order with Plaintiff Fometal for delivery of Goods Two from Italy.

219.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

220.    These purchase orders are existing and enforceable contracts between Plaintiff and Defendants Metal West and Admiral.

221.    Plaintiff performed under the terms of the purchasing orders by delivering Goods One and Two to Defendants Metal West and Admiral.

222.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods One,

Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

223.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods Two, Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

224.    Plaintiff Fometal demanded payment from Metal West for delivery of Goods One.

225.    Plaintiff Fometal demanded payment from Admiral for delivery of Goods Two.

226.    Defendants Metal West and Admiral failed to make any payments to discharge the amounts due and owing under the purchase orders.

227.    By reason of Defendants' acts and/or omissions, Plaintiff suffered loss and damages.

228.    By reason of the foregoing, Defendants are liable to Plaintiff in the amount of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) exclusive of interest.

**THIRD CAUSE OF ACTION**
**(COMMON LAW FRAUD against all Defendants**

229.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

230.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

231.    On July 9 and July 11, 2019, Defendant Levitin as Defendants Admiral and Metal West's agent represented as fact to Plaintiff that Defendant Keili would send an international high-value wire to Plaintiff Fometal as payment for the Goods delivered by Plaintiff Fometal.

232.    Defendant Levitin did not send an international high-value wire to Plaintiff Fometal for Goods Two and his representation were false.

233.     On November 8, 2021, Defendant Admiral made a statement that it had no contact with Plaintiff Fometal which was false and was calculated to delay/prevent Plaintiff from filing this lawsuit to facilitate Defendant Admiral being acquired by Defendant Reliance. See Exhibit F and Exhibit H.

234.     Plaintiff relied on Defendant Levitin's representations as being true in his electronic mail messages to Defendant Levitin on July 11 and 16, 2019.

235.     On July 17, 2019, Defendant Levitin represented as fact to Plaintiff that Defendant Keili would send an international high-value wire to Plaintiff Fometal as payment for Goods Two.

236.     Defendant Keili did not send an international high-value wire to Plaintiff Fometal for Goods Two.

237.     This representation was false.

238.     Defendants' representations were made to Plaintiff so that Plaintiff would rely on them.

239.     As a result of Defendants' act of fraud, Plaintiff has suffered loss and damage.

240.     By reason of the foregoing, the Defendants are liable to Plaintiff in the amount of damages to be determined at trial.

## FOURTH CAUSE OF ACTION
### (CONVERSION against all Defendants)

241.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

242.     Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

243.     Defendants Metal West and Keili converted ownership of Plaintiff Goods One to themselves without payment to Plaintiff.

244.     Defendant Metal West transferred ownership of Plaintiff Goods One to Defendant

Keili without Plaintiff's consent.

245.     Defendant Metal West transferred ownership of Plaintiff Goods One to Defendant Keili without Plaintiff's lawful authority.

246.     Defendant Keili supported the unlawful transfer of Goods One to them from Defendant Metal West.

247.     Defendant Keili knowingly received this converted property from Defendant Metal West.

248.     Plaintiff had the superior title to Goods One.

249.     Defendants Admiral and Keili converted ownership of Plaintiff Goods Two to themselves without payment to Plaintiff.

250.     Defendant Admiral transferred ownership of Plaintiff Goods Two to Defendant Keili without Plaintiff's consent.

251.     Defendant Admiral transferred ownership of Plaintiff Goods Two being their corporate assets to Defendant Keili without Plaintiff's lawful authority.

252.     Defendant Keili supported the unlawful transfer of Goods Two to them from Defendant Metal West.

253.     Defendant Keili knowingly received this stolen property from Defendant Metal West.

254.     Plaintiff had the superior title to Goods Two.

255.     By reason of the aforementioned facts, Defendants committed conversion of Plaintiff's assets.

256.     By reason of Defendants' acts and/or omissions, Plaintiff suffered loss and damages.

257.     By reason of the foregoing, Defendants are liable to Plaintiff in in the amount of

two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) exclusive of interest.

## FIFTH CAUSE OF ACTION
## (UNJUST ENRICHMENT against ALL Defendants)

258.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

259.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

260.    Pursuant to the purchasing order from Defendant Metal West, Plaintiff Fometal promptly delivered Goods One to Defendant Metal West for the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

261.    Defendant Metal West accepted the benefit of Goods One by taking possession of them from Plaintiff Fometal.

262.    Defendants Keili and Levitin pursuant to a request to Metal West were conferred a benefit by receiving title and possession of Goods One worth seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

263.    Defendants Keili and Levitin accepted the benefit of Goods One by taking possession of them from Metal West.

264.    Defendants Metal West, Keili and Levitin never paid Plaintiff Fometal for Goods One.

265.    Pursuant to the purchasing order from Defendant Admiral, Fometal promptly delivered Goods Two to Defendant Admiral for the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

266.    Defendant Admiral accepted the benefit of Goods Two by taking possession of them from Plaintiff Fometal.

267.    Defendant Admiral conferred a benefit upon Defendants Keili and Levitin pursuant

to a request to transfer title and possession of Goods Two worth one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

268.    Defendants Keili and Levitin accepted the benefit of Goods Two by taking possession of them from Defendant Admiral.

269.    For this benefit, Defendants Keili and Levitin were obliged to make payments to Plaintiff for Goods One and Two.

270.    Defendants Admiral, Keili and Levitin never paid Plaintiff Fometal for Goods Two.

271.    Defendants Keili and Levitin acknowledged this in communication with Plaintiff. See Exhibit J.

272.    Defendants Keili and Levitin failed to make any payments to Plaintiff for Goods One and Two.

273.    Defendants Keili and Levitin refused to make payments to Plaintiff.

274.    Defendants Keili and Levitin's acts resulted in Plaintiff being deprived of re-payments of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07).

**SIXTH CAUSE OF ACTION**
**(TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS against**
**Defendants Keili and Levitin)**

275.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

276.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

277.    Plaintiff Fometal had an enforceable agreement with Metal West for the delivery of Goods One worth seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

278.    Defendants Keili and Levitin were aware of the existence of the agreement between

Plaintiff Fometal and Metal West.

279.   Defendants Keili and Levitin made a request of Metal West that it transfer title of Goods One to Defendant Keili.

280.   Defendant Metal West complied with Defendants Keili's and Levitin's request.

281.   Defendant Metal West unlawfully transferred Goods One to Defendant Keili.

282.   Defendant Keili never paid Plaintiff Fometal for Goods One.

283.   Plaintiff Fometal suffered pecuniary loss in the amount of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

284.   Plaintiff Fometal had an enforceable agreement with Admiral for the delivery of Goods Two worth one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

285.   Defendants Keili and Levitin were aware of the existence of the agreement between Plaintiff Fometal and Admiral.

286.   Defendants Keili and Levitin made a request of Defendant Admiral that it transfer title of Goods One to Defendant Keili.

287.   Defendant Admiral complied with Defendants Keili's and Levitin's request.

288.   Defendant Admiral unlawfully transferred Goods One to Defendant Keili.

289.   Defendant Keili never paid Plaintiff Fometal for Goods One.

290.   As a result, Plaintiff Fometal suffered pecuniary loss in the amount of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

291.   By reason of the foregoing, Defendants Keili and Levitin are liable to Plaintiff, Fometal in the amount of damages to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (CIVIL CONSPIRACY against ALL Defendants)

292.   Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

293.   Plaintiff incorporates all preceding paragraphs as if fully restated herein.

294.   Defendants conspired with one another to defraud Plaintiff.

295.   Defendants Metal West, Admiral, Keili, and Levitin committed a fraud to cause loss, harm and to defraud Plaintiff.

296.   Defendants Metal West, Admiral, Keili, and Levitin conducted unlawful transactions involving the purchase of Goods One and Goods Two from Plaintiff Fometal.

297.   Defendants Metal West, Admiral, Keili, and Levitin conducted these unlawful transactions so as to perpetrate a fraud to cause loss, harm and to defraud Plaintiff.

298.   Defendants Metal West, Admiral, Keili, and Levitin in so doing collectively participated in unlawful monetary transactions.

299.   Defendants Metal West, Admiral, Keili, and Levitin engaged and participated in unlawful monetary transactions to cause proximate damage to Plaintiff Fometal's business.

300.   Defendants Metal West, Admiral, Keili, and Levitin collectively participated in unlawful monetary transactions.

301.   The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff Fometal of its rights and interests in its Goods One and Goods Two.

302.   The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff Fometal of its rights and interests in its corporate assets.

303.   Each of Defendants' unlawful and overt acts were the proximate cause of Plaintiff Fometal's injuries/damages.

304.    By reason of the foregoing, each of the Defendants are liable to Plaintiff Fometal in the amount of damages to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (RICO: violations under 18 U.S.C. § 1962 (c) Use of Racketeering Income to Conduct or Participate in Conducting an Enterprise Engaged in or Affecting Interstate Commerce Through a Pattern of Racketeering Activity against all Defendants)

305.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

306.    The conduct, acts, and omissions of all Defendants set forth in this pleading were an integral part of the overall pattern and practices described herein, including utilizing interstate commerce for the purposes described in the above paragraphs.

307.    Income received by Defendants through the enterprise and predicate acts was derived from a pattern of racketeering activity.

308.    The Defendants are associated, in fact, for the purpose and goal of working together as an organized group, and each occupied a separate and distinct role within the fraudulent scheme.

309.    Defendants Metal West, Admiral, Reliance, and Keili are a "person" within the meaning of the statute.

310.    Defendant Keili is an "enterprise," in fact, within the meaning of the statute.

311.    The fraudulent scheme is an association, in fact, within the meaning of the statute.

312.    The fraudulent scheme was an ongoing organization that functioned as a continuing unit or association for a period of time.

313.    The fraudulent scheme operated through a chain of command structure headed by Defendant Keili and was organized into a discrete grouping of participants and actors with specific roles, functions, and duties.

314.    Defendants Keili and Levitin orchestrated that Defendants Metal West and Admiral pose as 'customers' in order to trick Plaintiff Fometal into shipping Goods One and Goods Two

from Italy to the United States of America in order to steal these goods without payment.

315.    Defendants Metal West and Admiral coordinated this scheme by falsifying transfer identification documents for Goods One and Goods Two to facilitate Defendants Keili and Levitin's unlawful taking and possession of these goods at the point of entry into the United States of America.

316.    Defendants Keili and Levitin, the agents for Defendants Metal West and Admiral, through the transmission of electronic mail messages and telephone calls made false representations to Plaintiff Fometal that they would wire payment to Plaintiff Fometal for Goods One and Goods Two.

317.    No payment was ever wired by or on behalf of the Defendants to Plaintiff Fometal for Goods One and Goods Two.

318.    The unlawful possession of Goods One and Goods Two by the Defendants continues and is ongoing.

319.    Defendants Levitin, Metal West and Admiral operated or otherwise managed Defendant Keili through a pattern of racketeering activity.

320.    Defendant Keili is a business engaged in and/or affecting interstate commerce.

321.    Alternatively, the enterprise-in-fact consisting of all of the Defendants is a business engaged in and/or affecting interstate commerce.

322.    Defendants participated in these affairs through a pattern of acts and activities that are indictable under 18 U.S.C. § 1961(1) (b): (a) 18 U.S.C. § 659 (relating to theft from interstate shipment); (b) 18 U.S.C.§1028 (relating to fraud and related activity in connection with identification documents); and (c) 18 U.S.C. §1343 (relating to wire fraud).

323.    Through misconduct, acts, and omissions set forth herein, Defendants are liable for the acts, activities or conduct listed above and additionally for civil conspiracy and aiding and abetting acts giving rise to civil liability, the actual, constructive and equitable fraud by each of Defendants, and conspiracy to commit actual, constructive and equitable fraud.

324.    The commission of each of the acts described herein are predicate acts, including

offenses that constitute instances of criminal theft, fraud and wire fraud pursuant to 18 U.S.C. § 1961(1) (b).

325.    By reason of Defendants' acts and/or omissions, Plaintiff Fometal suffered loss and damages.

326.    By reason of the foregoing, Defendants are each liable to Plaintiff Fometal in the amount of damages to be determined at trial.

327.    Pursuant to 18 U.S.C. § 1964(c) Plaintiffs are entitled to an award of triple money damages from Defendants on account of the violations of 18 U.S.C. § 1962(c) described above.

328.    Plaintiff respectfully requests a judgment against all the Defendants for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million which damages should be tripled pursuant to 18 U.S.C. § 1964(c), plus reasonable attorneys' fees.

### NINTH CAUSE OF ACTION
### (vicarious liability against Defendant Levitin)

**A. Defendant Levitin Caused the Corporate Form of Keili to Be Used to Perpetrate an Actual Fraud on Plaintiff for Defendant Levitin's Personal Gain.**

329.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

330.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

331.    Defendant Levitin engaged in communications and fraudulent conduct with third parties with respect to Plaintiff that were dishonest of purpose and intended to deceive third parties and cause Plaintiff consequential financial loss and harm.

332.    Defendant Levitin used the corporate forms of Keili to perpetrate this fraud.

333.    Defendant Levitin perpetrated an actual fraud on Plaintiff for his own benefit, specifically misleading Plaintiff to believe that payments from Keili were forthcoming to Plaintiff for Goods Two.

334.    Defendant Levitin used the corporate form of Keili to perpetrate this fraud.

335.    Defendant Keili's commission of an actual fraud on Plaintiff was solely for Defendant Keili's own benefit.

336.    By reason of the foregoing, Defendant Keili is liable to Plaintiff in the amount of damages to be determined at trial.

**B. The Corporate Form Was Organized and Operated as a Mere Tool or Business Conduit of Another.**

337.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

338.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

339.    Defendant Levitin has or at relevant times had a financial interest, ownership, or control of Defendant Keili.

340.    There is such a unity between Defendant Levitin and Defendant Keili that the separateness of the corporations has ceased.

341.    Holding only Defendant Keili's corporate entity liable would result in the injustice of leaving Plaintiff with an uncollectible judgment against Defendant Levitin while allowing the corporation's alter egos, and each other, to go free. Thus, it is proper for Plaintiff to pierce the corporate veil of Defendant Keili for Defendant Levitin to be sued individually.

342.    By reason of the foregoing, Defendant Levitin is liable to Plaintiff in the amount of damages to be determined at trial.

**TENTH CAUSE OF ACTION**
**(ACCOUNT STATED against ALL Defendants)**

343.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

344.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

345.    Plaintiff and Defendant Metal West executed a valid contract in the form of a purchasing order for delivery of Goods One. Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

346.    Goods One were promptly and safely delivered to Defendant Metal West and accepted by Defendant Metal West.

347.    Pursuant to the terms of the purchasing order Defendant Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

348.    Plaintiff and Admiral executed a valid contract in the form of a purchasing order for delivery of Goods Two. Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

349.    Goods Two were promptly and safely delivered to Defendant Admiral and accepted by Defendant Admiral.

350.    Pursuant to the terms of the purchasing order, Defendant Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

351.    Defendants Metal West and Admiral failed to discharge these payments to Plaintiff.

352.    Defendants Keili and Levitin asked Defendant Metal West to "provide a document that would transfer the Goods One to Defendant Keili so that Defendant Keili could take the title and clear the Goods. "

353.    Upon taking possession of Goods One, Defendants Keili and Levitin failed to discharge payment for Goods One to Plaintiff.

354.    Defendants Keili and Levitin asked Defendant Admiral to provide a document that would transfer Goods Two to Defendant Keili.

355.    Upon taking possession of Goods Two, Defendants Keili and Levitin failed to

discharge payment for Goods Two to Plaintiff.

356.     Defendants manifested an assent to Plaintiff to owe all monies and interest under the purchase orders.

357.     As a result of Defendants acts, Plaintiff Fometal suffered loss and damages.

358.     By reason of the foregoing, the Defendants are liable to Plaintiff in the amount of damages to be determined at trial.

**ELEVENTH CAUSE OF ACTION**
**(RESPONDENT SUPERIOR against Defendant Reliance)**

359.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

360.     By virtue of the corporate acquisition between Defendants Admiral and Reliance, Reliance emerged as the owner of the interest(s) and operations of Defendant Admiral.

361.     By virtue of the corporate acquisition, Defendant Reliance is the successor in interest and/owner of Defendant Admiral.

362.     Defendant Reliance was the principal of Defendant Admiral.

363.     Defendant Admiral was the agent of Reliance.

364.     Defendant Admiral was the customer for Goods Two with Plaintiff Fometal.

365.     At all relevant times, Defendant Admiral while a customer for Goods Two was acting as an agent on behalf of Defendant Reliance, who is the owner and principal of Defendant Admiral.

366.     Defendant Admiral as an agent of Defendant Reliance intended to defraud Plaintiff Fometal by not paying for Goods Two.

367.     Defendant Admiral as an agent of Defendant Reliance falsified the transfer identification documents for Goods Two.

368.    Defendant Admiral as an agent of Defendant Reliance facilitated the unlawful transfer and theft of Goods Two by Defendants Keili and Levitin.

369.    At all relevant times, Defendant Admiral was an agent of the Defendant Reliance and was acting within the scope of their agency and control.

370.    Defendant Reliance is therefore vicariously liable under the doctrine of *respondent superior* for the acts and omissions of Defendant Admiral.

## JURY DEMAND

371.    Plaintiff requests that the Court set this case for a jury trial.

## PRAYER

372.    WHEREFORE, premises considered, Plaintiff respectfully requests that the Court set this case for trial and that the Court grant Plaintiff the following relief against Defendants, jointly and severally, as follows:

1.  Compensatory damages of no less than one million dollars ($1,000,000) to be proven at trial;

2.  Exemplary and treble damages to be proven at trial;

3.  Attorneys' fees and costs of suit;

4.  Pre-judgment interest at the maximum rate allowed by law; and

5.  Such other and further relief as the Court deems just and proper.

DATED:      New York, New York
            March 7, 2022

                                    Respectfully submitted,

                                    /s/ Joshua D. Brinen
                                    Joshua D. Brinen
                                    Brinen & Associates, LLC
                                    90 Broad Street, Tenth Floor
                                    New York, New York 10004
                                    (212) 330-8151 (Telephone)

(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Attorney for the Plaintiff


/s/ Mark White
Mark E. White
Brinen & Associates, LLC
90 Broad Street, Tenth Floor
New York, New York 10004
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
mwhite@brinenlaw.com
Attorney for the Plaintiff