# EXHIBIT RP-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

FOMETAL S.R.L.,
an Italian Limited Company,

                                                    **COMPLAINT**

            Plaintiff,

      -against-                                     Case No.:

KEILI TRADING LLC, a Washington Limited
Liability Company, MENDEL LEVITIN a/k/a MENDY
LEVITIN, an individual, RELIANCE STEEL &
ALUMINUM CO., a Delaware corporation, ADMIRAL
SERVICENTER COMPANY, INCORPORATED, a
Massachusetts Corporation, and O'NEAL FLAT ROLLED
MEATS aka METAL WEST LLC, a Colorado Limited
Liability Company

            Defendants.

----------------------------------------------------------------x



      PLAINTIFF FOMETAL S.R.L. ("Fometal"), by and through its undersigned counsel, files
this Complaint ("Complaint") against KEILI TRADING LLC ("Keili"), MENDEL LEVITIN
a/k/a MENDY LEVITIN ("Levitin"), RELIANCE STEEL & ALUMINUM CO. ("Reliance"),
ADMIRAL SERVICENTER COMPANY, INCORPORATED ("Admiral"), and O'NEAL FLAT
ROLLED MEATS aka METAL WEST LLC, ("Metal West") (collectively "the Defendants"")
avers as follows.

## <u>NATURE OF THE ACTION</u>

      Plaintiff Fometal brings this action against individual and corporate defendants who have
engaged in a scheme to defraud Plaintiff Fometal. Plaintiff Fometal files this complaint against
Defendants Keili, Levitin, Reliance, Admiral, and Metal West for a claim under the United States

1

Nations Convention on Contracts for the International Sale of Goods, breach of contract, common law fraud, conversion, unjust enrichment, tortious interference with contractual relations, civil conspiracy, for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act (18 U.S.C. § 1961–1968), piercing the corporate veil, account stated and respondent superior. Defendants Admiral, and Metal West with the assistance of Defendant Levitin and entities under his control including Defendant Keili have engaged in a series of fraudulent acts and deceitful conduct that has caused substantial damage to the Plaintiff.

Defendants' scheme to defraud and unlawfully take possession of Plaintiff's shipped goods and related improper acts, encompass numerous predicate acts listed in 18 U.S.C. § 1961. These include without limitation theft from interstate shipment, relating to fraud and related activity in connection with identification documents, and relating to wire fraud. In furtherance of their illicit scheme, Defendants used the internet, e-mail, interstate wires, and engaged in monetary transactions derived from specified unlawful activity.

## PARTIES

1. Pursuant to corporate records filed with the Companies' Register of Rome under the registration Fiscal Code and VAT no 00899720676, Plaintiff Fometal Srl is a foreign corporation for profit organized under the laws of Italy with its principal place of business located at C.da Valle Cupa, 64010 Colonnella, Teramo, Italy.

2. Plaintiff's operations are located in the State of Italy.

3. Pursuant to corporate records filed with the Secretary of State of the State of Washington, Defendant Keili is a limited liability company organized under the laws of the State of Washington, with its principal place of business located at 4027 NE 60th St., Seattle, Washington 98115.

4. Pursuant to corporate records filed with the Secretary of State for the State of Washington, Defendant Keili is a single member limited liability company with Defendant Levitin being its sole member.

5. Upon information and belief, Defendant Levitin is domiciled in the borough of Brooklyn, the City of New York in the State of New York.

6.     Upon information and belief, Defendant Keili is owned and controlled by Defendant Levitin and is the alter ego of Defendant Levitin through which he holds investments and conducts transactions.

7.     Defendants Keili and Levitin at all material times acted as the agents on behalf of Defendants Admiral and Metal West regarding each of the transactions the subject of this lawsuit. A copy of correspondence and a signed purchase order evidencing this is annexed as Exhibit A.

8.     Pursuant to corporate records filed with the Secretary of State of the State of Massachusetts, Defendant Admiral is a corporation organized under the laws of the State of Massachusetts, with its principal place of business located at 11 Forbes Road, Woburn, Massachusetts 01801.

9.     Pursuant to corporate records filed with the Secretary of State of the State of Massachusetts, Defendant Admiral has one of its regional offices located in Albany at Northeast Industrial Park, 2 Van Buren Blvd, Guilderland, New York 12085.

10.     Pursuant to corporate records filed with the Secretary of State of the State of Delaware, Defendant Reliance is the successor in interest to Defendant Admiral since on or about December 14, 2021, after the acquisition of Defendant Admiral by Defendant Reliance.

11.     Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Metal West is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 1229 S. Fulton Avenue, Brighton, Colorado 80601.

12.     Plaintiff is informed and believes that at all times mentioned herein, each of the Defendants was the agent, employee, and partner of each of the remaining defendants, and was acting within the scope and authority of such agency, employment, and partnership and with the knowledge, consent, approval, and ratification of the remaining defendants, and each of them.

13.     Plaintiff is informed and believes that any limited liability companies affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

14.     Plaintiff is informed and believes that any corporations affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

15.     Plaintiff is informed and believes that any general partnerships affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

16.     Plaintiff is informed and believes that any limited liability partnerships affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

17.     Plaintiff is informed and believes that any individuals affiliated with the Defendants are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

18.     Plaintiff is informed and believes that at all times mentioned herein, there has existed a unity of interest and ownership between Defendant Levitin and Defendant Keili such that any individuality or separateness between Defendant Levitin and Defendant Keili has ceased and Defendant Keili is now a mere shell and alter ego of Levitin in that Levitin controlled and dominated Keili's business affairs and organized and operated Keili as a mere extension and subsidiary of his personal business endeavors.

## JURISDICTION AND VENUE

19.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000).

20.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C § 1331(a), as federal subject-matter jurisdiction exists because the Plaintiff's claims arise under 18

U.S.C. § 1962 and the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), a treaty of the United States. Under CISG Article 1, the Convention is applicable to commercial contracts for the sale of goods between parties who operate as industry merchants and whose places of business are in different signatory nations.

21. The United States of America signed the CISG on August 31, 1981, and the Senate ratified it on December 11, 1986.

22. Italy signed the CISG on September 30, 1981, and ratified it on December 11, 1986.

23. The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Civil Procedure in circumstances where Defendant Metal West retained the services of Defendant Levitin to act as their broker and agent in the transactions complained of within. See Exhibit A.

24. The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Civil Procedure in circumstances where Defendant Admiral retained the services of Defendant Levitin to act as their broker and agent in the transactions complained of within. See Exhibit A.

25. Upon information and belief, Defendant Levitin is a citizen of the State of New York having his domicile in Brooklyn, New York, in the State of New York.

26. The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Civil Procedure in circumstances where the Defendants have availed themselves of the laws of the jurisdiction of this Court during the time period complained of in these proceedings.

27. Defendant Admiral has its regional offices in Albany in the State of New York.

28. Defendant Reliance acquired Defendant Admiral and acquired Defendant Admiral's regional offices in Albany in the State of New York.

29. Defendant Reliance avails itself of the laws of the state of New York by virtue of Defendant Reliance's status as a publicly-traded corporation trading on the New York Stock Exchange.

30.     Venue is proper under 28 U.S.C. §1391(b)(2) as all or substantially all of the incidents alleged herein giving rise to the claims asserted occurred within the territorial jurisdiction of this Court. To the extent any Defendant may reside outside of this district, the ends of justice require such Defendant or Defendants to be brought before this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

31.     The RICO enterprise consists of Defendant Keili.

32.     As stated on its website, since 2002, "Defendant Keili facilitates the logistics of importing hundreds of containers each year into North America, Europe, and the UK the company is engaged in global sourcing of metal products…..all without having to compromise on quality or service!"

33.     As will be more thoroughly discussed throughout this Complaint, Defendants each committed, directed, or otherwise participated in the alleged RICO acts by utilizing Keili as a front.

34.     On or about November 27, 2018, Defendants Keili and Levitin were retained by three customers based in the United States of America being Primrose Alloys, and the Defendants Metal West and Admiral.

35.     Defendants Keili and Levitin entered into purchase orders with Plaintiff on behalf of these three customers for the delivery of pallets of aluminum sheets. A copy of these purchase orders evidencing this is annexed as Exhibit B.

36.     Plaintiff fully performed by delivering the pallets of aluminum sheets to Primrose Alloys, and Defendants Metal West and Admiral.

37.     Primrose Alloys paid Plaintiff Fometal directly immediately following the delivery to them of the pallets of aluminum sheets.

38.     Primrose Alloys did not pay Defendants Keili and Levitin.

39.     Defendants Metal West and Admiral failed to pay Plaintiff Fometal directly for the delivery of the pallets of aluminum sheets.

40.     Defendants Metal West and Admiral refused to pay Plaintiff Fometal directly for the delivery of the pallets of aluminum sheets.

41.     Defendants Metal West and Admiral instead agreed to a plan to pay Defendants Keili and Levitin instead of the Plaintiff Fometal.

42.     Defendants Metal West and Admiral's plan was designed to defraud Plaintiff Fometal.

43.      Plaintiff Fometal never received payment for delivering the pallets of aluminum sheets to Defendants Metal West and Admiral.

**Goods One**

44.     On November 27, 2018, Defendant Metal West through its agents, Defendants Keili and Levitin, placed an order by signing a contract under POOG14004 with Plaintiff Fometal for pallets of aluminum sheets (hereafter "Goods One"). See Exhibit B.

45.     The total order price is seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

46.     The contract for Goods One was a destination contract with transportation free on board ("FOB") from Porto di Venezia, Italy to the United States of America.

47.     Plaintiff Fometal delivered Goods One under container Caru 5732532, Seal 1186568 to Long Beach, in the State of California.

48.     Plaintiff Fometal delivered Goods One to the destination specified in the contract with Defendant Metal West.

49.     Defendant Metal West as the consignees for Goods One had an obligation to notify Plaintiff Fometal of any issue with Goods One entering into the United States of America

50.     Plaintiff Fometal delivered Goods One in a timely fashion to Defendant Metal West.

51.     Plaintiff Fometal fully discharged its contractual obligations owed to Defendant Metal West.

52.     Plaintiff Fometal sent an invoice to Defendant Metal West seeking payment in amount of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28) for delivery of Goods One. A copy of this invoice is annexed hereto as Exhibit C.

53.     Defendant Metal West did not and has not paid Plaintiff Fometal the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

54.     This sum remains outstanding inclusive of the date of filing this lawsuit.

55.     This sum exclusive of interest remains due and owing to Plaintiff Fometal from Metal West.

**Tortious Interference and conspiracy to defraud**

56.     Defendant Keili was aware of the existence of a contract between Plaintiff Fometal and Defendant Metal West.

57.     Upon the arrival of the Goods in Long Beach, in the State of California, in the United States of America, Defendant Metal West communicated to Defendants Keili that "it could not be listed as a registered importer" of Goods One.

58.     Defendant Metal West did not have the requisite import license to take custody of the Goods upon arrival in the United States of America.

59.     Defendant Metal West as the consignee for Goods One was obliged to inform Plaintiff Fometal or the clearing agent, RTW that they did not have the license and it could not receive Goods One.

60.     Alternatively, Defendant Metal West at that point could return Goods One to Plaintiff Fometal.

61.     Defendant Metal West did neither.

62. Defendant Metal West instead unlawfully arranged for Defendant Keili to take possession of Goods One.

63. Defendant Keili and its clearing agent, RTW, asked Defendant Metal West to "provide a document that would transfer the Goods to Defendant Keili so that Defendant Keili could take the title and clear the Goods. "

64. Defendant Metal West complied with this request.

65. Defendant Metal West did not have authorization from Plaintiff Fometal to release the document to transfer the Goods to Defendants Keili and Levitin.

66. Defendant Metal West as the consignee for Goods One never communicated this request to Plaintiff Fometal with regards to Goods One.

67. At this point, Goods One had not been paid for by Defendant Metal West causing Plaintiff Fometal to have a superior right and title to Goods One.

68. Defendant Metal West was precluded from writing this transfer document as they had not paid for Goods One.

69. The transfer document could only have been prepared by Plaintiff Fometal as the owner of Goods One.

70. Defendant Metal West was the only party who could take possession of Goods One unless they elected not to accept the Goods One.

71. Defendant Metal West at no point communicated to Plaintiff Fometal that it did not wish to accept the Goods.

72. Defendant Metal West at no point communicated to Plaintiff Fometal that it wished to return the Goods to Plaintiff Fometal.

73. Defendant Metal West at no point communicated to Plaintiff Fometal that it was rejecting Goods One.

74.    Defendant Keili did not have permission or consent from Plaintiff Fometal to have Goods One transferred to it from Defendant Metal West pursuant to the transfer document.

75.    Defendant Metal West intended to have Goods One unlawfully transferred to Defendants Keili and Levitin.

76.    Defendant Metal West's actions were designed to defraud the Plaintiff Fometal.

77.    Defendant Metal West's actions were designed to withhold payment to Plaintiff Fometal for Goods One.

78.    Defendant Metal West's actions were designed to deprive Plaintiff Fometal of payment for Goods One.

79.    Defendants Keili and Levitin were aware of the November 27, 2018, purchase order contract under POOG14004 between Defendant Metal West and Plaintiff Fometal for Goods One. See Exhibit B.

80.    Defendants Keili and Levitin intended to have Goods One unlawfully transferred to Defendant Keili from Defendant Metal West.

81.    Defendant Keili's actions were designed to tortiously interfere with an existing contract between Plaintiff Fometal and Defendant Metal West.

82.    Defendant Levitin's actions were designed to tortiously interfere with an existing contract between Plaintiff Fometal and Defendant Metal West.

83.    Defendant Metal West's actions were designed to defraud Plaintiff Fometal.

84.    Defendant Metal West instead elected to pay Defendant Keili through the parties' plan to defraud Plaintiff Fometal.

85.    Defendant Metal West never paid Plaintiff Fometal for delivery of Goods One.

86.    Defendant Keili never paid Plaintiff Fometal for delivery of Goods One.

87.     Defendants Metal West, Keili and Levitin never intended to pay Plaintiff Fometal for delivery of Goods One.

88.     Defendant Metal West, Keili and Levitin acted together to defraud Plaintiff Fometal.

89.     Defendant Metal West intentionally refused to pay Plaintiff Fometal for delivery of Goods One with the assistance, knowledge, and support of Defendants Keili and Levitin.

90.     As a result of Defendants Metal West, Levitin and Keili's acts, Plaintiff Fometal suffered loss and damages.

91.     As a result of Defendants Metal West, Levitin and Keili's omissions, Plaintiff Fometal suffered loss and damages.

92.     Plaintiff Fometal was never paid for its delivery of Goods One to Defendant Metal West.

93.     This sum remains outstanding inclusive of the date of filing this lawsuit.

94.     This sum exclusive of interest remains due and owing to Plaintiff Fometal from Metal West.

**Goods Two**

95.     On October 25, 2018, and July 9, 2019, Defendant Admiral placed orders through their agents Defendants Keili and Levitin pursuant to purchaser order numbers 87001814 and 87002153 with Plaintiff Fometal for pallets of aluminum sheets (hereafter "Goods Two"). A copy of correspondence and the purchaser orders evidencing this are annexed hereto as Exhibit D.

96.     Defendant Admiral ordered Goods Two from the Defendant Admiral's regional office in Albany Northeast Industrial Park, 2 Van Buren Blvd, Guilderland, New York 12085 in the State of New York.

97.     The contract for Goods Two was a destination contract with transportation free on board ("FOB") in three containers from two locations in Italy to the United States of America.

98. Two (2) containers were shipped from the port of Naples by MSC Mediterranean Seal Pring Company (hereafter "MSC") identified by container numbers TCLU7066327 and MSCU4529025).

99. One (1) container was shipped from the port of Venice by Krohone Logistik identified by container number MSCU5669037).

100. Goods Two promptly arrived to the Port of New York, United States of America.

101. Plaintiff Fometal delivered Goods Two to the destination specified in the contract with Defendant Admiral.

102. Goods Two were delivered to Admiral as the consignees for Goods Two.

103. Defendant Admiral did not have the requisite import license to take custody of the Goods upon arrival in the United States of America.

104. At that point, Defendant Admiral as the consignee for Goods Two was obliged to inform Plaintiff Fometal or the clearing agents, MSC and Krohone Logistik that they did not have the license and it could not receive Goods Two.

105. At that point, Defendant Admiral could return Goods Two to Plaintiff Fometal.

106. Defendant Admiral did neither.

107. Defendant Admiral acknowledged that it received Goods Two in the three containers shipped.

108. The third parties, MSC and Krohone Logistik were authorized to release Goods Two only and exclusively to the consignee, Defendant Admiral.

109. Defendant Admiral as the contractual party upon receiving Goods Two was obliged to pay Plaintiff Fometal the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

110.    Plaintiff Fometal sent Defendant Admiral the three invoices requesting payment for Goods Two in the amount of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79). A copy of these invoices is annexed hereto as Exhibit E.

111.    The first invoice was sent on February 14, 2019.  See, Exhibit E.

112.    The second invoice was sent on August 2, 2019.  See, Exhibit E.

113.    Defendant Admiral failed to pay Plaintiff Fometal for Goods Two.

114.    Since August 2, 2019, Defendant Admiral has refused to pay Plaintiff Fometal for Goods Two.

115.    On or about December 14, 2021, Defendant Admiral was acquired by Defendant Reliance, a Delaware corporation traded on the New York Stock Exchange.

116.    On information and belief, Defendant Reliance acquired a controlling interest in Defendant Admiral becoming its successor in interest.

117.    On information and belief, Defendant Admiral is an agent of Defendant Reliance.

118.    Defendant Admiral never paid Plaintiff Fometal the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

119.    This sum remains outstanding inclusive of the date of filing this lawsuit.

120.    This sum exclusive of interest remains due and owing to Plaintiff Fometal from Defendant Admiral.

**Tortious Interference and conspiracy to defraud**

121.    As the consignee of Goods Two, Defendant Admiral had no authority to assign the title of Goods Two to Defendant Keili.

122.    Defendant Admiral as the consignee for Goods Two never communicated a request to Plaintiff Fometal to assign the title of Goods Two to Defendant Keili.

123.    Goods Two had not been paid for by Defendant Admiral causing Plaintiff Fometal to having a superior right and title to Goods Two.

124.    Defendant Admiral did not have authorization from Plaintiff Fometal to transfer the Goods Two to Defendants Keili and Levitin pursuant to a transfer document.

125.    Defendant Admiral was precluded from writing this transfer document.

126.    The transfer document could only have been prepared by Plaintiff Fometal as the owner of Goods Two.

127.    Defendants Keili and Levitin were aware of the existence of a contract between Plaintiff Fometal and Defendant Admiral. See Exhibit D.

128.    As the consignee of Goods Two, Defendant Admiral had no authority to assign the title of Goods Two to Defendants Keili and Levitin pursuant to a transfer document with MSC and Krohone Logistik.

129.    Only Plaintiff Fometal could do so as the owner of Goods Two prior to payment from Defendant Admiral.

130.    At no time did Defendant Admiral communicate to MSC and Krohone Logistik that it was not satisfied with the Goods Two.

131.    At no time did Defendant Admiral communicate to Plaintiff Fometal that it was not satisfied with the Goods Two.

132.    At no time did Defendant Admiral communicate to MSC and Krohone Logistik that it wished to return Goods Two to Plaintiff Fometal.

133.    At no time did Defendant Admiral communicate to Plaintiff Fometal that it wished to return Goods Two to Plaintiff Fometal.

134.    Defendant Admiral at no point communicated to Plaintiff Fometal that it was rejecting Goods Two.

135.     Defendant Admiral assigned the title of Goods Two to Defendants Keili and Levitin without obtaining Plaintiff Fometal's express and/or implied permission and/or consent.

136.     Defendants Keili and Levitin as Defendant Admiral's agents never informed Plaintiff Fometal of the assignment of title of Goods Two to them from Defendant Admiral.

137.     Defendants Keili and Levitin as Defendant Admiral's agents never obtained Plaintiff Fometal's express and/or implied consent for the assignment of title of Goods Two to them from Defendant Admiral.

138.     The only company which had the right to use Goods Two in the three containers upon arrival in the United States of America was Defendant Admiral, as the consignee.

139.     Defendant Admiral's assignment of title of Goods Two to Defendant Keili was unlawful and a breach of the agreements by and between Defendant Admiral and Plaintiff.

140.     Following this assignment, Defendant Keili paid Defendant Admiral for Goods Two and not Plaintiff Fometal.

141.     Defendant Admiral never paid Plaintiff Fometal for Goods Two.

142.     Defendant Keili never paid Plaintiff Fometal for Goods Two.

143.     Defendant Keili's actions tortiously interfered with an existing contract between Plaintiff Fometal and Defendant Admiral.

144.     Defendants Admiral and Keili never intended to pay Plaintiff Fometal for delivery of Goods Two.

145.     Defendants Admiral and Keili acted together to defraud Plaintiff Fometal.

146.     Defendant Admiral refused to pay Plaintiff Fometal for delivery of Goods Two with the assistance, knowledge, and support of Defendant Keili.

147.     As a result of Defendants Admiral and Keili's acts, Plaintiff Fometal suffered loss and damages.

148.    As a result of Defendants Admiral and Keili's omissions, Plaintiff Fometal suffered loss and damages.

149.    Plaintiff Fometal was never paid for its delivery of Goods Two to Defendant Admiral.

150.    On November 8, 2021, via electronic mail message, Defendant Admiral's attorney stated Defendant Admiral did not request Goods Two from Plaintiff Fometal. A copy of this electronic mail message is annexed hereto as Exhibit F.

151.    This is factually untrue where Defendant Admiral was the customer for the Goods Two from Plaintiff Fometal. See Exhibit A.

152.    Defendant Admiral's attorney in the same electronic mail message stated that Defendant Admiral had purchased Goods Two from Defendant Keili.

153.    This is factually untrue when Defendant Admiral admitted via electronic mail message on December 11, 2019, it placed the order for Goods Two from Plaintiff Fometal via Defendant Admiral's agent, Defendant Keili. See Exhibit A.

154.    In addition, Slim Aluminum S.p.a, (based in Italy) who was the original producer of the Goods Two confirmed in their packing list for Goods Two that Plaintiff Fometal was the business to receive Goods Two and Defendant Admiral was the customer/recipient, not Defendant Keili. A copy of this packing list is annexed hereto as Exhibit G.

155.    Defendant Admiral's attorney's statement in the electronic mail message is factually untrue.

156.    Defendant Admiral was the customer for the Goods Two from Plaintiff Fometal.

157.    Defendants Keili and Levitin were not the customers for the Goods Two from Plaintiff Fometal.

158.    Defendants Keili and Levitin acted as agents on behalf of Defendant Admiral. See Exhibit F.

159.    Defendant Admiral's attorney's statement of November 8, 2021, was false.

160.    Defendant Admiral's attorney's statement of November 8, 2021, was calculated to delay the Plaintiff's filing of this lawsuit.

161.    Defendant Admiral was in the final stages of being acquired by Defendant Reliance.

162.    Pursuant to Defendant Reliance's press release issued on December 14, 2021, Defendant Reliance's acquisition of Defendant Admiral was completed on or about December 14, 2021.  See a copy of this press release marked as Exhibit H.

163.    Defendant Admiral's statement was made in order for Plaintiff Fometal to rely on the false statement and not file a lawsuit against Defendant Admiral to buy Defendant Admiral time to consummate Defendant Reliance's acquisition of Defendant Admiral.

164.    Plaintiff by initially relying on this statement from Defendant Admiral did not file this lawsuit in November 2021.

165.    Defendant Reliance's acquisition of Defendant Admiral was completed on or about December 14, 2021.  See, Exhibit H.

166.    Between November 2021 and the present, no payments were made to Plaintiff Fometal for Goods Two.

167.    Plaintiff Fometal instead has suffered loss and damages by investigating further the Defendants Admiral's statements from its attorney which are false.

**Common law fraud by Defendants**

168.    On July 9, 2019, via electronic mail message, Defendants Keili and Levitin as the agents on behalf of Defendants Admiral and Metal West represented via electronic mail message as fact to Plaintiff Fometal that Defendant Keili and Levitin would send an international high priority wire to Plaintiff Fometal as payment for the shipped Goods by July 10, 2019. A copy of this electronic mail message is annexed hereto as Exhibit I.

169.    Defendant Levitin's representation was false.

170.    Defendant Keili's representation was false.

171.    Defendants Keili and Levitin did not send an electronic wire to Plaintiff Fometal for Goods Two on or before July 10, 2019.

172.    On July 11, 2019, Plaintiff Fometal's agent sent an electronic mail message to Defendant Levitin stating: "the July 10 was yesterday, please send me the wire." A copy of this electronic mail message is annexed hereto as Exhibit J.

173.    Plaintiff Fometal had relied on Defendant Levitin's representation of July 9, 2019.

174.    Defendant Keili never sent an electronic wire to Plaintiff Fometal for Goods Two.

175.    Defendant Keili never paid Plaintiff Fometal for Goods Two.

176.    On July 9, 2019, Defendants Keili and Levitin acknowledged in this electronic mail message that Defendant Keili owed Plaintiff Fometal money for Goods Two. See Exhibit I.

177.    On July 11, 2019, Defendant Levitin via electronic mail message made a further representation as fact to Plaintiff Fometal's agent that Defendant Keili should have the electronic wire "any time now and once I get confirmation will send it to you". A copy of this electronic mail message is annexed hereto as Exhibit K.

178.    On July 11, 2019, Defendant Keili via electronic mail message made a further representation as fact to Plaintiff Fometal's agent that Defendant Keili should have the electronic wire "any time now and once I get confirmation will send it to you".  See Exhibit K.

179.    This representation was false.

180.    Defendant Keili did not send an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

181.    On July 16, 2019, Plaintiff Fometal's agent sent an electronic mail message to Defendant Levitin stating: "Dear Mendy, following phone conversation please send me now promised the wire……..for total amount of $151.171.79 USD related to Admiral invoices." A copy of this electronic mail message is annexed hereto as Exhibit L.

182.    Plaintiff Fometal had relied on Defendant Levitin's representation of July 11, 2019, and telephone conversation with Defendant Levitin.

183.    Defendant Keili never sent an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

184.    Defendant Keili never paid Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

185.    On July 17, 2019, Defendant Levitin via electronic mail message made a further representation as fact to Plaintiff Fometal's agent that Defendant Keili should have the electronic wire "tomorrow if Fometal cannot wait I totally understand". A copy of this electronic mail message is annexed hereto as Exhibit M.

186.    Defendant Keili did not send an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal on or before July 18, 2019.

187.    Defendant Levitin's representation was false.

188.    Defendant Keili's representation was false.

189.    Defendant Keili never sent an electronic wire to Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

190.    Defendant Keili never paid Plaintiff Fometal for the Goods delivered by Plaintiff Fometal.

191.    As a result of Defendants Keili and Levitin's acts, Plaintiff Fometal suffered loss and damages.

192.    As a result of Defendants Keili and Levitin's omissions, Plaintiff Fometal suffered loss and damages.

**Notice to the defendants of loss and damage prior to filing this lawsuit**

193.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Metal West setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit N.

194.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Admiral setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit O.

195.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Keili setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit P.

196.    On or about September 14, 2021, and October 25, 2021, Plaintiff Fometal's attorney sent a demand letter and a litigation hold letter to Defendant Levitin setting out the basis of their claim and loss and damage suffered by Plaintiff Fometal to date. A copy of this correspondence is annexed hereto as Exhibit Q.

197.    With the exception of acknowledging receipt of the demand letter Defendants Keili and Levitin have failed and/or refused to respond to Plaintiff Fometal.

198.    No payment has been offered or made by any of the Defendants since then to compensate Plaintiff Fometal for its continuing loss and damages.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT UNDER THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS**
**against all Defendants**

199.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

200.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

201.    Both the United States of America and Italy have at all material times been signatories, parties, and contracting states to the United Nations Convention on Contracts for the International Sale of Goods ("CISG")

202.    Defendant Metal West placed a purchasing order with Plaintiff Fometal for delivery of Goods One from Italy.

203.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

204.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods One, Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

205.    At all times relevant herein Defendant Admiral placed a purchasing order with Plaintiff Fometal for delivery of Goods Two from Italy.

206.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

207.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods One, Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

208.    These purchase orders are existing and enforceable contracts between Plaintiff and Defendants Metal West and Admiral.

209.    At all times relevant herein, Defendants have failed to tender payment, on the outstanding principal cumulative balance of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) to the Plaintiff.

210.    Plaintiff elects to pursue its remedies under Article 74 of the Sale of Goods Convention, since Defendants have breached their contractual obligations with the Plaintiff by refusing to pay for the goods they accepted.

211.    By reason of Defendants' acts and/or omissions, Plaintiff suffered loss and damages.

212.    By reason of the foregoing, Defendants are liable to Plaintiff in the sum of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) exclusive of interest.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT against all Defendants

213.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

214.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

215.    Both the United States of America and Italy have at all material times been signatories, parties, and contracting states to the United Nations Convention on Contracts for the International Sale of Goods ("CISG")

216.    Defendant Metal West placed a purchasing order with Plaintiff Fometal for delivery of Goods One from Italy.

217.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

218.    Defendant Admiral placed a purchasing order with Plaintiff Fometal for delivery of Goods Two from Italy.

219.    Plaintiff Fometal promptly delivered Goods One to the United States of America.

220.    These purchase orders are existing and enforceable contracts between Plaintiff and Defendants Metal West and Admiral.

221.    Plaintiff performed under the terms of the purchasing orders by delivering Goods One and Two to Defendants Metal West and Admiral.

222.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods One,

Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

223.    Pursuant to the purchasing order with Plaintiff Fometal for delivery of Goods Two, Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

224.    Plaintiff Fometal demanded payment from Metal West for delivery of Goods One.

225.    Plaintiff Fometal demanded payment from Admiral for delivery of Goods Two.

226.    Defendants Metal West and Admiral failed to make any payments to discharge the amounts due and owing under the purchase orders.

227.    By reason of Defendants' acts and/or omissions, Plaintiff suffered loss and damages.

228.    By reason of the foregoing, Defendants are liable to Plaintiff in the amount of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) exclusive of interest.

### THIRD CAUSE OF ACTION
### (COMMON LAW FRAUD against all Defendants

229.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

230.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

231.    On July 9 and July 11, 2019, Defendant Levitin as Defendants Admiral and Metal West's agent represented as fact to Plaintiff that Defendant Keili would send an international high-value wire to Plaintiff Fometal as payment for the Goods delivered by Plaintiff Fometal.

232.    Defendant Levitin did not send an international high-value wire to Plaintiff Fometal for Goods Two and his representation were false.

233.    On November 8, 2021, Defendant Admiral made a statement that it had no contact with Plaintiff Fometal which was false and was calculated to delay/prevent Plaintiff from filing this lawsuit to facilitate Defendant Admiral being acquired by Defendant Reliance. See Exhibit F and Exhibit H.

234.    Plaintiff relied on Defendant Levitin's representations as being true in his electronic mail messages to Defendant Levitin on July 11 and 16, 2019.

235.    On July 17, 2019, Defendant Levitin represented as fact to Plaintiff that Defendant Keili would send an international high-value wire to Plaintiff Fometal as payment for Goods Two.

236.    Defendant Keili did not send an international high-value wire to Plaintiff Fometal for Goods Two.

237.    This representation was false.

238.    Defendants' representations were made to Plaintiff so that Plaintiff would rely on them.

239.    As a result of Defendants' act of fraud, Plaintiff has suffered loss and damage.

240.    By reason of the foregoing, the Defendants are liable to Plaintiff in the amount of damages to be determined at trial.

### FOURTH CAUSE OF ACTION
### (CONVERSION against all Defendants)

241.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

242.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

243.    Defendants Metal West and Keili converted ownership of Plaintiff Goods One to themselves without payment to Plaintiff.

244.    Defendant Metal West transferred ownership of Plaintiff Goods One to Defendant

24

Keili without Plaintiff's consent.

245.    Defendant Metal West transferred ownership of Plaintiff Goods One to Defendant Keili without Plaintiff's lawful authority.

246.    Defendant Keili supported the unlawful transfer of Goods One to them from Defendant Metal West.

247.    Defendant Keili knowingly received this converted property from Defendant Metal West.

248.    Plaintiff had the superior title to Goods One.

249.    Defendants Admiral and Keili converted ownership of Plaintiff Goods Two to themselves without payment to Plaintiff.

250.    Defendant Admiral transferred ownership of Plaintiff Goods Two to Defendant Keili without Plaintiff's consent.

251.    Defendant Admiral transferred ownership of Plaintiff Goods Two being their corporate assets to Defendant Keili without Plaintiff's lawful authority.

252.    Defendant Keili supported the unlawful transfer of Goods Two to them from Defendant Metal West.

253.    Defendant Keili knowingly received this stolen property from Defendant Metal West.

254.    Plaintiff had the superior title to Goods Two.

255.    By reason of the aforementioned facts, Defendants committed conversion of Plaintiff's assets.

256.    By reason of Defendants' acts and/or omissions, Plaintiff suffered loss and damages.

257.    By reason of the foregoing, Defendants are liable to Plaintiff in in the amount of

two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07) exclusive of interest.

## FIFTH CAUSE OF ACTION
### (UNJUST ENRICHMENT against ALL Defendants)

258.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

259.    Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

260.    Pursuant to the purchasing order from Defendant Metal West, Plaintiff Fometal promptly delivered Goods One to Defendant Metal West for the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

261.    Defendant Metal West accepted the benefit of Goods One by taking possession of them from Plaintiff Fometal.

262.    Defendants Keili and Levitin pursuant to a request to Metal West were conferred a benefit by receiving title and possession of Goods One worth seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

263.    Defendants Keili and Levitin accepted the benefit of Goods One by taking possession of them from Metal West.

264.    Defendants Metal West, Keili and Levitin never paid Plaintiff Fometal for Goods One.

265.    Pursuant to the purchasing order from Defendant Admiral, Fometal promptly delivered Goods Two to Defendant Admiral for the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

266.    Defendant Admiral accepted the benefit of Goods Two by taking possession of them from Plaintiff Fometal.

267.    Defendant Admiral conferred a benefit upon Defendants Keili and Levitin pursuant

to a request to transfer title and possession of Goods Two worth one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

268. Defendants Keili and Levitin accepted the benefit of Goods Two by taking possession of them from Defendant Admiral.

269. For this benefit, Defendants Keili and Levitin were obliged to make payments to Plaintiff for Goods One and Two.

270. Defendants Admiral, Keili and Levitin never paid Plaintiff Fometal for Goods Two.

271. Defendants Keili and Levitin acknowledged this in communication with Plaintiff. See Exhibit J.

272. Defendants Keili and Levitin failed to make any payments to Plaintiff for Goods One and Two.

273. Defendants Keili and Levitin refused to make payments to Plaintiff.

274. Defendants Keili and Levitin's acts resulted in Plaintiff being deprived of re-payments of two hundred twenty-three thousand six hundred seventeen dollars seven cents ($223,617.07).

**SIXTH CAUSE OF ACTION**
**(TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS against Defendants Keili and Levitin)**

275. Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

276. Plaintiff Fometal incorporates all preceding paragraphs as if fully restated herein.

277. Plaintiff Fometal had an enforceable agreement with Metal West for the delivery of Goods One worth seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

278. Defendants Keili and Levitin were aware of the existence of the agreement between

Plaintiff Fometal and Metal West.

279.    Defendants Keili and Levitin made a request of Metal West that it transfer title of Goods One to Defendant Keili.

280.    Defendant Metal West complied with Defendants Keili's and Levitin's request.

281.    Defendant Metal West unlawfully transferred Goods One to Defendant Keili.

282.    Defendant Keili never paid Plaintiff Fometal for Goods One.

283.    Plaintiff Fometal suffered pecuniary loss in the amount of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

284.    Plaintiff Fometal had an enforceable agreement with Admiral for the delivery of Goods Two worth one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

285.    Defendants Keili and Levitin were aware of the existence of the agreement between Plaintiff Fometal and Admiral.

286.    Defendants Keili and Levitin made a request of Defendant Admiral that it transfer title of Goods One to Defendant Keili.

287.    Defendant Admiral complied with Defendants Keili's and Levitin's request.

288.    Defendant Admiral unlawfully transferred Goods One to Defendant Keili.

289.    Defendant Keili never paid Plaintiff Fometal for Goods One.

290.    As a result, Plaintiff Fometal suffered pecuniary loss in the amount of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

291.    By reason of the foregoing, Defendants Keili and Levitin are liable to Plaintiff, Fometal in the amount of damages to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (CIVIL CONSPIRACY against ALL Defendants)

292.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

293.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

294.    Defendants conspired with one another to defraud Plaintiff.

295.    Defendants Metal West, Admiral, Keili, and Levitin committed a fraud to cause loss, harm and to defraud Plaintiff.

296.    Defendants Metal West, Admiral, Keili, and Levitin conducted unlawful transactions involving the purchase of Goods One and Goods Two from Plaintiff Fometal.

297.    Defendants Metal West, Admiral, Keili, and Levitin conducted these unlawful transactions so as to perpetrate a fraud to cause loss, harm and to defraud Plaintiff.

298.    Defendants Metal West, Admiral, Keili, and Levitin in so doing collectively participated in unlawful monetary transactions.

299.    Defendants Metal West, Admiral, Keili, and Levitin engaged and participated in unlawful monetary transactions to cause proximate damage to Plaintiff Fometal's business.

300.    Defendants Metal West, Admiral, Keili, and Levitin collectively participated in unlawful monetary transactions.

301.    The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff Fometal of its rights and interests in its Goods One and Goods Two.

302.    The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff Fometal of its rights and interests in its corporate assets.

303.    Each of Defendants' unlawful and overt acts were the proximate cause of Plaintiff Fometal's injuries/damages.

304.     By reason of the foregoing, each of the Defendants are liable to Plaintiff Fometal in the amount of damages to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (RICO: violations under 18 U.S.C. § 1962 (c) Use of Racketeering Income to Conduct or Participate in Conducting an Enterprise Engaged in or Affecting Interstate Commerce Through a Pattern of Racketeering Activity against all Defendants)

305.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

306.     The conduct, acts, and omissions of all Defendants set forth in this pleading were an integral part of the overall pattern and practices described herein, including utilizing interstate commerce for the purposes described in the above paragraphs.

307.     Income received by Defendants through the enterprise and predicate acts was derived from a pattern of racketeering activity.

308.     The Defendants are associated, in fact, for the purpose and goal of working together as an organized group, and each occupied a separate and distinct role within the fraudulent scheme.

309.     Defendants Metal West, Admiral, Reliance, and Keili are a "person" within the meaning of the statute.

310.     Defendant Keili is an "enterprise," in fact, within the meaning of the statute.

311.     The fraudulent scheme is an association, in fact, within the meaning of the statute.

312.     The fraudulent scheme was an ongoing organization that functioned as a continuing unit or association for a period of time.

313.     The fraudulent scheme operated through a chain of command structure headed by Defendant Keili and was organized into a discrete grouping of participants and actors with specific roles, functions, and duties.

314.     Defendants Keili and Levitin orchestrated that Defendants Metal West and Admiral pose as 'customers' in order to trick Plaintiff Fometal into shipping Goods One and Goods Two

from Italy to the United States of America in order to steal these goods without payment.

315. Defendants Metal West and Admiral coordinated this scheme by falsifying transfer identification documents for Goods One and Goods Two to facilitate Defendants Keili and Levitin's unlawful taking and possession of these goods at the point of entry into the United States of America.

316. Defendants Keili and Levitin, the agents for Defendants Metal West and Admiral, through the transmission of electronic mail messages and telephone calls made false representations to Plaintiff Fometal that they would wire payment to Plaintiff Fometal for Goods One and Goods Two.

317. No payment was ever wired by or on behalf of the Defendants to Plaintiff Fometal for Goods One and Goods Two.

318. The unlawful possession of Goods One and Goods Two by the Defendants continues and is ongoing.

319. Defendants Levitin, Metal West and Admiral operated or otherwise managed Defendant Keili through a pattern of racketeering activity.

320. Defendant Keili is a business engaged in and/or affecting interstate commerce.

321. Alternatively, the enterprise-in-fact consisting of all of the Defendants is a business engaged in and/or affecting interstate commerce.

322. Defendants participated in these affairs through a pattern of acts and activities that are indictable under 18 U.S.C. § 1961(1) (b): (a) 18 U.S.C. § 659 (relating to theft from interstate shipment); (b) 18 U.S.C.§1028 (relating to fraud and related activity in connection with identification documents); and (c) 18 U.S.C. §1343 (relating to wire fraud).

323. Through misconduct, acts, and omissions set forth herein, Defendants are liable for the acts, activities or conduct listed above and additionally for civil conspiracy and aiding and abetting acts giving rise to civil liability, the actual, constructive and equitable fraud by each of Defendants, and conspiracy to commit actual, constructive and equitable fraud.

324. The commission of each of the acts described herein are predicate acts, including

offenses that constitute instances of criminal theft, fraud and wire fraud pursuant to 18 U.S.C. § 1961(1) (b).

325.     By reason of Defendants' acts and/or omissions, Plaintiff Fometal suffered loss and damages.

326.     By reason of the foregoing, Defendants are each liable to Plaintiff Fometal in the amount of damages to be determined at trial.

327.     Pursuant to 18 U.S.C. § 1964(c) Plaintiffs are entitled to an award of triple money damages from Defendants on account of the violations of 18 U.S.C. § 1962(c) described above.

328.     Plaintiff respectfully requests a judgment against all the Defendants for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million which damages should be tripled pursuant to 18 U.S.C. § 1964(c), plus reasonable attorneys' fees.

## NINTH CAUSE OF ACTION
### (vicarious liability against Defendant Levitin)

**A.  Defendant Levitin Caused the Corporate Form of Keili to Be Used to Perpetrate an Actual Fraud on Plaintiff for Defendant Levitin's Personal Gain.**

329.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

330.     Plaintiff incorporates all preceding paragraphs as if fully restated herein.

331.     Defendant Levitin engaged in communications and fraudulent conduct with third parties with respect to Plaintiff that were dishonest of purpose and intended to deceive third parties and cause Plaintiff consequential financial loss and harm.

332.     Defendant Levitin used the corporate forms of Keili to perpetrate this fraud.

333.     Defendant Levitin perpetrated an actual fraud on Plaintiff for his own benefit, specifically misleading Plaintiff to believe that payments from Keili were forthcoming to Plaintiff for Goods Two.

334.    Defendant Levitin used the corporate form of Keili to perpetrate this fraud.

335.    Defendant Keili's commission of an actual fraud on Plaintiff was solely for Defendant Keili's own benefit.

336.    By reason of the foregoing, Defendant Keili is liable to Plaintiff in the amount of damages to be determined at trial.

**B. The Corporate Form Was Organized and Operated as a Mere Tool or Business Conduit of Another.**

337.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

338.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

339.    Defendant Levitin has or at relevant times had a financial interest, ownership, or control of Defendant Keili.

340.    There is such a unity between Defendant Levitin and Defendant Keili that the separateness of the corporations has ceased.

341.    Holding only Defendant Keili's corporate entity liable would result in the injustice of leaving Plaintiff with an uncollectible judgment against Defendant Levitin while allowing the corporation's alter egos, and each other, to go free. Thus, it is proper for Plaintiff to pierce the corporate veil of Defendant Keili for Defendant Levitin to be sued individually.

342.    By reason of the foregoing, Defendant Levitin is liable to Plaintiff in the amount of damages to be determined at trial.

<div align="center">

**TENTH CAUSE OF ACTION**
**(ACCOUNT STATED against ALL Defendants)**

</div>

343.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

344.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

345. Plaintiff and Defendant Metal West executed a valid contract in the form of a purchasing order for delivery of Goods One. Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

346. Goods One were promptly and safely delivered to Defendant Metal West and accepted by Defendant Metal West.

347. Pursuant to the terms of the purchasing order Defendant Metal West was obligated to pay Plaintiff the sum of seventy-two thousand four hundred forty-five dollars twenty-eight cents ($72,445.28).

348. Plaintiff and Admiral executed a valid contract in the form of a purchasing order for delivery of Goods Two. Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

349. Goods Two were promptly and safely delivered to Defendant Admiral and accepted by Defendant Admiral.

350. Pursuant to the terms of the purchasing order, Defendant Admiral was obligated to pay Plaintiff the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

351. Defendants Metal West and Admiral failed to discharge these payments to Plaintiff.

352. Defendants Keili and Levitin asked Defendant Metal West to "provide a document that would transfer the Goods One to Defendant Keili so that Defendant Keili could take the title and clear the Goods. "

353. Upon taking possession of Goods One, Defendants Keili and Levitin failed to discharge payment for Goods One to Plaintiff.

354. Defendants Keili and Levitin asked Defendant Admiral to provide a document that would transfer Goods Two to Defendant Keili.

355. Upon taking possession of Goods Two, Defendants Keili and Levitin failed to

34

discharge payment for Goods Two to Plaintiff.

356. Defendants manifested an assent to Plaintiff to owe all monies and interest under the purchase orders.

357. As a result of Defendants acts, Plaintiff Fometal suffered loss and damages.

358. By reason of the foregoing, the Defendants are liable to Plaintiff in the amount of damages to be determined at trial.

### ELEVENTH CAUSE OF ACTION
### (RESPONDENT SUPERIOR against Defendant Reliance)

359. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

360. By virtue of the corporate acquisition between Defendants Admiral and Reliance, Reliance emerged as the owner of the interest(s) and operations of Defendant Admiral.

361. By virtue of the corporate acquisition, Defendant Reliance is the successor in interest and/owner of Defendant Admiral.

362. Defendant Reliance was the principal of Defendant Admiral.

363. Defendant Admiral was the agent of Reliance.

364. Defendant Admiral was the customer for Goods Two with Plaintiff Fometal.

365. At all relevant times, Defendant Admiral while a customer for Goods Two was acting as an agent on behalf of Defendant Reliance, who is the owner and principal of Defendant Admiral.

366. Defendant Admiral as an agent of Defendant Reliance intended to defraud Plaintiff Fometal by not paying for Goods Two.

367. Defendant Admiral as an agent of Defendant Reliance falsified the transfer identification documents for Goods Two.

368.   Defendant Admiral as an agent of Defendant Reliance facilitated the unlawful transfer and theft of Goods Two by Defendants Keili and Levitin.

369.   At all relevant times, Defendant Admiral was an agent of the Defendant Reliance and was acting within the scope of their agency and control.

370.   Defendant Reliance is therefore vicariously liable under the doctrine of *respondent superior* for the acts and omissions of Defendant Admiral.

## JURY DEMAND

371.   Plaintiff requests that the Court set this case for a jury trial.

## PRAYER

372.   WHEREFORE, premises considered, Plaintiff respectfully requests that the Court set this case for trial and that the Court grant Plaintiff the following relief against Defendants, jointly and severally, as follows:

1. Compensatory damages of no less than one million dollars ($1,000,000) to be proven at trial;

2. Exemplary and treble damages to be proven at trial;

3. Attorneys' fees and costs of suit;

4. Pre-judgment interest at the maximum rate allowed by law; and

5. Such other and further relief as the Court deems just and proper.

DATED:      New York, New York
            March 8, 2022

                              Respectfully submitted,

                              Joshua D. Brinen
                              Brinen & Associates, LLC
                              90 Broad Street, Tenth Floor
                              New York, New York 10004
                              (212) 330-8151 (Telephone)

(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Attorney for the Plaintiff

# Exhibit A



ORDER CONFIRM your PO 87001814

CUSTOMER
ADMIRAL METAL – Albany
Northeast Industrial Park
2 Van Buren Blvd
Guilderland,  NY 12085

ADMIRAL PO 87001814

| 5052 alloy sheet  H32 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | THICKNESS | | WIDTH | | LENGTH | | WEIGHT | | | | |
| | inch | mm | inch | mm | inch | mm | pound | kg | | | |
| | 0,032 | 0,8128 | 48 | 1219,2 | 120 | 3048 | 7000 | 3175,15 | 1105 | 1695 | 2860 |
| | 0,063 | 1,6002 | 48 | 1219,2 | 96 | 2438,4 | 3500 | 1587,57 | 1090 | 1695 | 2845 |
| | 0,063 | 1,6002 | 48 | 1219,2 | 120 | 3048 | 3500 | 1587,57 | 1090 | 1695 | 2845 |
| | 0,08 | 2,032 | 48 | 1219,2 | 96 | 2438,4 | 7000 | 3175,15 | 1090 | 1695 | 2845 |
| | 0,09 | 2,286 | 48 | 1219,2 | 96 | 2438,4 | 7000 | 3175,15 | 1090 | 1695 | 2845 |
| | | | | | | | | | | | |

28000  12700,6

Skids weight 2500 lb

Paper interleaved

Light oil

Payment 60 days after BL

Other details following your PO 87001814



FO.MET.A.L. SRL – C.DA VALLECUPA – 64010 COLONNELLA (TE) ITALIA – P.IVA  IT 00899720676
TEL +39 0861 748990 – FAX +39 0861 748965 – INFO@FOMETAL.COM – WWW.FOMETAL.COM



**aluminium foundry - master alloys**

**ORDER CONFIRM your PO n 1015**

COLONNELLA 22/11/18

CUSTOMER
Primrose Alloys
330 Burlingame,CA 94010
(650) 558-8776 (650) 558-9510

POS 1 ALUMINIUM SHEET 5052 ALLOY H32
Size in inches
Thickness 0,25 – width  48,00 - length  96,00

Quantity    14110 pounds
Price    2950 €/MT
Thickness tolerance  + 0,000/- 0,0142 inches
Width tolerance + 0,000/- 0,1772 inches
Length tolerance +0,000/ - 0,20 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L

POS 2  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,25 – width  48,00 - length 120,00

Quantity    14110 pounds
Price    2950 €/MT
Thickness tolerance  + 0,000/- 0,0142 inches
Width tolerance + 0,000/- 0,1772 inches
Length tolerance +0,000/ - 0,20 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L

POS 3  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,25 – width  60,00 - length  120,00

Quantity    17417 pounds
Price    2950 €/MT
Thickness tolerance  + 0,000/- 0,0150 inches          11/27/2018 11:53:46 AM PST
Width tolerance + 0,000/- 0,1772inches
Length tolerance +0,000/ - 0,20 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L

No Stencil – paper interleaved- max 2000 lbs for skid

FOB price to Venezia port

Payment: against documents copy, BL. invoice, packing list. mill certificate, origin certificate

FO.MET.A.L. SRL – C.DA VALLECUPA – 64010 COLONNELLA (TE) ITALIA – P.IVA  IT 00899720676

TEL +39 0861 748990 – FAX +39 0861 748965 – INFO@FOMETAL.COM – WWW.FOMETAL.COM



**aluminium foundry - master alloys**
**ORDER CONFIRM your PO OG 14004**

Colonnella 22/11/18

CUSTOMER
O Neal Flat Rolled Metals
1229 South Fulton Avenue
Brighton, CO 80601

POS 1  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,19 – width  48,00 - length  96,00

Quantity   14110 pounds
Price    2950 €/MT

Thickness tolerance  + 0,0091/- 0,0091inches
Width tolerance + 0,1378/- 0,1378 inches
Length tolerance +0,16/ - 0,00 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L
paper interleaved

POS 2  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,19 – width  60,00 - length  144,00

Quantity  35274 pounds
Price    3000 €/MT

Thickness tolerance  + 0,0110/- 0,0110 inches
Width tolerance + 0,1378/- 0,1378 inches
Length tolerance +0,16/ - 0,00 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L
Pvc film black/white 80 microns

No Stencil — max 4000 lbs for skid

FOB price to Venezia port

Payment: 65 days after receiving documents copy, BL. invoice,
            packing list. mill certificate, origin certificate

NEHL TRADING LLC
00  ...  2015
11/27/2018  11:53:00 AM PST

Fometal s.r.l.
L'Amministrazione Unica

FO.MET.A.L. SRL – C.DA VALLECUPA – 64010 COLONNELLA (TE) ITALIA – P.IVA  IT 00899720676
TEL +39 0861 748990 – FAX +39 0861 748965 – INFO@FOMETAL.COM – WWW.FOMETAL.COM

SHIPPER

**FOMETAL SRL**
**C.DA VALLECUPA**
**64010 COLONELLA TE**
**ITALY**

CONSIGNEE

**ADMIRAL METALS - ALBANY**
**NORTHEAST INDUSTRIAL PARK**
**2 VAN BUREN BLDV**
**GUILDERLAND, NY 12085**

NOTIFY

**SAME AS CONSIGNEE**

BILL OF LADING NO. 50062/19-2



SEAFREIGHT SERVICE



**Krohne Logistik srl**
Via San Vincenzo, 59/1 – 16121 Genoa (Italy)
Tel. (+39) 010 5957746  Fax. (+39) 010 5956357
email : mail@krohnelogistik.it web : www.krohnelogistik.it

| PRE-CARRIAGE | PLACE OF RECEIPT | FOR DELIVERY CONTACT |
|---|---|---|
| | | **WORLDWIDE LOGISTIC PARTNERS INC.** |
| VESSEL | PORT OF LOADING | 1540 CARLEMONT DRIVE, STE J |
| **MSC GIOVANNA** | **VENEZIA, ITALY** | 60014 CRYSTAL LAKE IL |
| PORT OF DISCHARGE | PLACE OF DELIVERY | |
| **BOSTON, USA** | | |

| MARKS & NUMBERS | CARGO DESCRIPTION | GROSS WEIGHT | CBM |
|---|---|---|---|
| MSCU5669037 | 1X40' BOX CONTAINER STC : | | |
| S. 1988720 | ------------------------------------------- | | |
| 1-20 | 20 PALLETS | 19146,00 | 40,000 |
| | ALUMINIUM SHEETS | KGS. | M3 |
| ADMIRAL USA | FOB | | |
| | FREIGHT COLLECT | | |

ORIGINAL BILL OF LADING SURRENDERED
KROHNE LOGISTIK SRL

SHIPPED ON BOARD,
19.02.2019
KROHNE LOGISTIK SRL        SHIPPER'S LOAD STOWAGE AND COUNT

FREIGHT DETAILS & CHARGES

IMPORTANT :
ALL CHARGES FROM ARRIVAL CFS &/OR CY UPTO
DOOR REMAIN FOR ACCOUNT & CURE CONSIGNEE
UNLESS ULTERIOR DELIVERY TERMS ARE CLEARLY
SPECIFIED ON THIS BILL OF LADING
*****************************

RECEIVED in apparent good order and condition, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of Discharge or so near thereunto as the Vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the aforesaid Port unto Consignee's or their Assigns, they paying freight as indicated to the left plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all it's stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.  One original Bill of Lading must be surrendered duly endorsed in Exchange for the goods or delivery order.  IN WITNESS whereof the Master of the said Vessel has signed the number of original Bill of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void.

| FREIGHT PAYABLE AT | · PLACE & DATE OF ISSUE |
|---|---|
| **DESTINATION** | GENOA, 19.02.2019 |
| ORIGINALS ISSUED | SIGNATURE |
| **3/3(THREE)** | KROHNE LOGISTIK SRL AS AGENTS ONLY |

**O R I G I N A L**



**SHIPPER**

FOMETAL SRL
C.DE VALLE CUPA
64010 COLONELLA TE
ITALY

**CONSIGNEE**

O NEAL FLAT ROLLED METALS
1229 SOUTH FULTON AVENUE
BRIGHTON, CO 80607 USA

**NOTIFY**

SAME AS CONSIGNEE

BILL OF LADING NO. 50063/19-2

 Krohne Logistik srl

SEAFREIGHT SERVICE

 WCA 

**Krohne Logistik srl**
Via San Vincenzo, 59/1 – 16121 Genoa (Italy)
Tel. (+39) 010 5957746  Fax. (+39) 010 5956357
email : mail@krohnelogistik.it web : www.krohnelogistik.it

| PRE-CARRIAGE | PLACE OF RECEIPT | FOR DELIVERY CONTACT |
|---|---|---|
| VESSEL **MSC GIOVANNA** | PORT OF LOADING **VENEZIA, ITALY** | WORLDWIDE LOGISTIC PARTNERS INC. 1540 CARLEMONT DRIVE, STE J |
| PORT OF DISCHARGE **LONG BEACH, USA** | PLACE OF DELIVERY | 60014 CRYSTAL LAKE IL |

| MARKS & NUMBERS | CARGO DESCRIPTION | GROSS WEIGHT | CBM |
|---|---|---|---|
| CARU5732532 S. 1186568 1-13 ONEAL USA | 1X40' BOX CONTAINER STC : ------------------------------------------- 13 PALLETS ALUMINIUM SHEETS FOB | 21277,00 KGS | 40,000 M3 |

FREIGHT COLLECT

*ORIGINAL BILL OF LADING SURRENDERED
KROHNE LOGISTIK SRL*

SHIPPED ON BOARD,
19.02.2019
KROHNE LOGISTIK SRL    SHIPPER'S LOAD STOWAGE AND COUNT

**FREIGHT DETAILS & CHARGES**

IMPORTANT :
ALL CHARGES FROM ARRIVAL CFS &/OR CY  UPTO
DOOR REMAIN FOR ACCOUNT & CURE CONSIGNEE
UNLESS ULTERIOR DELIVERY TERMS ARE CLEARLY
SPECIFIED ON THIS BILL OF LADING
*****************************

RECEIVED in apparent good order and condition, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of Discharge or so near thereunto as the Vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the aforesaid Port unto Consignee's or their Assigns, they paying freight as indicated to the left plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all it's stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.  One original Bill of Lading must be surrendered duly endorsed in Exchange for the goods or delivery order.  IN WITNESS whereof the Master of the said Vessel has signed the number of original Bill of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void.

| FREIGHT PAYABLE AT | PLACE & DATE OF ISSUE |
|---|---|
| **DESTINATION** | GENOA, 19.02.2019 |
| ORIGINALS ISSUED | SIGNATURE |
| 3/3(THREE) | KROHNE LOGISTIK SRL AS AGENTS ONLY |

**O R I G I N A L**



SHIPPER

**FOMETAL SRL**
**C.DA VALLE CUPA**
**64010 COLONELLA TE**
**ITALY**

BILL OF LADING NO. 50046/19-2

**Krohne Logistik** srl

CONSIGNEE

**PRIMROSE ALLOYS**
**330 PRIMROSE ROAD, SUITE #205**
**BURLINGAME, CA 94010 USA**

# S E A F R E I G H T   S E R V I C E

  

NOTIFY

**SAME AS CONSIGNEE**

**Krohne Logistik srl**
Via San Vincenzo, 59/1 – 16121 Genoa (Italy)
Tel. (+39) 010 5957746  Fax. (+39) 010 5956357
email : mail@krohnelogistik.it web : www.krohnelogistik.it

| PRE-CARRIAGE | PLACE OF RECEIPT | FOR DELIVERY CONTACT |
|---|---|---|
| VESSEL | PORT OF LOADING | **WORLDWIDE LOGISTIC PARTNERS INC.** |
| **MSC MARYLENA** | **VENEZIA, ITALY** | **1540 CARLEMONT DRIVE, STE J** |
| PORT OF DISCHARGE | PLACE OF DELIVERY | **60014 CRYSTAL LAKE IL** |
| **NEW YORK, USA** | | |

| MARKS & NUMBERS | CARGO DESCRIPTION | | GROSS WEIGHT | CBM |
|---|---|---|---|---|
| TTNU4861047 S.2054059 | **1X40' BOX CONTAINER STC : 23 PALLETS** | | **22133,00** | **40,000** |
| FSCU4947455 S.PP500514 | **1X40' BOX CONTAINER STC : 19 PALLETS** | | **18589,00** | **40,000** |
| MSCU4938907 S.MASP51127 | **1X40' BOX CONTAINER STC : 17 PALLETS** | | **17452,00 KGS.** | **40,000 M3** |
| PRIMROSE ALLOYS USA | **ALUMINIUM SHEETS FOB** | | | |
| | **FREIGHT COLLECT** | | | |

ORIGINAL BILL OF LADING SURRENDERED
KROHNE LOGISTIK SRL

SHIPPED ON BOARD,
20.02.2019
KROHNE LOGISTIK SRL

**SHIPPER'S LOAD STOWAGE AND COUNT**

FREIGHT DETAILS & CHARGES

IMPORTANT :
ALL CHARGES FROM ARRIVAL CFS &/OR CY  UPTO
DOOR REMAIN FOR ACCOUNT & CURE CONSIGNEE
UNLESS ULTERIOR DELIVERY TERMS ARE CLEARLY
SPECIFIED ON THIS BILL OF LADING
*****************************

RECEIVED in apparent good order and condition, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of Discharge or so near thereunto as the Vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the aforesaid Port unto Consignee's or their Assigns, they paying freight as indicated to the left plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all it's stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.  One original Bill of Lading must be surrendered duly endorsed in Exchange for the goods or delivery order.  IN WITNESS whereof the Master of the said Vessel has signed the number of original Bill of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void.

| FREIGHT PAYABLE AT | PLACE & DATE OF ISSUE |
|---|---|
| **DESTINATION** | **GENOA, 20.02.2019** |
| ORIGINALS ISSUED | SIGNATURE |
| **3/3 (THREE)** | KROHNE LOGISTIK SRL AS AGENTS ONLY |

# O R I G I N A L



**Da:** Ann Johnson <JohnsonA@AdmiralMetals.com>
**Inviato:** martedì 17 dicembre 2019 14:12
**A:** Modica, Michael <MichaelModica@trustaltus.com>
**Oggetto:** FW: FO.MET.A.L. SRL -total unpaid: EUR 133,564.93

**CAUTION:** External Sender

Michael,

I just wanted to confirm that you received this email and all the attachments that I sent last week.. Thank you.

Ann M. Johnson
Accounts Payable Manager
Admiral Metals Servicenter Co. Inc.
11 Forbes Road
Woburn, MA 01801
johnsona@admiralmetals.com
Ph# 781-937-4496
Fax# 781-932-1059

**From:** Ann Johnson
**Sent:** Wednesday, December 11, 2019 9:48 AM
**To:** 'Modica, Michael' <MichaelModica@trustaltus.com>
**Cc:** Dave Pascucci <PASCUCCID@AdmiralMetals.com>; Joe Cannata <CANNATAJ@AdmiralMetals.com>; Darren Gaudreault <GAUDREAULTD@AdmiralMetals.com>
**Subject:** RE: FO.MET.A.L. SRL -total unpaid: EUR 133,564.93

Good Morning Michael,

Well, we've done a little research on our end and below is a recap of what we have found regarding this incident. Please note that I am copying Dave Pascucci, our CFO, Joe Cannata, our Product Manager who dealt with the purchase of the material in question, and Darren Gaudreault, our Purchasing Manager.

Joe Cannata placed 2 purchase orders, resulting in the 3 shipments below, with Keili Trading LLC, a broker, who in turn purchased the material from FO.MET.A.L.

PO#87001814 ordered 10/25/2018 and delivered 3/21/2019 for a total of $87407.47, the shipment consisted of the following:

| DESCRIPTION OF GOODS | SURFACE TREATMENT | ALLOY | Size | QUANTITY (LB) | UNIT PRICE (USD/LB) | TOTAL AMOUNT (USD) | |
|---|---|---|---|---|---|---|---|
| ALUMINUM SHEET | Mill | 5052 H32 | .032" 48"120" | 14,696 | 1.76 | $ | 25,870.86 |
| ALUMINUM SHEET | Mill | 5052 H32 | .063" 48"96" | 7,822 | 1.76 | $ | 13,769.87 |
| ALUMINUM SHEET | Mill | 5052 H32 | .063" 48"120" | 6,453 | 1.76 | $ | 11,359.74 |
| ALUMINUM SHEET | Mill | 5052 H32 | .080" 48"96" | 6,256 | 1.76 | $ | 11,013.50 |
| ALUMINUM SHEET | Mill | 5052 H32 | .090" 48"96" | 14,425 | 1.76 | $ | 25,393.51 |
| TOTAL | | | | 49,652 | | $ | 87,407.47 |

The invoice was paid by wire transfer on 4/5/2019 in the amount of $80,476.85 (we deducted $6,930.62 that we had written off back in 2013 for defective material, with Keili's approval).

PO#87001814 ordered 10/25/2018 and delivered 5/22/2019 for a total of $34242.92, the shipment consisted of the following:

| DESCRIPTION OF GOODS | SURFACE TREATMENT | ALLOY | Size | QUANTITY (LB) | UNIT PRICE (USD/LB) | TOTAL AMOUNT (USD) | |
|---|---|---|---|---|---|---|---|
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 96" | 5681.31 | 1.685 | $ | 9,573.01 |
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 120" | 6179.56 | 1.685 | $ | 10,412.56 |
| ALUMINUM SHEET | Mill | 5052 H32 | .19" 48" 144" | 8461.34 | 1.685 | $ | 14,257.36 |
| TOTAL | | | | 20,322 | | $ | 34,242.92 |

The invoice was paid by wire transfer on 5/22/2019 in the amount of $34,242.92.

PO#87002153 ordered 07/09/2019 and delivered on 7/10/2019 for a total of $29392.71, the shipment consisted of the following:

| DESCRIPTION OF GOODS | SURFACE TREATMENT | ALLOY | Size | QUANTITY (LB) | UNIT PRICE (USD/LB) | TOTAL AMOUNT (USD) | |
|---|---|---|---|---|---|---|---|
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 96" | 8933.13 | 1.3429 | $ | 11,996.30 |
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 120" | 8357.72 | 1.3429 | $ | 11,223.58 |
| ALUMINUM SHEET | Mill | 5052 H32 | .19" 48" 144" | 4596.64 | 1.3429 | $ | 6,172.83 |
| TOTAL | | | | 21,887.49 | | $ | 29,392.71 |

This invoice was paid by wire transfer on 7/11/2019 in the amount of $29,392.71.

Admiral has fulfilled it's obligation in paying for the material, which Keili ordered from FO.MET.A.L., and it is Keili's responsibility to pay FO.MET.A.L. We would also appreciate if things were cleared up with Coface on our behalf, as we are already feeling the effects of this incident on our overseas shipments.

I have attached the copies of the invoices, packing lists and wire confirms for each shipment. Please keep us up to date with the progress of the investigation. Thank you.

Ann M. Johnson
Accounts Payable Manager
Admiral Metals Servicenter Co. Inc.
11 Forbes Road

Woburn, MA 01801
johnsona@admiralmetals.com
Ph# 781-937-4496
Fax# 781-932-1059

**From:** Modica, Michael <MichaelModica@trustaltus.com>
**Sent:** Friday, December 6, 2019 10:22 AM
**To:** Ann Johnson <JohnsonA@AdmiralMetals.com>
**Subject:** FO.MET.A.L. SRL -total unpaid: EUR 133,564.93

Ann,

Per our conversation, the highlighted below is all I have as of today but I did request the
documentation from my Partner in Italy and will forward it to you when received.

| 32 | Invoice | EUR | 38,270.62 | 0.00 | 38,270.62 | 02/08/2019 | 04/30/2019 | Due 81 days | no |
| 33 | Invoice | EUR | 38,237.55 | 0.00 | 38,237.55 | 02/08/2019 | 04/30/2019 | Due 81 days | no |
| 46 | Invoice | EUR | 57,056.76 | 0.00 | 57,056.76 | 02/14/2019 | 04/30/2019 | Due 75 days | no |

## Michael Modica
Altus Receivables Management
2400 Veterans Blvd. Ste 300
Kenner, LA 70062
Tel: 1-800-509-6060 ext 2386
Direct Dial: (303)-416-6315
Fax: 1 (504)-200-2922
E-mail:  michaelmodica@trustaltus.com




*Member of the Commercial Law League of America www.clla.org*

This email message, including any attachment(s), is intended only for the named recipient(s) and
may contain confidential, proprietary or legally privileged information. Unauthorized individuals
or entities are not permitted access to this information. Any dissemination, distribution,
disclosure, or copying of this information is unauthorized and strictly prohibited. If you have
received this message in error, please advise the sender by reply email, and delete this message
and any attachments.

Th s e-ma , and any attachments thereto,  s ntended on y for use by the addressee(s) named here n and may conta n confident a
nformat on,  ega y pr v eged nformat on, and/or export contro ed nformat on contro ed by e ther the ITAR (Internat ona  Traffic n
Arms Regu at ons) or the EAR (Export Adm n strat on Regu at ons) wh ch may requ re pr or approva  of the U.S. Government to be

exported or transferred to Fore gn Persons. If you are not the ntended rec p ent of th s e-ma  (or the person respons b e for de ver ng th s document to the ntended rec p ent), you are hereby not fied that any d ssem nat on, d str but on, pr nt ng or copy ng of th s e-ma , and any attachment thereto,  s str ct y proh b ted. If you have rece ved th s e-ma  n error, p ease respond to the nd v dua send ng the message, and permanent y de ete the or g na  and any copy of any e-ma  and pr ntout thereof.

  

Keili delivery
7-10-2019.pdf

Keili delivery
5-22-2019.pdf

Keili delivery
3-21-2019.pdf

Exhibit B

# Fometal
### fonderia alluminio · leghe madri ed affini

Azienda certificata ISO 9001:2008 e ISO 14001:2004

FOMETAL S.r.l.
Contrada Vallecupa - 64010 COLONNELLA (TE)
Tel. +39.0861.748959 - Fax +39.0861.748965
Reg.Trib Teramo n.12570 - C.C.I.A.A. Teramo n. 103693
Cod. Fisc 01699310692 - P. Iva IT 00899720676
Capitale Sociale: € 255.000
info@fometal.com - www.fometal.com

**INTESTATARIO DOCUMENTO**

ADMIRAL METALS - Albany
Northeast Industrial Park
2 Van Buren Blvd
Guilderland, NY 12085

**TIPO DOCUMENTO:**
**Fattura senza doc. trasporto**

| CODICE CLIENTE | PARTITA IVA | | Zona | DOCUMENTO N° | | DATA | | Pagina |
|---|---|---|---|---|---|---|---|---|
| 394 | US | | USD | 32 | | 08/02/2019 | | 1 |
| TIPO SPEDIZIONE | PORTO | | BANCA D'APPOGGIO | | IBAN | | | |
| | CIF NEW YORK PORT | | MONTE PASCHI SIENA | | IT56K0103002603000000912108 | | | |
| VS ORDINE N. | | DATA ORDINE | | | SWIFT CODE | | | |
| 87001814 | | 25/10/18 | | | PASCITM1A00 | | | |

| ARTICOLO | DESCRIZIONE | U.M. | QUANTITA' | PREZZO | SCONTO | IMPORTO | C.IVA |
|---|---|---|---|---|---|---|---|
| | ITEM 1) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.032 - width 48,00 | | | | | | |
| | Length 120,00 | | | | | | |
| | Quantity: pounds 14696,01 | KG | 6.666 | 3,3051 | | 22.031,80 | 81C |
| | | | | | | | |
| | ITEM 2) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.063 - width 48,00 | | | | | | |
| | Length 96,00 | | | | | | |
| | Quantity: pounds 7822,01 | KG | 3.548 | 3,3051 | | 11.726,49 | 81C |
| | | | | | | | |
| | ITEM 3) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.063 - width 48,00 | | | | | | |
| | Length 120,00 | | | | | | |
| | Quantity: pounds 6452,93 | KG | 2.927 | 3,2879 | | 9.623,68 | 81C |
| | | | | | | | |
| | Payment: 60 days against documents copy | | | | | | |
| | BL, invoice, packing list, mill | | | | | | |

| Totale Importi | Sconto % | Importo Sconto | Spese Acess. | Rivalsa e Bolli | Imponibili | Aliq.IVA | Imposta |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Cod.Pag. | Condizioni di Pagamento | Totale Imponibile | Totale Imposta | Totale Documento S.E.&O. |
|---|---|---|---|---|
| | | | | SEGUE |

| Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza |
|---|---|---|---|---|---|
| | | | | | |

# Fometal
**fonderia alluminio • leghe madri ed affini**

Contrada Vallecupa - 64010 COLONNELLA (TE)
Tel. +39.0861.748959 - Fax +39.0861.748965
Reg.Trib Teramo n.12570 - C.C.I.A.A. Teramo n. 103693
Cod. Fisc 01699310692 - P. Iva IT 00899720676
Capitale Sociale: € 255.000
info@fometal.com - www.fometal.com

Azienda certificata ISO 9001:2008 e ISO 14001:2004

**INTESTATARIO DOCUMENTO**

ADMIRAL METALS - Albany
Northeast Industrial Park
2 Van Buren Blvd
Guilderland, NY 12085

**TIPO DOCUMENTO:**
**Fattura senza doc. trasporto**

| CODICE CLIENTE | PARTITA IVA | | Zona | DOCUMENTO N° | | DATA | Pagina |
|---|---|---|---|---|---|---|---|
| 394 | US | | USD | 32 | | 08/02/2019 | 2 |
| TIPO SPEDIZIONE | PORTO | | BANCA D'APPOGGIO | | IBAN | | |
| | CIF NEW YORK PORT | | MONTE PASCHI SIENA | | IT56K0103002603000000912108 | | |
| VS ORDINE N. | | DATA ORDINE | | | SWIFT CODE | | |
| 87001814 | | 25/10/18 | | | PASCITM1A00 | | |

| ARTICOLO | DESCRIZIONE | U.M. | QUANTITA' | PREZZO | SCONTO | IMPORTO | C.IVA |
|---|---|---|---|---|---|---|---|
| | certificate, origin certificate. | | | | | | |

| Totale Importi | Sconto % | Importo Sconto | Spese Acess. | Rivalsa e Bolli | Imponibili | Aliq.IVA | Imposta |
|---|---|---|---|---|---|---|---|
| 43.381,97 | | 0,00 | 0,00 | 0,00 | 43.381,97 | | Non imp.art.8-1° C. |

| Cod.Pag. | Condizioni di Pagamento | Totale Imponibile | Totale Imposta | Totale Documento S.E.&O. |
|---|---|---|---|---|
| | | 43.381,97 | 0,00 | USD 43.381,97 |

| Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza |
|---|---|---|---|---|---|
| | | | | | |

Iva dovuta dal cessionario regime reverse charge art. 35 D.L. 269/2003 - INVERSIONE CONTA

# Fometal
**fonderia alluminio • leghe madri ed affini**

Azienda certificata ISO 9001:2008 e ISO 14001:2004

FOMETAL SRL
Contrada Vallecupa - 64010 CONTROGUERRA (TE)
Tel. +39.0861.748959 - Fax +39.0861.748965
Reg.Trib Teramo n.12570 - C.C.I.A.A. Teramo n. 103693
Cod. Fisc 01699310692 - P. Iva IT 00899720676
Capitale Sociale: € 255.000
info@fometal.com - www.fometal.com

| INTESTATARIO DOCUMENTO |
|---|
| ADMIRAL METALS - Albany |
| Northeast Industrial Park |
| 2 Van Buren Blvd |
| GUILDERLAND, NY 12085 |

**TIPO DOCUMENTO:**
**Fattura senza doc. trasporto**

| CODICE CLIENTE | PARTITA IVA | Zona | DOCUMENTO N° | DATA | Pagina |
|---|---|---|---|---|---|
| 394 | US | USD | 33 | 08/02/2019 | 1 |

| TIPO SPEDIZIONE | PORTO | BANCA D'APPOGGIO | IBAN | |
|---|---|---|---|---|
| | CIF NEW YORK PORT | MONTE PASCHI SIENA | IT56K0103002603000000912108 | |
| VS ORDINE N. | DATA ORDINE | | SWIFT CODE | |
| 87001814 | 25/10/18 | | PASCITM1A00 | |

| ARTICOLO | DESCRIZIONE | U.M. | QUANTITA' | PREZZO | SCONTO | IMPORTO | C.IVA |
|---|---|---|---|---|---|---|---|
| | ITEM 4) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.08 - width 48.00 | | | | | | |
| | Length 96.00 | | | | | | |
| | Quantity: pounds 14638.69 | KG | 6.640 | 3,2879 | | 21.831,66 | 81C |
| | ITEM) 5 ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.09 - width 48.00 | | | | | | |
| | Length 96.00 | | | | | | |
| | Quantity: pounds 14424.85 | KG | 6.543 | 3,2879 | | 21.512,73 | 81C |
| | Payment: 60 days against documents copy | | | | | | |
| | BL, invoice, packing list, mill | | | | | | |
| | certificate, origin certificate. | | | | | | |

| Totale Importi | Sconto % | Importo Sconto | Spese Acess. | Rivalsa e Bolli | Imponibili | Aliq.IVA | Imposta |
|---|---|---|---|---|---|---|---|
| 43.344,39 | | 0,00 | 0,00 | 0,00 | 43.344,39 | | Non imp.art.8-1° C. |

| Cod.Pag. | Condizioni di Pagamento | Totale Imponibile | Totale Imposta | Totale Documento S.E.&O. | |
|---|---|---|---|---|---|
| | | 43.344,39 | 0,00 | USD | 43.344,39 |

| Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza |
|---|---|---|---|---|---|
| | | | | | |

Iva dovuta dal cessionario regime reverse charge art. 35 D.L. 269/2003 - INVERSIONE CONTA

6/A

ORDER CONFIRM your PO n 1015

CUSTOMER
Primrose Alloys
330 Burlingame,CA 94010
(650) 558-8776 (650) 558-9510

POS 1  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,25 – width  48,00 - length  96,00

Quantity    14110 pounds
Price    2950 €/MT

Thickness tolerance  + 0,000/- 0,0142 inches
Width tolerance + 0,000/- 0,0142 inches
Length tolerance +0,000/ - 0,20 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L

POS 2  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,25 – width  48,00 - length 120,00

Quantity    14110 pounds
Price    2950 €/MT

Thickness tolerance  + 0,000/- 0,0142 inches
Width tolerance + 0,000/- 0,0142 inches
Length tolerance +0,000/ - 0,20 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L

POS 3  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,25 – width  60,00 - length  120,00

Quantity    17417 pounds
Price    2950 €/MT
FOB price to Venezia port

Payment before shipment against invoice

Thickness tolerance  + 0,000/- 0,0142 inches
Width tolerance + 0,000/- 0,0142 inches
Length tolerance +0,000/ - 0,20 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L

6 | B

ORDER CONFIRM your PO OG 14004

CUSTOMER
O Neal Flat Rolled Metals
1229 South Fulton Avenue
Brighton, CO 80601

POS 1  ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,19 – width  48,00 - length  96,00

Quantity    14110 pounds
Price    2950 €/MT

Thickness tolerance  + 0,091/- 0,091inches
Width tolerance + 0,1378/- 1,378 inches
Length tolerance +0,16/ - 0,00 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L
paper interleaved

POS 2   ALUMINIUM SHEET 5052 ALLOY  H32
Size in inches
Thickness 0,19 – width  60,00 - length  144,00

Quantity   35200 pounds
Price    3000 €/MT

Thickness tolerance  + 0,0110/- 0,0110 inches
Width tolerance + 0,1378/- 1,378 inches
Length tolerance +0,16/ - 0,00 inches
Weight  tolerance +/- 10 %
Certification AMS 4016L
Pvc film black/white 80 microns

No Stencil — max 4000 lbs for skid

FOB price to Venezia port

Payment 65 days after BL date

# Exhibit C

# Fo.Met.a.l. Srl

**RAFFINERIA ALLUMINIO – LEGHE MADRI ED AFFINI**
www.fometal.com

Colonnella lì:  28/09/19

SPETT.LE
O' NEAL FLAT ROLLED METALS
1229 South Fulton Avenue
Brighton, CO 80601

Subject: request for payment of overdue invoices.

With the present e-mail, we request payment of the following invoice:

n. 42 of 14-02-19    Usd    72.445,28

We must point out to you that by not receiving payment of the amount due by and not later than  10

OCTOBER 2019

we will be obliged to communicate, in accordance with the policy conditions, the non-payment to our

Credit Insurance Company which will proceed with the direct recovery.

Sure of your prompt remittance within the above deadline, best regards.



**Fometal** s.r.l.
L'Amministratore Unico

o.Met.a.l. s.r.l. – C.da Vallecupa – Via Bonifica – 64010 COLONNELLA (TE) – Tel. 0861-748959/748990 ric. aut.  Fax 0861-748965
Reg. Trib. Teramo n. 12570 – C.C.I.A.A. Teramo n. 103693 – Codice Fiscale 0169 931 069 2 – Partita IVA  0089 972 0676

Exhibit D

# Fometal
**fonderia alluminio • leghe madri ed affini**

FOMETAL S.R.L.
Contrada Vallecupa - 64010 COLONNELLA (TE)
Tel. +39.0861.748959 - Fax +39.0861.748965
Reg.Trib Teramo n.12570 - C.C.I.A.A. Teramo n. 103693
Cod. Fisc 01699310692 - P. Iva IT 00889720676
Capitale Sociale: € 255.000
info@fometal.com - www.fometal.com

Azienda certificata ISO 9001:2008 e ISO 14001:2004

**INTESTATARIO DOCUMENTO**

ADMIRAL METALS - Albany
Northeast Industrial Park
2 Van Buren Blvd
Guilderland, NY 12085

**TIPO DOCUMENTO**

**Fattura senza doc. trasporto**

| CODICE CLIENTE | PARTITA IVA | | Zona | DOCUMENTO N° | | DATA | | Pagina |
|---|---|---|---|---|---|---|---|---|
| 394 | US | | USD | 32 | | 08/02/2019 | | 1 |
| **TIPO SPEDIZIONE** | **PORTO** | | **BANCA D'APPOGGIO** | | **IBAN** | | | |
| | CIF NEW YORK PORT | | MONTE PASCHI SIENA | | IT56K0103002603000000912108 | | | |
| **VS ORDINE N.** | | **DATA ORDINE** | | | **SWIFT CODE** | | | |
| 87001814 | | 25/10/18 | | | PASCITM1A00 | | | |

| ARTICOLO | DESCRIZIONE | U.M. | QUANTITA' | PREZZO | SCONTO | IMPORTO | C.IVA |
|---|---|---|---|---|---|---|---|
| | ITEM 1) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.032 - width 48,00 | | | | | | |
| | Length 120,00 | | | | | | |
| | Quantity: pounds 14696,01 | KG | 6.666 | 3,3051 | | 22.031,80 | 81C |
| | | | | | | | |
| | ITEM 2) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.063 - width 48,00 | | | | | | |
| | Length 96,00 | | | | | | |
| | Quantity: pounds 7822,01 | KG | 3.548 | 3,3051 | | 11.726,49 | 81C |
| | | | | | | | |
| | ITEM 3) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.063 - width 48,00 | | | | | | |
| | Length 120,00 | | | | | | |
| | Quantity: pounds 6452,93 | KG | 2.927 | 3,2879 | | 9.623,68 | 81C |
| | | | | | | | |
| | Payment: 60 days against documents copy | | | | | | |
| | BL, invoice, packing list, mill | | | | | | |

| Totale Importi | Sconto % | Importo Sconto | Spese Acess. | Rivalsa e Bolli | Imponibili | Aliq.IVA | Imposta |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Cod.Pag. | Condizioni di Pagamento | | Totale Imponibile | Totale Imposta | Totale Documento S.E.&O. |
|---|---|---|---|---|---|
| | | | | | **SEGUE** SEGUE |

| Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza |
|---|---|---|---|---|---|
| | | | | | |

# fometal
## fonderia alluminio • leghe madri ed affini

Contrada Vallecupa - 64010 COLONNELLA (TE)
Tel. +39.0861.748959 - Fax +39.0861.748965
Reg.Trib Teramo n.12570 - C.C.I.A.A. Teramo n. 103693
Cod. Fisc 01699310692 - P. Iva IT 00899720676
Capitale Sociale: € 255.000
info@fometal.com - www.fometal.com

Azienda certificata ISO 9001:2008 e ISO 14001:2004

| INTESTATARIO DOCUMENTO |
|---|
| ADMIRAL METALS - Albany |
| Northeast Industrial Park |
| 2 Van Buren Blvd |
| Guilderland, NY 12085 |

**TIPO DOCUMENTO:**
**Fattura senza doc. trasporto**

| CODICE CLIENTE | PARTITA IVA | Zona | , DOCUMENTO N° | DATA | Pagina |
|---|---|---|---|---|---|
| 394 | US | USD | 32 | 08/02/2019 | 2 |
| TIPO SPEDIZIONE | PORTO | BANCA D'APPOGGIO | | IBAN | |
| | CIF NEW YORK PORT | MONTE PASCHI SIENA | | IT56K0103002603000000912108 | |
| VS ORDINE N. | DATA ORDINE | | | SWIFT CODE | |
| 87001814 | 25/10/18 | | | PASCITM1A00 | |

| ARTICOLO | DESCRIZIONE | U.M. | QUANTITA' | PREZZO | SCONTO | IMPORTO | C.IVA |
|---|---|---|---|---|---|---|---|
| | certificate, origin certificate. | | | | | | |

| Totale Importi | Sconto % | Importo Sconto | Spese Acess. | Rivalsa e Bolli | Imponibili | Aliq.IVA | Imposta |
|---|---|---|---|---|---|---|---|
| 43.381,97 | | 0,00 | 0,00 | 0,00 | 43.381,97 | | Non imp.art.8-1° C. |

| Cod.Pag. | Condizioni di Pagamento | Totale Imponibile | Totale Imposta | Totale Documento S.E.&O. |
|---|---|---|---|---|
| | | 43.381,97 | 0,00 | USD 43.381,97 |

| Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza |
|---|---|---|---|---|---|
| | | | | | |

Iva dovuta dal cessionario regime reverse charge art. 35 D.L. 269/2003 - INVERSIONE CONTA

# Fometal
## fonderia alluminio • leghe madri ed affini

Azienda certificata ISO 9001:2008 e ISO 14001:2004

FOMETAL SRL
Contrada Vallecupa – 64010 COLONNELLA (TE)
Tel. +39.0861.748959 - Fax +39.0861.748965
Reg.Trib Teramo n.12570 - C.C.I.A.A. Teramo n. 103693
Cod. Fisc 01699310692 - P. Iva IT 00899720676
Capitale Sociale: € 255.000
info@fometal.com - www.fometal.com

**INTESTATARIO DOCUMENTO**

ADMIRAL METALS - Albany
Northeast Industrial Park
2 Van Buren Blvd
GUILDERLAND, NY 12085

**TIPO DOCUMENTO:**
**Fattura senza doc. trasporto**

| CODICE CLIENTE | PARTITA IVA | Zona | DOCUMENTO N° | DATA | Pagina |
|---|---|---|---|---|---|
| 394 | US | USD | **33** | **08/02/2019** | 1 |

| TIPO SPEDIZIONE | PORTO | BANCA D'APPOGGIO | IBAN |
|---|---|---|---|
| | CIF NEW YORK PORT | MONTE PASCHI SIENA | IT56K0103002603000000912108 |

| VS ORDINE N. | DATA ORDINE | | SWIFT CODE |
|---|---|---|---|
| 87001814 | 25/10/18 | | PASCITM1A00 |

| ARTICOLO | DESCRIZIONE | U.M. | QUANTITA' | PREZZO | SCONTO | IMPORTO | C.IVA |
|---|---|---|---|---|---|---|---|
| | ITEM 4) ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.08 - width 48.00 | | | | | | |
| | Length 96.00 | | | | | | |
| | Quantity: pounds 14638.69 | KG | 6.640 | 3,2879 | | 21.831,66 | 81C |
| | ITEM) 5 ALUMINIUM SHEET 5052 ALLOY H32 | | | | | | |
| | Size in inches | | | | | | |
| | Thickness 0.09 - width 48.00 | | | | | | |
| | Length 96.00 | | | | | | |
| | Quantity: pounds 14424.85 | KG | 6.543 | 3,2879 | | 21.512,73 | 81C |
| | Payment: 60 days against documents copy | | | | | | |
| | BL, invoice, packing list, mill | | | | | | |
| | certificate, origin certificate. | | | | | | |

| Totale Importi | Sconto % | Importo Sconto | Spese Acess. | Rivalsa e Bolli | Imponibili | Aliq.IVA | Imposta |
|---|---|---|---|---|---|---|---|
| 43.344,39 | | 0,00 | 0,00 | 0,00 | 43.344,39 | | Non imp.art.8-1° C. |

| Cod.Pag. | Condizioni di Pagamento | Totale Imponibile | Totale Imposta | Totale Documento S.E.&O. | |
|---|---|---|---|---|---|
| | | 43.344,39 | 0,00 | USD | 43.344,39 |

| Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza | Data Scadenza | Importo in scadenza |
|---|---|---|---|---|---|
| | | | | | |

Iva dovuta dal cessionario regime reverse charge art. 35 D.L. 269/2003 - INVERSIONE CONTA



**Da:** Ann Johnson <JohnsonA@AdmiralMetals.com>
**Inviato:** martedì 17 dicembre 2019 14:12
**A:** Modica, Michael <MichaelModica@trustaltus.com>
**Oggetto:** FW: FO.MET.A.L. SRL -total unpaid: EUR 133,564.93

**CAUTION:** External Sender

Michael,

I just wanted to confirm that you received this email and all the attachments that I sent last week.. Thank you.

Ann M. Johnson
Accounts Payable Manager
Admiral Metals Servicenter Co. Inc.
11 Forbes Road
Woburn, MA 01801
johnsona@admiralmetals.com
Ph# 781-937-4496
Fax# 781-932-1059

**From:** Ann Johnson
**Sent:** Wednesday, December 11, 2019 9:48 AM
**To:** 'Modica, Michael' <MichaelModica@trustaltus.com>
**Cc:** Dave Pascucci <PASCUCCID@AdmiralMetals.com>; Joe Cannata <CANNATAJ@AdmiralMetals.com>; Darren Gaudreault <GAUDREAULTD@AdmiralMetals.com>
**Subject:** RE: FO.MET.A.L. SRL -total unpaid: EUR 133,564.93

Good Morning Michael,

Well, we've done a little research on our end and below is a recap of what we have found regarding this incident. Please note that I am copying Dave Pascucci, our CFO, Joe Cannata, our Product Manager who dealt with the purchase of the material in question, and Darren Gaudreault, our Purchasing Manager.

Joe Cannata placed 2 purchase orders, resulting in the 3 shipments below, with Keili Trading LLC, a broker, who in turn purchased the material from FO.MET.A.L.

PO#87001814 ordered 10/25/2018 and delivered 3/21/2019 for a total of $87407.47, the shipment consisted of the following:

| DESCRIPTION OF GOODS | SURFACE TREATMENT | ALLOY | Size | QUANTITY (LB) | UNIT PRICE (USD/LB) | TOTAL AMOUNT (USD) |
|---|---|---|---|---|---|---|
| ALUMINUM SHEET | Mill | 5052 H32 | .032" 48"120" | 14,696 | 1.76 | $ 25,870.86 |
| ALUMINUM SHEET | Mill | 5052 H32 | .063" 48"96" | 7,822 | 1.76 | $ 13,769.87 |
| ALUMINUM SHEET | Mill | 5052 H32 | .063" 48"120" | 6,453 | 1.76 | $ 11,359.74 |
| ALUMINUM SHEET | Mill | 5052 H32 | .080" 48"96" | 6,256 | 1.76 | $ 11,013.50 |
| ALUMINUM SHEET | Mill | 5052 H32 | .090" 48"96" | 14,425 | 1.76 | $ 25,393.51 |
| TOTAL | | | | 49,652 | | $ 87,407.47 |

The invoice was paid by wire transfer on 4/5/2019 in the amount of $80,476.85 (we deducted $6,930.62 that we had written off back in 2013 for defective material, with Keili's approval).

PO#87001814 ordered 10/25/2018 and delivered 5/22/2019 for a total of $34242.92, the shipment consisted of the following:

| DESCRIPTION OF GOODS | SURFACE TREATMENT | ALLOY | Size | QUANTITY (LB) | UNIT PRICE (USD/LB) | TOTAL AMOUNT (USD) |
|---|---|---|---|---|---|---|
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 96" | 5681.31 | 1.685 | $ 9,573.01 |
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 120" | 6179.56 | 1.685 | $ 10,412.56 |
| ALUMINUM SHEET | Mill | 5052 H32 | .19" 48" 144" | 8461.34 | 1.685 | $ 14,257.36 |
| TOTAL | | | | 20,322 | | $ 34,242.92 |

The invoice was paid by wire transfer on 5/22/2019 in the amount of $34,242.92.

PO#87002153 ordered 07/09/2019 and delivered on 7/10/2019 for a total of $29392.71, the shipment consisted of the following:

| DESCRIPTION OF GOODS | SURFACE TREATMENT | ALLOY | Size | QUANTITY (LB) | UNIT PRICE (USD/LB) | TOTAL AMOUNT (USD) |
|---|---|---|---|---|---|---|
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 96" | 8933.13 | 1.3429 | $ 11,996.30 |
| ALUMINUM SHEET | Mill | 5052 H32 | .125" 48" 120" | 8357.72 | 1.3429 | $ 11,223.58 |
| ALUMINUM SHEET | Mill | 5052 H32 | .19" 48" 144" | 4596.64 | 1.3429 | $ 6,172.83 |
| TOTAL | | | | 21,887.49 | | $ 29,392.71 |

This invoice was paid by wire transfer on 7/11/2019 in the amount of $29,392.71.

Admiral has fulfilled it's obligation in paying for the material, which Keili ordered from FO.MET.A.L., and it is Keili's responsibility to pay FO.MET.A.L. We would also appreciate if things were cleared up with Coface on our behalf, as we are already feeling the effects of this incident on our overseas shipments.

I have attached the copies of the invoices, packing lists and wire confirms for each shipment. Please keep us up to date with the progress of the investigation. Thank you.

Ann M. Johnson
Accounts Payable Manager
Admiral Metals Servicenter Co. Inc.
11 Forbes Road

# Exhibit E

# Fo.Met.a.l. Srl
RAFFINERIA ALLUMINIO – LEGHE MADRI ED AFFINI
www.fometal.com

Colonnella lì: 28/09/19

SPETT.LE
ADMIRAL METALS - Albany
Northeast Industrial Park
2 Van Buren Blvd
Guilderland, NY 12085

Subject: request for payment of overdue invoices.

With the present e-mail, we request payment of the following invoices:

1) n. 32 of 08-02-19     Usd   43.381,97

2) n. 33 of 08-02-19     Usd   43.344,39

3) n. 46 of 14-02-19     Usd   64.445,43

                         Usd   151.171,79

We must point out to you that by not receiving payment of the amount due by and not later than  10 OCTOBER 2019

we will be obliged to communicate, in accordance with the policy conditions, the non-payment to our Credit Insurance Company which will proceed with the direct recovery.

Sure of your prompt remittance within the above deadline, best regards.



Fometal s.r.l.
L'Amministratore Unico

Fo.Met.a.l. s.r.l. – C.da Vallecupa – Via Bonifica – 64010 COLONNELLA (TE) – Tel. 0861-748959/748990 ric. aut. Fax 0861-748965
Reg. Trib. Teramo n. 12570 – C.C.I.A.A. Teramo n. 103693 – Codice Fiscale 0169 931 069 2 - Partita IVA  0089 972 0676

# Exhibit F

From: **Howard Goldman** hgoldman@goldmanpease.com
Subject: RE: Fometal/Admiral Metals Servicenter
Date: November 8, 2021 at 9:14 AM
To: Mark White mwhite@brinenlaw.com
Cc: Joshua D. Brinen jbrinen@brinenlaw.com, Martha Thrush mthrush@brinenlaw.com

Hello Mark

On or about September 29 I indicated that we represent Admiral Metals Servicenter in connection with your demand letter dated September 15, 2021. Admiral purchased certain metal products from **Keili Metals** based upon **purchase orders that Admiral issued to Keili Metals**. The requested aluminum metal products were shipped to Admiral by Keili Metals, who in turned invoiced Admiral. The Keili Invoices were promptly paid by Admiral.

Attached hereto is a copy of the two Admiral Metal PO 1814 and 2153, the inspection reports and container shipment information from Keili, request for payment by Keili to Keili, and the proof of timely wire payment by Admiral Metals to Keili.

Admiral had no contact with Fometal Srl and did not request these metal products from Formetal Srl. Under these circumstances there is no liability of Admiral Metal to Formetal Srl and any legal action against Admiral Metals is misguided. The apparent wrong doer is Formetal Srl and Admiral Metals will certainly cooperate in your legal efforts against them in these metal purchase transactions.

Thanks for your cooperation.

Howard S. Goldman, Esq.
Goldman & Pease LLC
Attorneys at Law
160 Gould Street, Suite 320
Needham, MA 02494
hgoldman@goldmanpease.com
www.goldmanpease.com
(t) 781-292-1080
(f) 781-239-8909

This electronic communication (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information under applicable law. The information is intended solely for the use of the recipient(s) named herein. Any review, use, dissemination, distribution, disclosure or reproduction of this message by unintended recipients is not authorized and may be unlawful. If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete all copies of it from your computer system.

If this communication concerns negotiation of a contract or agreement, any electronic

Exhibit G

# Packing list



| | | | |
|---|---|---|---|
| Packing list / Date | 5000012372 / 11.02.2019 | **Ditta** | |
| Delivery | 6150012810 | FO.MET.AL. S.R.L. | |
| Shipment | 6190008409 | C.DA VALLE CUPA, STRADA BONIFIC SNC | |
| | 807983 / 000010 | I-64010 COLONNELLA  TE | |
| Customer Order | 87001814 ADMIRAL METALS | | |
| Order No. / Date | 807983 / 12.12.2018 | **Recipient** | |
| | | ADMIRAL METALS LTD | |
| | | 2 Northeast Industrial Park, Van Buren Blvd | |
| Contact | | GUILDERLAND, NY NY  12085 | |
| Giuseppe Altieri | | USA | |
| TEL:00390696830209 E-MAIL: | | | |
| giuseppe.altieri@slimalu.com | | | |

Delivery instruction

| | |
|---|---|
| Forwarder | Unifret Vidale International S.r.l. / Camion |
| Incoterms | CIF New York |
| Reason | Temporary import |

## Delivery details

| Pos. | Material Slim | | Qty |
|---|---|---|---|
| 000010 | 86001895 | | 14,695.86 LB |
| Customer material | | 11128 | |
| Alloy / Temper | | 5052 / H32 | |
| Dimensions | | 0.32"X 48" x 120"inches | |
| Core type | | | |
| Certificate | | U.N.I. EN 10204:2004 3.1 | |
| Marking | | 7 packages marked;807983 / 000010 | |

| Case | Gross weight KG | Net weight KG | Packs no. | | Lenght | Coil N. | N. Pieces |
|---|---|---|---|---|---|---|---|
| P9004211 | 2391.99 | 2092.17 | 1 | 8720949 | 3 | 26623 | 116 |
| P9004212 | 2387.58 | 2100.98 | 1 | 50 | 3 | 26623 | 115 |
| P9004213 | 2391.99 | 2105.39 | 1 | 51 | 3 | 26623 | 115 |
| P9004235 | 2407.42 | 2109.80 | 1 | 52 | 3 | 26623 | 116 |
| P9004244 | 2385.38 | 2092.16 | 1 | 53 | 3 | 26623 | 116 |
| P9004257 | 2400.81 | 2100.98 | 1 | 54 | 3 | 26623 | 116 |
| P9004282 | 2394.20 | 2094.37 | 1 | 55 | 3 | 26623 | 116 |
| TOTAL | 16759.37 | 14695.86 | 7 | | | | |

Dat / H Shipment begin 11.02.2019 / 12:00:00

ACCORDING ASTM B209-12,AMSQQ-A-250/8C,AMS 4016M

Driver _____     Recipient _____

Slim Aluminium S.p.A.
Sede Legale e Stabilimento:
Piazzale dell'Alluminio s.n.c.
04012 Cisterna di Latina (LT) (Italia)
Casella Postale 162 Latina
PEC slimalu@legalmail.it

Tel. +39 06 96 830.1
Fax +39 06 96 830 381
www.slimalu.com
Codice fiscale e n. d'iscrizione R.I. 10667660150
Partita IVA IT 01906930597
Capitale Sociale Euro 500.000 interamente versato

Coordinate bancarie:
Intesa Sanpaolo S.p.A. - Latina
BIC: BCITITMM743
IBAN: IT 14 W030 6914 7200 2577 0250 660

# Exhibit H



# Reliance Steel & Aluminum Co. Acquires Admiral Metals Servicecenter Company, Inc.

December 14, 2021 06:50 ET | Source: Reliance Steel & Aluminum Co.

LOS ANGELES, Dec. 14, 2021 (GLOBE NEWSWIRE) -- Reliance Steel & Aluminum Co. (NYSE:RS) announced that it has acquired Admiral Metals Servicecenter Company, Inc. ("Admiral Metals"), a leading distributor of non-ferrous metal products in the Northeastern United States. Founded in 1950 and headquartered in Woburn, Massachusetts, Admiral Metals serves a wide variety of end markets including the semiconductor, automotive, medical, infrastructure, aerospace and industrial markets through its eight strategically located service center locations which provide next-day delivery of in-stock items. Admiral Metals' broad product offering of approximately 3,000 SKUs includes aluminum, brass, bronze, copper, stainless steel and steel in a variety of forms and shapes, including round, hex, rectangle, sheet, square, plate, and tube, among others. Admiral Metals also performs value-added custom cutting services for its customers. Admiral Metals' annual net sales in 2020 were approximately $184 million. The terms of the transaction were not disclosed.

"Admiral Metals has built a strong reputation in the metals industry for providing specialty products, high levels of customer service and next-day delivery," commented Jim Hoffman, Chief Executive Officer of Reliance. "Admiral Metals fits within Reliance's growth strategy and disciplined methodology of acquiring companies that are immediately accretive to our earnings, and complements Reliance's existing business by increasing our product breadth in specialty non-ferrous products. We believe this acquisition will enable Admiral Metals to leverage Reliance's scale in order to capitalize on further growth opportunities while maintaining its strong brand recognition. We are excited to welcome Admiral Metals to the Reliance Family of Companies, our 70th acquisition since our 1994 IPO."

**About Reliance Steel & Aluminum Co.**

Founded in 1939 and headquartered in Los Angeles, California, Reliance Steel & Aluminum Co. is a leading global diversified metal solutions provider and the largest metals service center company in North America. Through a network of approximately 300 locations in 40 states and 13 countries outside of the United States, Reliance provides value-added metals processing services and distributes a full-line of over 100,000 metal products to more than 125,000 customers in a broad range of industries. Reliance focuses on small orders with quick turnaround and increasing levels of value-added processing. In 2020, Reliance's average order size was $1,910, approximately 49% of orders included value-added processing and approximately 40% of orders were delivered within 24 hours. Reliance Steel & Aluminum Co.'s press releases and additional information are available on the Company's website at www.rsac.com.

**Forward-Looking Statements**

This press release may contain statements that are, or may be deemed to be, forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. Forward-looking statements may include, but are not limited to, statements concerning Reliance's acquisition of Admiral Metals as well as discussions of Reliance's industry and markets, business strategies and expectations concerning future demand and metals pricing and the Company's results of operations, margins, profitability, impairment charges, taxes, liquidity, litigation matters and capital resources. In some cases, you can identify forward-looking statements by terminology such as "may," "will," "should," "could," "would," "expect," "plan," "anticipate," "believe," "estimate," "predict," "potential," "preliminary," "range" and "continue," the negative of these terms, and similar expressions.

These forward-looking statements are based on management's estimates, projections and assumptions as of today's date that may not prove to be accurate. Forward-looking statements involve known and unknown risks and uncertainties and are not guarantees of future performance. Actual outcomes and results may differ materially from what is expressed or forecasted in these forward-looking statements as a result of various important factors, including, but not limited to, those disclosed in reports Reliance has filed with the United States Securities and Exchange Commission (the "SEC"). Risks and uncertainties related to the acquisition include, but are not limited to, the possibility that the expected benefits of the acquisition may not materialize as expected; disruption to existing business and operational relationships; and the failure to successfully integrate the acquired company. As a result, these statements speak only as of the date that they are made, and Reliance disclaims any and all obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events or otherwise. Important risks and uncertainties about Reliance's business can be found in "Item 1A. Risk Factors" of the Company's Annual Report on Form 10-K for the year ended December 31, 2020 filed with the SEC.

CONTACT:

investor@rsac.com
(213) 576-2428

or Addo Investor Relations
(310) 829-5400

---

## Recommended Reading



February 17, 2022 06:50 ET
Source: Reliance Steel & Aluminum Co.

**Reliance Steel & Aluminum Co. Reports Fourth Quarter and Full Year 2021 Financial Results**

- Record annual net sales of $14.09 billion- Record annual gross profit of $4.49 billion driven by record annual gross profit margin of 31.9%- Record annual pretax income and margin of $1.88 billion...





February 03, 2022 06:50 ET
Source: Reliance Steel & Aluminum Co.

**Reliance Steel & Aluminum Co. to Announce Fourth Quarter and Full Year 2021 Results on Thursday, February 17th**

LOS ANGELES, Feb. 03, 2022 (GLOBE NEWSWIRE) -- Reliance Steel & Aluminum Co. (NYSE:RS) announced today that it will report fourth quarter and full year 2021 financial results for the period...



---

## Explore





**Kessler Topaz Meltzer & Check, LLP Reminds SunPowe...**

March 05, 2022 16:19 ET

**Kessler Topaz Meltzer & Check, LLP Reminds Investo...**

March 05, 2022 11:13 ET

---



### About Us

GlobeNewswire is one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases, financial disclosures and multimedia content to media, investors, and consumers worldwide.

Follow us on social media:

### Newswire Distribution Network & Management

- Home
- Newsroom

- RSS Feeds
- Legal

GlobeNewswire is a newswire distribution network. Articles and other content published by GlobeNewswire are the legal responsibility of the content producers and GlobeNewswire accepts no liability for the content of such material. GlobeNewswire publishes content for informational purposes and makes no representation regarding, recommendation or invitation to engage in, any form of financial or investment activity, and does not endorse the content or activities of any material published.

© 2022 GlobeNewswire, Inc. All Rights Reserved.

# Exhibit I

**Giuseppe <giuseppe.marchiani@gmail.com>** mar 9 lug, 19:28
a keilimetals

Dear Mendy, Fometal asked his bank to check if transfer is arriving from Admiral and advised Coface about nonpayment.
After phone conversation with you I understood that Admiral just paid Keili instead Fometal and now Keili have to pay Fometal.
Please confirm this point and give me wire of payment to Fometal asap, Fometal need receive the transfer urgently.
Waiting your urgent feedback

Best regards

**Giuseppe Marchiani**

**www.alumaniac.com**
**skype:alumaniac1**
**mob:+393355628803**



**Mendy Levitin <keilimetals@gmail.com>** mar 9 lug, 19:31
a me

inglese
italiano

Traduci messaggio

Disattiva per: inglese

Yes confirming Keili is payming Fometel for this Admiral PO -

and payments goes out on the 10th for the full amount

Mendy Levitin
Keili Trading LLC. - 6519 49 TH AVE NE SEATTLE - USA

USA Number +12069397356
skype: keilimetals
Mendy@KeiliMetals.com
www.KeiliMetals.com

The information contained in this e-mail message is intended for the use of the individual or entity named above and may contain information that is privileged, confidential, private and/or exempt from disclosure under applicable law.
If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication and/or its content is strictly prohibited.
If you have received this message in error, please immediately notify us by telephone and return the original message to us at the above address. Thank you.

# Exhibit J

**Giuseppe <giuseppe.marchiani@gmail.com>**
a Mendy

gio 11 lug, 07:39

**Dear Mendy, the 10th july was yesterday, please send me the wire**

**Thank you**
**Regards**



**keilimetals@gmail.com**
a me

gio 11 lug, 18:20

inglese
italiano

Traduci messaggio

Disattiva per: inglese

Should have the wire any time now  once I get confirmation shell send u !

Mendy Levitin
Keili Trading LLC.
USA Number +12069397356
skype: keilimetals
Mendy@KeiliMetals.com
www.KeiliMetals.com

The information contained in this e-mail message is intended for the use of the individual or entity named above and may contain information that is privileged, confidential, private and/or exempt from disclosure under applicable law.
If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication and/or its content is strictly prohibited.
If you have received this message in error, please immediately notify us by telephone and return the original message to us at the above address. Thank you.

The 7 Noahide Laws are rules that all of us must keep, regardless of who we are or from where we come. Without these seven things, it

would be impossible for humanity to live together in harmony.

1. Do not profane G-d's Oneness in any way.

2. Do not curse your Creator.

3. Do not murder.

4. Do not eat a limb of a living animal.

5. Do not steal.

6. Harness and channel the human libido.

7. Establish courts of law and ensure justice in our world.

# Exhibit K



**keilimetals@gmail.com**
a me

gio 11 lug, 18:20

inglese
italiano

Traduci messaggio

Disattiva per: inglese

Should have the wire any time now  once I get confirmation shell send u !

Mendy Levitin
Keili Trading LLC.
USA Number +12069397356
skype: keilimetals
Mendy@KeiliMetals.com
www.KeiliMetals.com

The information contained in this e-mail message is intended for the use of the individual or entity named above and may contain information that is privileged, confidential, private and/or exempt from disclosure under applicable law.
If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication and/or its content is strictly prohibited.
If you have received this message in error, please immediately notify us by telephone and return the original message to us at the above address. Thank you.

The 7 Noahide Laws are rules that all of us must keep, regardless of who we are or from where we come. Without these seven things, it

would be impossible for humanity to live together in harmony.

1. Do not profane G-d's Oneness in any way.

2. Do not curse your Creator.

3. Do not murder.

4. Do not eat a limb of a living animal.

5. Do not steal.

6. Harness and channel the human libido.

7. Establish courts of law and ensure justice in our world.

# Exhibit L

**giuseppe marchiani <giuseppe.marchiani@gmail.com>**      16 lug 2019, 19:56
a Mendy

Dear Mendy, following phone conversation please send me how promised the wire or at least the disposal of payment with beneficiary Fometal for total amount 151.171,79 usd related to Admiral invoices

waiting good news from your side

Best regards

Giuseppe Marchiani
**www.alumaniac.com**
skype:alumaniac1
mob:**+393355628803**

# Exhibit M



**Mendy Levitin <keilimetals@gmail.com>**                    17 lug 2019, 02:10
a me

<div align="center">

inglese
italiano

</div>

Traduci messaggio

Disattiva per: inglese

**Dear Giuseppe,**

**i am  waiting to get it out in total 2 x inv 87001814 total $151171.79 i have not gotten confirmation yet - as total funds not posted yet - as of end of day now SHOULD BE tomorrow if fometal cannot wait i understand totally but it will go out as soon as it post this is for sure**

Mendy Levitin
Keili Trading LLC.

USA Number +12069397356

# Exhibit N



**Brinen & Associates, LLC**

Mark E. White, BA,LLB
Attorney & Barrister at Law
New York Office
mwhite@brinenlaw.com

Admitted to practice in New York, Ireland, England and Wales

September 14, 2021

**VIA ELECTRONIC & REGULAR MAIL**

Brad Begin
President
O'Neal Flat Rolled Meats *aka* Metal West LLC
1229 South Fulton Avenue
Brighton, CO 80601

E-mail:     Denver@metalwest.com

     Re:    Fometal Sr. v. O'Neal Flat Rolled Meats aka Metal West LLC
              Dispute regarding non-payment for container Caru 5732532 – Seal 1186568
              <u>Our File No.: Fometal.11</u>

Mr. Begin:

We represent Fometal Sr. ("Fometal") in the above-referenced matter.

Direct all future correspondence to Brinen & Associates, LLC. The address is set forth below. Under no circumstances make any attempt to contact Fometal directly.

This firm has been retained by Fometal to seek recourse in recouping fees owed and charged to you regarding the transportation of thirteen pallets of aluminum sheets (hereafter the "Goods") supplied by Fometal and delivered to you under container Caru 5732532, Seal 1186568.

The shipment of the Goods departed from Porto di Venezia, Italy.

The third party Krohne Logistik was authorized to release the container only and exclusively to the consignee being you, Metal West LLC f/k/a O'Neal Flat Rolled Meats (hereafter "Metal West, LLC").

You as the contractual party upon receiving the Goods never paid Fometal.

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

September 14, 2021
Page 2

Fometal sent you an invoice in the sum of seventy-two thousand dollars four hundred forty-five dollars twenty-eight cents ($72,445.28).

No effort has been made by you to date to discharge this amount.

Fometal was not aware of the following material facts until informed of them through communications from their insurer, Coface:

1. Upon arrival of the Goods in Long Beach, United States of America, Metalwest communicated to Keili Trading Ltd (hereafter "Keili Trading") that "it could not be listed as a registered importer";

2. Keili Trading and their clearing agent, RTW, asked Metalwest to "provide a document that would transfer the Goods to Keili Trading so that Keili Trading could take the title and clear the Goods ";

3. Metalwest complied with this request from Keili Trading.

You therefore unlawfully assigned title of the Goods to Keili Trading. You did so without obtaining Fometal's express and/or implied written or oral consent as the superior title holder of the Goods.

You did so in order to defraud Fometal. You did so in concert with the assistance, knowledge and support of Keili Trading.

**Conclusion**

Please provide a proposal to Fometal to discharge the sum of seventy-two thousand dollars four hundred forty-five dollars twenty-eight cents ($72,445.28) for the above wrongs. I should welcome a telephone call to discuss this matter.

**UNLESS WE RECEIVE A COMPREHENSIVE RESPONSE TO THIS LETTER, BY SEPTEMBER 22, 2021, WE WILL PURSUE ACTION TO PROTECT OUR CLIENT, INCLUDING INITIATING A LAWSUIT AND SEEKING MAXIMUM DAMAGES, INCLUDING PUNITIVE DAMAGES TO WHICH OUR CLIENT IS ENTITLED AND AN ORDER OF THE COURT FOR ALL REASONBALE ATTORNEYS FEES INCURRED.**

# Brinen & Associates, LLC

September 14, 2021
Page 3


Be guided accordingly.

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at mwhite@brinenlaw.com.

Yours truly,

Mark E. White

cc:      Client

MEW:mew



**Brinen & Associates, LLC**

Joshua D. Brinen
Attorney at Law
New York Office
jbrinen@brinenlaw.com

Member New York, New Jersey, Florida, California, Texas & Nevada Bar
LL.M. in Taxation

October 25, 2021

**VIA ELECTRONIC & REGULAR MAIL**

Mr. Bruce Pole
Metal West LLC a/k/a O'Neal Flat Rolled Meats
NIM Group
1229 S. Fulton Avenue
Brighton, CO 80601

E-mail:    BPole@nimgroup.com

          Re:    Demand for preservation of electronic information
                Our File No.:  Fometal.11

Mr. Pole:

This firm represents Fometal Srl (collectively, "Fometal").

Fometal, has made claims against Metal West LLC a/k/a O'Neal Flat Rolled Meats and NIM Group in the above-referenced case.

Until the hearing of these proceedings, my clients reserve all rights.

You and, and your affiliates, employees and officers and agents are obliged to take all reasonable steps to preserve all information, including all paper copies of documents and all electronically stored information ("ESI") that is or may reasonably be considered relevant to the lawsuit.

ESI includes, but is not necessarily limited to, all initial, interim, draft, and final versions of the following: e-mail, voice mail, and other electronic communications (e.g., logged IM); databases; digitized images; spreadsheets; word processing documents; PowerPoint® slides and presentations; computerized calendars and personal information manager

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

October 25, 2021
Page 2

(PIM) or personal digital assistant (PDA) information; Internet usage, telephone, and network access logs; recorded telephone calls; billing, accounting, or ledger entries; Web sites and Web pages; and all similar data that is stored on, utilized on, or transmitted via a computer or computer network, including the Internet.

ESI may be found or stored on laptop or desktop computers (on or off-site, including, potentially, on employees' home computers); network servers or drives; fixed and portable hard drives; floppy drives; thumb drives; flash memory or flash drives; backup "tapes" or drives; CD-ROM; DVD; secure digital ("SD") and similar memory "cards"; cell phones; pagers; PDAs/PIMs; handheld wireless devices (e.g., BlackBerry® or Palm®devices); and iPod®, MP3 and similar mobile digital devices and portable hard drives. Such storage locations or devices fall within the scope of this preservation directive to the extent that the Company or its employees exercise dominion, care, custody or control over the locations or devices.

This letter is sent to inform you of our intent to seek electronic information during the course of discovery, and to put you on notice of your obligation to preserve all such evidence.

We request that you comply with these legal obligations and preserve all potentially relevant electronic or magnetic documents and information. For evidence preservation purposes, it is necessary that electronic data continue to be preserved in a format that maintains metadata, maintains file searchability, and allows access to formulas (such as those used in spreadsheets). For instance, it is not acceptable to convert word processing document files into "TIFF" files, which maintain an image of the file, but do not preserve hidden data.

For purposes of this letter, metadata is defined as "data about data." that is, the information that is generated when computer files are created, modified, or deleted, or when emails are created, sent, or received, that provides a history of the creation, editing, manipulation, and distribution of such files and emails.

While we will be seeking discovery of all relevant data, please be informed that some items are of particular interest to us and these items will be the subject of initial requests. We are formally requesting that you place a litigation hold on any and all documents relating to the breach of contract, fraud, unjust enrichment, tortious interference, accounting and civil conspiracy (collectively, the "Breach") between January 1, 2020, and the present date (the "Litigation Hold Period").

Accordingly, you, your affiliates, employees and agents are instructed not to destroy or alter, or cause to be destroyed or altered, any documents relating to the Company during the Litigation Hold Period. Thus, all evidence, in whatever form, including, but not limited to, all documents and electronically stored information (i.e., any writing, drawing,

# Brinen & Associates, LLC

October 25, 2021
Page 3

graph, chart, photograph, sound recording, image, or other data or compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form), must be preserved and a litigation hold must be placed on the same until further notice. This includes, without limitation, document productions, deposition transcripts, exhibits, trial transcripts, hearing transcripts, medical records, expert reports, discovery requests and responses, pleadings, affidavits, declarations, interrogatories, electronic mail, text messages, instant messages, Skype messages, Facebook messages, Twitter messages, Instagram messages, photographs, in hard copy or digital format, videos, audio files, cellular telephones, smartphones, iPhones, iPads, Blackberry devices, handheld devices, tablets, laptops, notebook computers, personal computers, and any or all other electronic storage devices.

You should suspend immediately any document destruction policy that, if not suspended, might result in the destruction of discoverable information.

The suspension should be applied to paper documents and to electronically stored information, including e-mail, voice mail, spreadsheets, power points, and word processing documents.

The suspension also should be applied to all media for storing information in electronic format, including network servers, e-mail servers, workstations, laptops, hand-held devices, compact disks and back-up tapes, that may contain discoverable information.

The suspension of routine and automated document destruction should be aimed at preserving, at a minimum, all paper documents and electronically stored information concerning the dispute, including information that may be maintained on your servers, hard drives, laptops, hand-held devices and any back-up tapes.

This information should include, but may not necessarily be limited to, any e-mail, files, records, correspondence, notes or other documents or electronic information related to the dispute.

If you have installed any programs for the automated deletion of e-mail or other electronic files, those programs should be suspended to the extent necessary to prevent the destruction of discoverable information. Back-up tapes potentially containing discoverable information should be removed from routine recycling until further notice.

You should fulfill this duty to preserve from the date of this letter until the resolution of the within dispute with Fometal.

Failure to promptly preserve such evidence, whether intentional or merely negligent, may result in substantial sanctions and/or additional litigation, in addition to the loss of evidence for use in your own claims and/or defenses.

# Brinen & Associates, LLC

October 25, 2021
Page 4


Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at jbrinen@brinenlaw.com.

Yours truly,

Brinen & Associates, LLC

Joshua D. Brinen

cc:      Client

JDB:jdb

Exhibit O



**Brinen & Associates, LLC**

Mark E. White, BA,LLB
Attorney & Barrister at Law
New York Office
mwhite@brinenlaw.com

Admitted to practice in New York, Ireland, England and Wales

September 15, 2021

**<u>VIA ELECTRONIC AND REGULAR MAIL</u>**

Mr. James Sheer Burstein
President
Admiral Metals Ltd
11 Forbes Road
Woburn, MA 01801

E-mail:      ANDELLAD@AdmiralMetals.com

    Re:    Dispute regarding non-payment for three shipments PO# 87001814 & PO# 87002153
        <u>Our File No.: Fometal.11</u>

Mr. Burstein:

This firm has been retained by Fometal Sr. ("Fometal") to seek recourse in recouping fees owed and charged to you regarding the transportation of thirteen pallets of aluminum sheets (hereafter the "Goods") supplied by Fometal and delivered to you, Admiral Metals Ltd., (hereafter "Admiral Metals") under purchaser order numbers 87001814 & 87002153 to your regional office in Albany, New York.

Direct all future correspondence in this matter to Brinen & Associates, LLC. The address is set forth below. Under no circumstances directly contact Fometal.

The Goods were shipped in three containers from two locations in Italy as follows:

1. Two (2) containers from the port of Naples by MSC Mediterranean Seal Pring Company identified by container numbers TCLU7066327 and MSCU4529025).

2. One (1) container from the port of Venice by Krhone Logistic identified by container number MSCU5669037).

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

September 15, 2021
Page 2


The Goods arrived in New York Port, United States of America and therefore were duly delivered to Admiral Metals.

Admiral Metals, through documentary evidence, acknowledged that it received all the Goods in the three containers shipped.

The third parties, MSC Mediterranean Seal Pring Company and Krohne Logistik were authorized to release the containers only and exclusively to the consignee, you.

You, as the contractual party upon receiving the Goods, never paid Fometal.


Fometal sent Admiral Metals the three invoices on the following dates: August 2, 2019, and February 14, 2019, seeking payment from you for the total sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

No effort has been made by you, to date, to discharge this amount.

Instead, you unlawfully effected an assignment of title of the Goods from Admiral Metals Ltd. to Keili Trading LLC.

You had no authority to do so. You did so without obtaining Fometal's express and/or implied written or oral consent as the superior title holder of the Goods.

Following this assignment Keili Trading Ltd paid Admiral Metals for the Goods and not Fometal.

You never paid Fometal for the Goods.

Fometal has never entered into a transaction with Keili Trading Ltd.

The only company which had the right to use the material in the three containers upon arrival in the United States of America was Admiral Metals, as the consignee.


You were contractually obliged to authorize and to inform Fometal if you were releasing the containers to a third party such as Keili Trading Ltd. No such express or implied authorization was obtained from Fometal by you.

Your actions were designed to intentionally defraud Fometal. You did so in concert with the assistance, knowledge, and support of Keili Trading Ltd.

# Brinen & Associates, LLC

September 15, 2021
Page 3

You have been unjustly enriched in the amount of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

**Conclusion**

Please provide a proposal to Fometal to discharge the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79) for the above wrongs. I should welcome a telephone call to discuss this matter.

**UNLESS WE RECEIVE A COMPREHENSIVE RESPONSE TO THIS LETTER, BY SEPTEMBER 17, 2021, WE WILL PURSUE ACTION TO PROTECT OUR CLIENT, INCLUDING INITIATING A LAWSUIT AND SEEKING MAXIMUM DAMAGES, INCLUDING PUNITIVE DAMAGES TO WHICH OUR CLIENT IS ENTITLED AND AN ORDER FOR ALL REASONABLE ATTORNEYS' FEES INCURRED IN RECOUPING THIS DEBT.**

Be guided accordingly.

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at mwhite@brinenlaw.com.

Yours truly,

Mark E. White

cc:      Client

MEW:mew


**Brinen & Associates, LLC**

Joshua D. Brinen
Attorney at Law
New York Office
jbrinen@brinenlaw.com

Member New York, New Jersey, Florida, California, Texas & Nevada Bar
LL.M. in Taxation

October 24, 2021

**VIA ELECTRONIC & REGULAR MAIL**

Howard S. Goldman, Esq.
Goldman & Pease LLC
Attorneys at Law
160 Gould Street, Suite 320
Needham, MA 02494

E-mail:        hgoldman@goldmanpease.com

Re:     Litigation Hold Letter for Admiral Metals Servicenter Co., Inc. – dispute
         concerning nonpayment of invoice from Fometal Srl
         <u>Our File No.: Fometal Srl.11.Admiral Metals</u>

Attorney Goldman:

Enclosed for service upon your client is a Litigation Hold Letters addressing the above-
referenced corporate entity in the above-referenced dispute.

As you represent the above-referenced corporate entity, we are enclosing correspondence
directed toward your client, and its officers and directors.  Please deliver this hold letter
to your clients and direct them to preserve all evidence.

Should you have any questions, please do not hesitate to contact me at the New York
office or via electronic mail at jbrinen@brinenlaw.com.

Yours truly,

Brinen & Associates, LLC

Joshua D. Brinen

Enclosures

cc:       Client

JDB:jdb

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444



# Brinen & Associates, LLC

Joshua D. Brinen
Attorney at Law
New York Office
jbrinen@brinenlaw.com

Member New York, New Jersey, Florida, California, Texas & Nevada Bar
LL.M. in Taxation

October 25, 2021

**VIA ELECTRONIC & REGULAR MAIL**

Admiral Metals Servicenter Co., Inc.
11 Forbes Road
Woburn, MA 01801

E-mail:       PASCUCCID@AdmiralMetals.com

Re:     Demand for preservation of electronic information
         Our File No.:  Fometal.11

To Whom It May Concern:

This firm represents Fometal Srl (collectively, "Fometal"). Fometal has made claims against you.

Until the hearing of these proceedings, my clients reserve all rights.

You and, and your affiliates, employees and officers and agents are obliged to take all reasonable steps to preserve all information, including all paper copies of documents and all electronically stored information ("ESI") that is or may reasonably be considered relevant to the lawsuit.

ESI includes, but is not necessarily limited to, all initial, interim, draft, and final versions of the following: e-mail, voice mail, and other electronic communications (e.g., logged IM); databases; digitized images; spreadsheets; word processing documents; PowerPoint® slides and presentations; computerized calendars and personal information manager (PIM) or personal digital assistant (PDA) information; Internet usage, telephone, and network access logs; recorded telephone calls; billing, accounting, or ledger entries; Web sites and Web pages; and all similar data that is stored on, utilized on, or transmitted via a computer or computer network, including the Internet.

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

October 25, 2021
Page 2

ESI may be found or stored on laptop or desktop computers (on or off-site, including, potentially, on employees' home computers); network servers or drives; fixed and portable hard drives; floppy drives; thumb drives; flash memory or flash drives; backup "tapes" or drives; CD-ROM; DVD; secure digital ("SD") and similar memory "cards"; cell phones; pagers; PDAs/PIMs; handheld wireless devices (e.g., BlackBerry® or Palm®devices); and iPod®, MP3 and similar mobile digital devices and portable hard drives. Such storage locations or devices fall within the scope of this preservation directive to the extent that the Company or its employees exercise dominion, care, custody or control over the locations or devices.

This letter is sent to inform you of our intent to seek electronic information during the course of discovery, and to put you on notice of your obligation to preserve all such evidence.

We request that you comply with these legal obligations and preserve all potentially relevant electronic or magnetic documents and information. For evidence preservation purposes, it is necessary that electronic data continue to be preserved in a format that maintains metadata, maintains file searchability, and allows access to formulas (such as those used in spreadsheets). For instance, it is not acceptable to convert word processing document files into "TIFF" files, which maintain an image of the file, but do not preserve hidden data.

For purposes of this letter, metadata is defined as "data about data." that is, the information that is generated when computer files are created, modified, or deleted, or when emails are created, sent, or received, that provides a history of the creation, editing, manipulation, and distribution of such files and emails.

While we will be seeking discovery of all relevant data, please be informed that some items are of particular interest to us and these items will be the subject of initial requests. We are formally requesting that you place a litigation hold on any and all documents relating to the breach of contract, fraud, unjust enrichment, tortious interference, accounting and civil conspiracy (collectively, the "Breach") between January 1, 2020, and the present date (the "Litigation Hold Period").

Accordingly, you, your affiliates, employees and agents are instructed not to destroy or alter, or cause to be destroyed or altered, any documents relating to the Company during the Litigation Hold Period. Thus, all evidence, in whatever form, including, but not limited to, all documents and electronically stored information (i.e., any writing, drawing, graph, chart, photograph, sound recording, image, or other data or compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form), must be preserved and a litigation hold must be placed on the same until further notice. This includes, without limitation, document productions, deposition transcripts, exhibits, trial transcripts, hearing transcripts, medical records, expert reports, discovery requests and responses, pleadings, affidavits, declarations, interrogatories, electronic mail, text messages, instant

# Brinen & Associates, LLC

October 25, 2021
Page 3

messages, Skype messages, Facebook messages, Twitter messages, Instagram messages, photographs, in hard copy or digital format, videos, audio files, cellular telephones, smartphones, iPhones, iPads, Blackberry devices, handheld devices, tablets, laptops, notebook computers, personal computers, and any or all other electronic storage devices.

You should suspend immediately any document destruction policy that, if not suspended, might result in the destruction of discoverable information. The suspension should be applied to paper documents and to electronically stored information, including e-mail, voice mail, spreadsheets, power points, and word processing documents. The suspension also should be applied to all media for storing information in electronic format, including network servers, e-mail servers, workstations, laptops, hand-held devices, compact disks and back-up tapes, that may contain discoverable information.

The suspension of routine and automated document destruction should be aimed at preserving, at a minimum, all paper documents and electronically stored information concerning the dispute, including information that may be maintained on your servers, hard drives, laptops, hand-held devices and any back-up tapes. This information should include, but may not necessarily be limited to, any e-mail, files, records, correspondence, notes or other documents or electronic information related to the dispute.

If you have installed any programs for the automated deletion of e-mail or other electronic files, those programs should be suspended to the extent necessary to prevent the destruction of discoverable information. Back-up tapes potentially containing discoverable information should be removed from routine recycling until further notice.

You should fulfill this duty to preserve from the date of this letter until the resolution of the within dispute with Fometal.

Failure to promptly preserve such evidence, whether intentional or merely negligent, may result in substantial sanctions and/or additional litigation, in addition to the loss of evidence for use in your own claims and/or defenses.

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at jbrinen@brinenlaw.com.

Yours truly,

Brinen & Associates, LLC

Joshua D. Brinen

cc:     Client

JDB:jdb

LTR - litigation hold letter - company.docx

# Exhibit P



# Brinen & Associates, LLC

Mark E. White, BA,LLB
Attorney & Barrister at Law
New York Office
mwhite@brinenlaw.com

Admitted to practice in New York, Ireland, England and Wales

**VIA ELECTRONIC & REGULAR MAIL**

Mr. Mendy Levitin
President
Keili Trading LLC
4027 NE 60th ST
Seattle, Washington 98115

E-mail:     Mendy@KeiliMetals.com

       Re:     Dispute regarding non-payment for three shipments PO# 87001814 & PO# 87002153
                 Our File No.: Fometal.11

Mr. Levitin:

This firm has been retained by Fometal Sr. ("Fometal") to seek recourse in recouping fees regarding the transportation of three shipments containing pallets of aluminum sheets (hereafter the "Goods") supplied by Fometal and delivered to Admiral Metals Ltd under purchaser order numbers 87001814 and 87002153.

Direct all future correspondence to Brinen & Associates, LLC. The address is set forth below. Under no circumstances make an attempt to contact Fometal directly.

The Goods were shipped in three containers from two locations in Italy as follows:

1. Two (2) containers from the port of Naples by MSC Mediterranean Seal Pring Company identified by container numbers TCLU7066327 and MSCU4529025.

2. One (1) container from the port of Venice by Krhone Logistic identified by container number MSCU5669037.

The Goods arrived in Cif New York Port, United States of America and therefore were duly delivered to Admiral Metals.

---

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

September 15, 2021
Page 2

Admiral Metals, through documentary evidence acknowledged that it received all the Goods in the three containers shipped.

The third parties, MSC Mediterranean Seal Pring Company and Krohne Logistik were authorized to release the containers only and exclusively to the consignee, Admiral Metals.

As the contractual party, Admiral Metals Ltd., upon receiving the Goods, never paid Fometal.

Fometal sent Admiral Metals three invoices for the three containers of the Goods amounting in total for the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

Fometal sent Admiral Metals the three invoices on the following dates: August 2, 2019, and February 14, 2019, seeking payment from you for the total sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

No effort has been made by you to date to discharge this amount.

Instead, you requested the unlawful assignment of title of the Goods from Admiral Metals to Keili Trading LLC.

Keili Trading was therefore aware of the existence of a contractual relationship between Fometal and Admiral Metals for the supply of the Goods.

You had no authority to do so. You did so without obtaining Fometal's express and/or implied written or oral consent as the superior title holder of the Goods.

Fometal has never entered in a single transaction with you. The only company which had the right to use the material in the three containers upon arrival in the United States of America was Admiral Metals as the consignee.

Consequently, Admiral Metals permitted you to be the owner of the material. Admiral Metals resold the Goods to you in sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

Fometal was never paid the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79) for the Goods.

Admiral Metals were contractually obliged to authorize to inform Fometal to release the containers to a third party, that being you. No such express or implied authorization was

# Brinen & Associates, LLC

September 15, 2021
Page 3

obtained from Fometal by Admiral Metals. You furthermore made no enquiries into this fact.

You did so in order to defraud Fometal. You did so in concert with the assistance, knowledge, and support of Admiral Metals.

Your actions were designed to intentionally and/or tortiously interfere with Fometal and Admiral Metals's contract and their business relationship.

Subsequently, in correspondence with Fometal's agents and representatives, you communicated repeated false representations that you would send a wire transfer to discharge the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79). This never occurred.

**Conclusion**

Please provide a proposal to Fometal to discharge the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy nine cents ($151,171.79) for the above wrongs. I should welcome a telephone call to discuss this matter.

**UNLESS WE RECEIVE A COMPREHENSIVE RESPONSE TO THIS LETTER, BY SEPTEMBER 22, 2021, WE WILL PURSUE ACTION TO PROTECT OUR CLIENT, INCLUDING INITIATING A LAWSUIT AND SEEKING MAXIMUM DAMAGES, INCLUDING PUNITIVE DAMAGES TO WHICH OUR CLIENT IS ENTITLED AND AN ORDER SEEKING ALL REASONABLE ATTORNEYS FEES INCURRED IN RECOUPING THIS DEBT.**

Be guided accordingly.

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at mwhite@brinenlaw.com.

Yours truly,

Mark E. White

cc:     Client

MEW:mew



# Brinen & Associates, LLC

Joshua D. Brinen
Attorney at Law
New York Office
jbrinen@brinenlaw.com

Member New York, New Jersey, Florida, California, Texas & Nevada Bar
LL.M. in Taxation

October 25, 2021

**<u>VIA ELECTRONIC & REGULAR MAIL</u>**

Keili Trading LLC
4027 NE 60th ST
Seattle, Washington 98115

Attn:  Mendy Levitin

E-mail:      Mendy@keilimetals.com
             kellimetals@gmail.com
             keilimetals@gmail.com


       Re:      Demand for preservation of electronic information
             <u>Our File No.:  Fometal.11</u>


Mr. Levitin:

This firm represents Fometal Srl (collectively, "Fometal").

Fometal, has made claims against Keili Trading LLC.

Until the hearing of these proceedings, my clients reserve all rights.

You and, and your affiliates, employees and officers and agents are obliged to take all reasonable steps to preserve all information, including all paper copies of documents and all electronically stored information ("ESI") that is or may reasonably be considered relevant to the lawsuit.

ESI includes, but is not necessarily limited to, all initial, interim, draft, and final versions of the following: e-mail, voice mail, and other electronic communications (e.g., logged IM);

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

October 25, 2021
Page 2

databases; digitized images; spreadsheets; word processing documents; PowerPoint® slides and presentations; computerized calendars and personal information manager (PIM) or personal digital assistant (PDA) information; Internet usage, telephone, and network access logs; recorded telephone calls; billing, accounting, or ledger entries; Web sites and Web pages; and all similar data that is stored on, utilized on, or transmitted via a computer or computer network, including the Internet.

ESI may be found or stored on laptop or desktop computers (on or off-site, including, potentially, on employees' home computers); network servers or drives; fixed and portable hard drives; floppy drives; thumb drives; flash memory or flash drives; backup "tapes" or drives; CD-ROM; DVD; secure digital ("SD") and similar memory "cards"; cell phones; pagers; PDAs/PIMs; handheld wireless devices (e.g., BlackBerry® or Palm®devices); and iPod®, MP3 and similar mobile digital devices and portable hard drives. Such storage locations or devices fall within the scope of this preservation directive to the extent that the Company or its employees exercise dominion, care, custody or control over the locations or devices.

This letter is sent to inform you of our intent to seek electronic information during the course of discovery, and to put you on notice of your obligation to preserve all such evidence.

We request that you comply with these legal obligations and preserve all potentially relevant electronic or magnetic documents and information. For evidence preservation purposes, it is necessary that electronic data continue to be preserved in a format that maintains metadata, maintains file searchability, and allows access to formulas (such as those used in spreadsheets). For instance, it is not acceptable to convert word processing document files into "TIFF" files, which maintain an image of the file, but do not preserve hidden data.

For purposes of this letter, metadata is defined as "data about data." that is, the information that is generated when computer files are created, modified, or deleted, or when emails are created, sent, or received, that provides a history of the creation, editing, manipulation, and distribution of such files and emails.

While we will be seeking discovery of all relevant data, please be informed that some items are of particular interest to us and these items will be the subject of initial requests. We are formally requesting that you place a litigation hold on any and all documents relating to the breach of contract, fraud, unjust enrichment, tortious interference, accounting and civil conspiracy (collectively, the "Breach") between January 1, 2020, and the present date (the "Litigation Hold Period").

Accordingly, you, your affiliates, employees and agents are instructed not to destroy or alter, or cause to be destroyed or altered, any documents relating to the Company during the Litigation Hold Period.

# Brinen & Associates, LLC

October 25, 2021
Page 3

Thus, all evidence, in whatever form, including, but not limited to, all documents and electronically stored information (i.e., any writing, drawing, graph, chart, photograph, sound recording, image, or other data or compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form), must be preserved and a litigation hold must be placed on the same until further notice. This includes, without limitation, document productions, deposition transcripts, exhibits, trial transcripts, hearing transcripts, medical records, expert reports, discovery requests and responses, pleadings, affidavits, declarations, interrogatories, electronic mail, text messages, instant messages, Skype messages, Facebook messages, Twitter messages, Instagram messages, photographs, in hard copy or digital format, videos, audio files, cellular telephones, smartphones, iPhones, iPads, Blackberry devices, handheld devices, tablets, laptops, notebook computers, personal computers, and any or all other electronic storage devices.

You should suspend immediately any document destruction policy that, if not suspended, might result in the destruction of discoverable information.

The suspension should be applied to paper documents and to electronically stored information, including e-mail, voice mail, spreadsheets, power points, and word processing documents. The suspension also should be applied to all media for storing information in electronic format, including network servers, e-mail servers, workstations, laptops, hand-held devices, compact disks and back-up tapes, that may contain discoverable information.

The suspension of routine and automated document destruction should be aimed at preserving, at a minimum, all paper documents and electronically stored information concerning the dispute, including information that may be maintained on your servers, hard drives, laptops, hand-held devices and any back-up tapes. This information should include, but may not necessarily be limited to, any e-mail, files, records, correspondence, notes or other documents or electronic information related to the dispute.

If you have installed any programs for the automated deletion of e-mail or other electronic files, those programs should be suspended to the extent necessary to prevent the destruction of discoverable information. Back-up tapes potentially containing discoverable information should be removed from routine recycling until further notice.

You should fulfill this duty to preserve from the date of this letter until the resolution of its dispute with Fometal.

Failure to promptly preserve such evidence, whether intentional or merely negligent, may result in substantial sanctions and/or additional litigation, in addition to the loss of evidence for use in your own claims and/or defenses.

# Brinen & Associates, LLC

October 25, 2021
Page 4

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at jbrinen@brinenlaw.com.

Yours truly,

Brinen & Associates, LLC

Joshua D. Brinen

cc:      Client

JDB:jdb

# Exhibit Q



**Brinen & Associates, LLC**

Mark E. White, BA,LLB
Attorney & Barrister at Law
New York Office
mwhite@brinenlaw.com

Admitted to practice in New York, Ireland, England and Wales

September 15, 2021

**<u>VIA ELECTRONIC & REGULAR MAIL</u>**

Mr. Mendy Levitin
Keili Trading Ltd
4027 NE 60th ST
Seattle, Washington 98115

E-mail:      Mendy@KeiliMetals.com

Re:      Dispute regarding non-payment for three shipments PO# 87001814 & PO#
87002153
<u>Our File No.: Fometal.11</u>

Mr. Levitin:

This firm has been retained by Fometal Sr. ("Fometal") to seek recourse in recouping fees regarding the transportation of three shipments containing pallets of aluminum sheets (hereafter the "Goods") supplied by Fometal and delivered to Admiral Metals Ltd under purchaser order numbers 87001814 and 87002153.

Direct all future correspondence to Brinen & Associates, LLC. The address is set forth below. Under no circumstances directly contact Fometal.

The Goods were shipped in three containers from two locations in Italy as follows:

1. Two (2) containers from the port of Naples by MSC Mediterranean Seal Pring Company identified by container numbers TCLU7066327 and MSCU4529025).

2. One (1) container from the port of Venice by Krhone Logistic identified by container number MSCU5669037).

The Goods arrived in CIF New York Port, United States of America and therefore were duly delivered to Admiral Metals.

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

September 15, 2021
Page 2

Admiral Metals, through documentary evidence, acknowledged that it received all the Goods in the three containers shipped.

The third parties, MSC Mediterranean Seal Pring Company and Krohne Logistik were authorized to release the containers only and exclusively to the consignee, Admiral Metals.

As the contractual party, Admiral Metals Ltd., upon receiving the Goods, never paid Fometal.

Fometal sent Admiral Metals the three invoices on the following dates: August 2, 2019, and February 14, 2019, seeking payment from you for the total sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

No effort has been made by you to date to discharge this amount.

Instead, you personally requested the unlawful assignment of title of the Goods from Admiral Metals to Keili Trading Ltd.

You personally were therefore aware of the existence of a contractual relationship between Fometal and Admiral Metals for the supply of the Goods.

You had no authority to do so. You did so without obtaining Fometal's express and/or implied written or oral consent as the superior title holder of the Goods.

Fometal has never entered into a transaction with Keili Trading Ltd. The only company which had the right to use the material in the three containers upon arrival in the United States of America was Admiral Metals as the consignee.

Consequently, Admiral Metals permitted you to be the owner of the material. Admiral Metals resold the Goods to you in sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

Fometal was never paid the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79) for the Goods.

Admiral Metals were contractually obliged to authorize to inform Fometal to release the containers to a third party, that being you. No such express or implied authorization was obtained from Fometal by Admiral Metals. You personally made no enquiries into this fact.

You did so in order to defraud Fometal. You did so in concert with the assistance, knowledge, and support of Admiral Metals.

# Brinen & Associates, LLC

September 15, 2021
Page 3

Your actions were designed to intentionally and/or tortiously interfere with Fometal and Admiral Metals's contract and their business relationship.

Subsequently in electronic mail correspondence directly from you to Fometal's agents and representatives you communicated repeated false representations that you would send a wire transfer to discharge the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79).

Payment never occurred.

Your actions of fraud, conspiracy to commit fraud and tortious interference will undoubtedly be sufficient to hold you personally liable for loss and damage caused to Fometal.

**Conclusion**

Please provide a proposal to Fometal to discharge the sum of one hundred fifty-one thousand one hundred seventy-one dollars seventy-nine cents ($151,171.79) for the above wrongs. I should welcome a telephone call to discuss this matter.

**UNLESS WE RECEIVE A COMPREHENSIVE RESPONSE TO THIS LETTER, BY SEPTEMBER 22, 2021, WE WILL PURSUE ACTION TO PROTECT OUR CLIENT, INCLUDING INITIATING A LAWSUIT AND SEEKING MAXIMUM DAMAGES, INCLUDING PUNITIVE DAMAGES TO WHICH OUR CLIENT IS ENTITLED AND AN ORDER SEEKING ALL REASONABLE ATTORNEYS' FEES INCURRED IN RECOUPING THIS DEBT.**

Be guided accordingly.

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at mwhite@brinenlaw.com.

Yours truly,

Mark E. White

cc:      Client

MEW:mew



**Brinen & Associates, LLC**

Joshua D. Brinen
Attorney at Law
New York Office
jbrinen@brinenlaw.com

Member New York, New Jersey, Florida, California, Texas & Nevada Bar
LL.M. in Taxation

October 25, 2021

**VIA ELECTRONIC & REGULAR MAIL**

Mr. Mendy Levitin
Keili Trading LLC
4027 NE 60th ST
Seattle, Washington 98115

E-mail:    Mendy@keilimetals.com
             kellimetals@gmail.com
             keilimetals@gmail.com

       Re:   Demand for preservation of electronic information
            Our File No.:  Fometal.11

Mr. Levitin:

This firm represents Fometal Srl (collectively, "Fometal").

Fometal, has made claims against you individually and Keili Trading LLC.

Until the hearing of these proceedings, my clients reserve all rights.

You and, and your affiliates, employees and officers and agents are obliged to take all reasonable steps to preserve all information, including all paper copies of documents and all electronically stored information ("ESI") that is or may reasonably be considered relevant to the lawsuit.

ESI includes, but is not necessarily limited to, all initial, interim, draft, and final versions of the following: e-mail, voice mail, and other electronic communications (e.g., logged IM); databases; digitized images; spreadsheets; word processing documents; PowerPoint® slides and presentations; computerized calendars and personal information manager

90 Broad Street, Tenth Floor
New York, New York 10004
Telephone: (212) 330-8151
Facsimile: (212) 227-0201

1700 Post Oak Boulevard
2 Boulevard Place, Suite 600
Houston, Texas 77056
Telephone: (281) 815-4368
Facsimile: (281) 241-4444

# Brinen & Associates, LLC

October 25, 2021
Page 2

(PIM) or personal digital assistant (PDA) information; Internet usage, telephone, and network access logs; recorded telephone calls; billing, accounting, or ledger entries; Web sites and Web pages; and all similar data that is stored on, utilized on, or transmitted via a computer or computer network, including the Internet.

ESI may be found or stored on laptop or desktop computers (on or off-site, including, potentially, on employees' home computers); network servers or drives; fixed and portable hard drives; floppy drives; thumb drives; flash memory or flash drives; backup "tapes" or drives; CD-ROM; DVD; secure digital ("SD") and similar memory "cards"; cell phones; pagers; PDAs/PIMs; handheld wireless devices (e.g., BlackBerry® or Palm®devices); and iPod®, MP3 and similar mobile digital devices and portable hard drives. Such storage locations or devices fall within the scope of this preservation directive to the extent that the Company or its employees exercise dominion, care, custody or control over the locations or devices.

This letter is sent to inform you of our intent to seek electronic information during the course of discovery, and to put you on notice of your obligation to preserve all such evidence.

We request that you comply with these legal obligations and preserve all potentially relevant electronic or magnetic documents and information.

For evidence preservation purposes, it is necessary that electronic data continue to be preserved in a format that maintains metadata, maintains file searchability, and allows access to formulas (such as those used in spreadsheets). For instance, it is not acceptable to convert word processing document files into "TIFF" files, which maintain an image of the file, but do not preserve hidden data.

For purposes of this letter, metadata is defined as "data about data." that is, the information that is generated when computer files are created, modified, or deleted, or when emails are created, sent, or received, that provides a history of the creation, editing, manipulation, and distribution of such files and emails.

While we will be seeking discovery of all relevant data, please be informed that some items are of particular interest to us and these items will be the subject of initial requests.

We are formally requesting that you place a litigation hold on any and all documents relating to the breach of contract, fraud, unjust enrichment, tortious interference, accounting and civil conspiracy (collectively, the "Breach") between January 1, 2020, and the present date (the "Litigation Hold Period").

Accordingly, you, your affiliates, employees and agents are instructed not to destroy or alter, or cause to be destroyed or altered, any documents relating to the Company during

# Brinen & Associates, LLC

October 25, 2021
Page 3

the Litigation Hold Period. Thus, all evidence, in whatever form, including, but not limited to, all documents and electronically stored information (i.e., any writing, drawing, graph, chart, photograph, sound recording, image, or other data or compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form), must be preserved and a litigation hold must be placed on the same until further notice. This includes, without limitation, document productions, deposition transcripts, exhibits, trial transcripts, hearing transcripts, medical records, expert reports, discovery requests and responses, pleadings, affidavits, declarations, interrogatories, electronic mail, text messages, instant messages, Skype messages, Facebook messages, Twitter messages, Instagram messages, photographs, in hard copy or digital format, videos, audio files, cellular telephones, smartphones, iPhones, iPads, Blackberry devices, handheld devices, tablets, laptops, notebook computers, personal computers, and any or all other electronic storage devices.

You should suspend immediately any document destruction policy that, if not suspended, might result in the destruction of discoverable information.

The suspension should be applied to paper documents and to electronically stored information, including e-mail, voice mail, spreadsheets, power points, and word processing documents.

The suspension also should be applied to all media for storing information in electronic format, including network servers, e-mail servers, workstations, laptops, hand-held devices, compact disks and back-up tapes, that may contain discoverable information.

The suspension of routine and automated document destruction should be aimed at preserving, at a minimum, all paper documents and electronically stored information concerning the dispute, including information that may be maintained on your servers, hard drives, laptops, hand-held devices and any back-up tapes. This information should include, but may not necessarily be limited to, any e-mail, files, records, correspondence, notes or other documents or electronic information related to the dispute.

If you have installed any programs for the automated deletion of e-mail or other electronic files, those programs should be suspended to the extent necessary to prevent the destruction of discoverable information. Back-up tapes potentially containing discoverable information should be removed from routine recycling until further notice.

You should fulfill this duty to preserve from the date of this letter until the resolution of the within dispute with Fometal.

Failure to promptly preserve such evidence, whether intentional or merely negligent, may result in substantial sanctions and/or additional litigation, in addition to the loss of evidence for use in your own claims and/or defenses.

# Brinen & Associates, LLC

October 25, 2021
Page 4

Should you have any questions, please do not hesitate to contact me at the New York office or via electronic mail at jbrinen@brinenlaw.com.

Yours truly,

Brinen & Associates, LLC

Joshua D. Brinen

cc:     Client

JDB:jdb