UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOMETAL S.R.L., *an Italian limited liability company*,<br><br>              Plaintiff,<br><br>         -v.-<br><br>KEILI TRADING LLC, *a Washington limited liability company*, MENDEL LEVITIN *an individual also known as* MENDY LEVITIN, RELIANCE STEEL & ALUMINUM CO., *a Delaware corporation*, ADMIRAL SERVICENTER COMPANY, INCORPORATED, *a Massachusetts corporation*, and O'NEAL FLAT ROLLED METALS *a/k/a* METAL WEST LLC, *a Colorado limited liability company*,<br><br>              Defendants. | 22 Civ. 1928 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Fometal S.R.L. brings this action against a group of individual and corporate defendants who are alleged to have schemed to obtain aluminum steel from Plaintiff without paying for it. In its operative complaint, Plaintiff alleges claims for, *inter alia*, breach of contract, fraud, conversion, unjust enrichment, tortious interference, civil conspiracy, account stated, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

Several defendants have failed to appear in this action; those that have appeared have moved for dismissal of the case as to them. Defendants O'Neal Flat Rolled Metals a/k/a Metal West LLC ("Metalwest") and Reliance Steel & Aluminum Co. ("Reliance") each move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. These

same defendants, along with Defendant Admiral Servicenter Company ("Admiral") (collectively, the "Moving Defendants"), also move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the Court grants in part and denies in part the motions to dismiss, ultimately dismissing the claims against Metalwest and Reliance on jurisdictional grounds, and dismissing all but the contract claims against Admiral on pleading adequacy grounds.

## BACKGROUND[1]

### A.    Factual Background

This action arises out of sales transactions for aluminum steel between Plaintiff and Defendants Keili Trading LLC ("Keili Trading"), Mendel Levitin

---

[1] This Opinion primarily draws its facts from the First Amended Complaint ("FAC" (Dkt. #98)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies, as appropriate, on certain exhibits attached to the FAC, each of which is incorporated by reference in the FAC, and on certain materials addressing jurisdictional issues that are attached to the parties' submissions. *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference in or integral to a complaint); *see also Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) ("[I]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." (citation omitted)).

For ease of reference, the Court refers to Defendant Metalwest's memorandum of law in support of its motion to dismiss as "Metalwest Br." (Dkt. #101); to Defendant Reliance's memorandum of law in support of its motion to dismiss under Fed. R. Civ. P. 12(b)(2) as "Reliance Br." (Dkt. #104); and to Defendants Admiral's and Reliance's joint memorandum of law in support of their motion to dismiss under Fed. R. Civ. P. 12(b)(6) as "Admiral Br." (Dkt. #105). The Court refers to Plaintiff Fometal S.R.L.'s opposition submissions to these motions using the convention "Pl. [Moving Party] Opp." (Dkt. #106-108). Finally, the Court refers to Metalwest's reply memorandum as "Metalwest Reply" (Dkt. #109); to Reliance's reply memorandum as "Reliance Reply" (Dkt. #110); and to Admiral's and Reliance's joint reply memorandum as "Admiral Reply" (Dkt. #111).

("Levitin"), and Admiral.  Plaintiff is a foreign business corporation located in Teramo, Italy, that supplies aluminum steel to customers in Europe and the United States.  (FAC ¶ 1).  Defendant Keili Trading is a Washington corporation engaged in the global sourcing of metal products in North America, Europe, and the United Kingdom.  (*Id.* ¶¶ 3, 83).  Defendant Mendel Levitin is a resident of Washington and the manager and sole member of Keili Trading.  (*Id.* ¶ 4). Defendants Metalwest and Admiral are United States-based importers of aluminum steel.  (*Id.* ¶ 40).  Defendant Metalwest is organized under Colorado law, with a principal place of business there.  (*Id.* ¶ 12).  Defendant Admiral is organized under Massachusetts law, with a principal place of business there. (*Id.* ¶ 9).

On or about November 27, 2018, Defendant Keili Trading contacted Plaintiff, purporting to act as a broker for the purchase of aluminum steel for three of its customers: Defendants Admiral and Metalwest, and non-party Primrose Alloys ("Primrose") (collectively, the "Customers").  (FAC ¶¶ 38, 85). Keili Trading then entered into agreements with Plaintiff for "identical" orders "on behalf of [those] three customers for delivery of pallets of aluminum sheets."  (*Id.* ¶ 86).  Although the Customers were listed as consignees, only Levitin signed the orders, using the Keili Trading corporate stamp.  (*Id.* ¶¶ 42, 75).

Plaintiff subsequently shipped and delivered the aluminum steel to the Customers.  (FAC ¶ 87).  Metalwest's order of aluminum sheets (the "Metalwest

Goods") was shipped from Porto di Venezia, Italy, to Long Beach, California for a total price of $72,445.28. (*Id.* ¶¶ 96-98). Admiral's orders of aluminum sheets (the "Admiral Goods") were shipped from Naples and Venice, Italy to the Port of New York, New York, for a total price of $151,171.79. (*Id.* ¶¶ 149-151, 160).[2]

Plaintiff received no payment for either the Admiral or the Metalwest Goods. (FAC ¶¶ 88, 94). On February 14, 2019, and August 2, 2019, Plaintiff sent Admiral invoices for the Admiral Goods. (*Id.* ¶¶ 162-163 & Ex. E). On September 28, 2019, Plaintiff sent Metalwest a demand letter requesting payment for Metalwest Goods. (*Id.* ¶ 104 & Ex. C).

On November 29, 2019, Plaintiff filed a claim for compensation with its insurer, Coface Italia S.R.L. ("Coface"). (FAC ¶ 36). Following an investigation, Coface determined that because fraud had been perpetrated by other parties, Plaintiff was required to pursue its claims directly against Admiral and Metalwest. (*Id.* ¶ 37). On September 14, 2021, and October 25, 2021, Plaintiff sent demand and litigation letters to Metalwest, Admiral, Keili Trading, and Levitin; these letters outlined Plaintiff's claims and monies owed to Plaintiff for delivery of the aluminum steel. (*Id.* ¶¶ 237-240).

In the instant litigation, Metalwest admits that it "issued a purchase order to Keili Trading for aluminum steel," but asserts that it "never had any

---

[2]     Because Primrose is not a party to this matter, the details regarding the shipment of and payment for Primrose's order are not recited in the FAC, the motion papers, or this Opinion. (S*ee generally* FAC).

contract" with Plaintiff.  (Metalwest Br. 4).  Admiral admits similarly that it sought to purchase steel from its "broker," Keili Trading, but that it "did not have any contractual relationship with Fometal" and, indeed, that Admiral "paid its broker."  (Admiral Br. 9).

On or about December 14, 2021, approximately three years following the alleged breach, Admiral was acquired by Reliance, a Delaware corporation with a principal place of business in Scottsdale, Arizona.  (FAC ¶ 11; Reliance Br. 5).  While Plaintiff concedes that the aluminum sales transactions at issue did not contemporaneously involve Reliance (*see generally* FAC), it includes Reliance as a party to this action under the theory that Reliance's acquisition of Admiral imputes to it both personal jurisdiction and liability.

## B.   Procedural Background

Plaintiff initiated the instant lawsuit by filing a complaint on March 8, 2022.  (Dkt. #1).  On April 14, 2022, the Moving Defendants filed a letter motion seeking leave to file a motion to dismiss the complaint.  (Dkt. #25).  The Court dispensed with its usual requirement of a pre-motion conference and allowed the parties to proceed to briefing.  (Dkt. #31).  The endorsement also provided Plaintiff with an opportunity to amend its complaint by May 10, 2022, of which opportunity Plaintiff did not avail itself.  (*Id.*).

On June 13, 2022, the Moving Defendants separately filed their motions to dismiss and accompanying memoranda of law.  (Dkt. #47-54).  Plaintiff filed its consolidated opposition to the motions to dismiss on July 11, 2022.  (Dkt.

#57).  On July 25, 2022, Defendants separately filed their replies to Plaintiff's opposition.  (Dkt. #64-66).

On September 23, 2022, Plaintiff filed its motion for default judgment as to Keili Trading and Mendel Levitin (collectively, the "Defaulting Defendants") (Dkt. #68), and the Court entered an order to show cause on September 26, 2022, setting a hearing date of December 1, 2022, (Dkt. #71).  On December 7, 2022, the Court issued a Default Judgment against the Defaulting Defendants as to Plaintiff's breach of contract claim.  (Dkt. #84).  In reviewing the complaint, the Court found that Plaintiff had failed to plead adequately its civil conspiracy claim, its veil-piercing theory of liability, and its RICO claim as to the Defaulting Defendants.  (*Id.*).  Additionally, the Court found that Plaintiff's claims for fraud, conversion, unjust enrichment, vicarious liability, tortious interference, and account stated "were duplicative of [its] breach of contract claim."  (*Id.*).  Accordingly, Plaintiff's motion for default was denied as to all claims aside from Plaintiff's breach of contract claim.  (*Id.*).

On December 14, 2022, the Court stayed the case following the parties' request to engage in settlement discussions.  (Dkt. #88).  Thereafter, the case was referred to Magistrate Judge Ona T. Wang.  The parties subsequently participated in two settlement conferences on January 31, 2023, and March 9, 2023, but were unable to reach a settlement.

On April 3, 2023, the parties filed a joint letter requesting that the Court lift the stay in the case.  (Dkt. #96).  In the letter, Plaintiff also requested that it

be given leave to "replead" its civil RICO claim "based on the [C]ourt's comments on December 1, 2022" default judgment hearing.  (*Id.*).  The Court lifted the stay and granted leave for Plaintiff to "amend its civil RICO claim." (Dkt. #97).  Accordingly, the Court dismissed the Moving Defendants' pending motions to dismiss without prejudice and set a briefing schedule for their anticipated renewed motions to dismiss.  (*Id.*).

Plaintiff filed the First Amended Complaint on May 2, 2023.  ("FAC" (Dkt. #98)).  While Plaintiff requested — and the Court granted — leave only to "amend its civil RICO claim," Plaintiff instead proceeded to amend the entirety of its complaint.[3]  The Court expects that Plaintiff will hew more closely to the Court's orders going forward.  That said, because the Moving Defendants have moved to dismiss on the facts as pleaded in the FAC, the Court will accept the FAC as the operative pleading in this matter.

On June 2, 2023, Defendant Metalwest filed its motion to dismiss the FAC based on Rules 12(b)(2) and 12(b)(6).  (Metalwest Br. (Dkt. #101)).  On June 5, 2023, Defendant Reliance filed its motion to dismiss the FAC based on Rule 12(b)(2).  (Reliance Br. (Dkt. #104)).  The same day, Reliance, joined by Defendant Admiral, filed a separate motion to dismiss based on Rule 12(b)(6). (Admiral Br. (Dkt. #105)).

On July 6, 2023, Plaintiff filed three separate oppositions to Defendants' motions to dismiss.  (Pl. Metalwest Opp. (Dkt. #106); Pl. Reliance Opp. (Dkt.

---

[3]     In the FAC, Plaintiff also re-named the Defaulting Defendants as parties.

#107); Pl. Admiral Opp. (Dkt. #108)).  On July 21, 2023, Defendants filed their respective replies.  (Metalwest Reply (Dkt. #109); Reliance Reply (Dkt. #110); Admiral Reply (Dkt. #111)).  The Defaulting Defendants, Keili Trading and Levitin, have yet to appear in this litigation.[4]

## DISCUSSION

### A.   Applicable Law

### 1.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  "A plaintiff must establish the court's jurisdiction with respect to each claim asserted[.]" *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal quotation marks omitted).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation

---

[4]     Plaintiff has already obtained a default judgment against Defendants Keili Trading and Mendel Levitin.  (Dkt. #84).  Because Plaintiff has not sought a new default judgment with respect to the claims in the FAC, the Court takes no position on the merits of the amended claims as to those defendants.

omitted).  In other words, at the pleading stage, "the plaintiff's *prima facie* showing may be established solely by allegations."  *Id.*

A court may consider materials beyond the pleadings in resolving a Rule 12(b)(2) motion, but it must credit the plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs."  *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) ("[W]here the issue is addressed in affidavits, all allegations are construed in the light most favorable to do the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  Even then, the court should "not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]"  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted).

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis.  *See generally Bailon* v. *Pollen Presents*, No. 22 Civ. 6054 (KPF), 2023 WL 5956141, at *4 (S.D.N.Y. Sept. 13, 2023).  *First*, the court must establish whether there is "a statutory basis for exercising personal jurisdiction."  *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  In making this determination, the court "applies the

forum state's personal jurisdiction rules," unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citation omitted). *Second*, the court must decide whether "the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V.* v. *Çukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam) (citation omitted); *accord Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016).

There are "two categories of personal jurisdiction: general and specific personal jurisdiction.  General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity.  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [defendant's] contacts with the forum." *Gucci Am., Inc.* v. *Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks and citations omitted).

### 2.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "draw all reasonable inferences in [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  "In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings,

documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" *Hu* v. *City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels* v. *Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

A complaint will survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B. Analysis

Plaintiff's FAC alleges eleven causes of action relating to its sale of aluminum steel sheets. Plaintiff asserts eight claims against all Defendants, including breach of contract, fraud, conversion, unjust enrichment, account stated, civil conspiracy, and civil violations of RICO. In addition, Plaintiff re-

11

pleads its tortious interference claim and its veil-piercing theory of liability against the Defaulting Defendants.  Finally, Plaintiff's brings a *respondeat superior* theory of liability against Reliance.

Metalwest and Reliance each move to dismiss Plaintiff's claims against it pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  Additionally, they and Admiral seek to dismiss Plaintiff's claims against them for failure to state a claim under Rule 12(b)(6).  The Court begins with the jurisdictional arguments and then turns to the merits of Plaintiff's claims.

### 1.    The Court Dismisses the Claims Against Defendants Reliance and Metalwest for Lack of Personal Jurisdiction

Defendants Reliance and Metalwest argue that Plaintiff's claims should be dismissed because they are not subject to personal jurisdiction in New York. The Court agrees.

The Court first considers whether there is "a statutory basis for exercising personal jurisdiction."  *Marvel Characters, Inc.*, 726 F.3d at 128. Under New York's long-arm statute, contained in New York Civil Practice Law and Rules ("C.P.L.R.") § 302(a), courts may exercise personal jurisdiction over a non-domiciliary who in person or through an agent: (i) "transacts any business within [New York] or contracts ... to supply goods or services in the state"; (ii) "commits a tortious act within the state"; (iii) commits a tortious act outside New York that injures a person within New York, if certain conditions are met; or (iv) owns, uses or possesses real property within New York — but only where

the cause of action arises from these enumerated acts.  C.P.L.R. § 302(a); *see Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

If it finds a statutory basis for personal jurisdiction, the court must then decide whether "the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V.*, 750 F.3d at 224 (citation omitted).  Consistent with due process, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 317 (1945)).  Aside from "an exceptional case," a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state of its: (i) incorporation or (ii) principal place of business.  *Daimler AG* v. *Bauman*, 571 U.S. 117, 137-39 & n.19 (2014); *see also Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

On the other hand, a court may assert specific jurisdiction "over issues that aris[e] out of or relat[e] to the [defendant's] contacts with the forum." *Gucci Am., Inc.*, 768 F.3d at 134 (internal quotation marks and citations omitted).  "Whether specific or general, however, the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process, which requires that any jurisdictional exercise be

13

consistent with 'traditional notions of fair play and substantial justice.'"

*Brown*, 814 F.3d at 625 (citing *Int'l Shoe Co.*, 326 U.S. at 316).

### a. The Court Lacks Personal Jurisdiction over Defendant Reliance

While acknowledging that Reliance was not involved in the underlying transactions, Plaintiff advances a myriad of arguments to impute personal jurisdiction to Reliance, including arguments that (i) Reliance's December 14, 2021 acquisition of Admiral confers general jurisdiction over Reliance; (ii) Reliance "avails itself of the laws of the state of New York" by "trading on the New York Stock Exchange"; (iii) Admiral acted as Reliance's "agent"; and (iv) Reliance is Admiral's "successor in interest." (*See, e.g.*, FAC ¶¶ 11, 29-30, 166-168).[5] Taking each argument in turn, the Court concludes that, even when the allegations are construed in the most favorable light, Plaintiff fails to make a *prima facie* showing of personal jurisdiction as to Reliance.

Plaintiff's opening argument is that the Court has general jurisdiction over Reliance because it "acquired Defendant Admiral and [therefore] acquired Defendant's Admiral's regional offices in Albany in the State of New York where

---

[5]    In its opposition brief, Plaintiff argues for the first time that the Court has personal jurisdiction "based on a valid RICO claim." (Pl. Reliance Opp. 15). These allegations are nowhere to be found in the relevant section of Plaintiff's FAC. (*See* FAC ¶¶ 20-31). *Cf. Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Even assuming that such jurisdictional allegations were pleaded in the FAC, Plaintiff "cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants" if the RICO claim is ultimately dismissed on other grounds. *Cont'l Petroleum Corp.* v. *Corp. Funding Partners, LLC*, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012). Because the Court finds that Plaintiff has failed to plead a viable RICO claim (*see* Section 2(c), *infra*), its argument for personal jurisdiction on this basis fails.

14

Plaintiff's aluminum shipment was taken to." (FAC ¶ 29).  As the Second Circuit has recognized, however, "*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases." *Brown*, 814 F.3d at 623, 627.

In this case, neither Admiral nor Reliance is incorporated in New York, nor does either party maintain its principal place of business in New York. Admiral is a corporation organized under the laws of the State of Massachusetts with a principal place of business there.  (FAC ¶ 9).  Reliance is incorporated in Delaware and maintains its principal place of business in Scottsdale, Arizona.  (*Id.* ¶ 11; Reliance Br. 5).  Even assuming *arguendo* that Admiral's activities in New York could be fully attributed to Reliance, Reliance's contacts with New York still "fall well below the high level needed to place the corporation 'essentially at home'" in New York.  *Brown*, 814 F.3d at 623, 627; *see also Daimler*, 571 U.S. at 758-61 (rejecting argument that a subsidiary's activities rendered a foreign corporation "essentially at home" in California); *Hertz Corp.* v. *Friend*, 559 U.S. 77 (2010).[6]

---

[6]     In its opposition submissions, Plaintiff raises additional new arguments for personal jurisdiction, including arguments that: (i) Reliance "continued to avail itself of the forum of New York through its acquisition of not only Admiral, but … of another entity, Rotox Metals Inc.," which is headquartered in Brooklyn, New York (Pl. Reliance Opp. 9), and (ii) "Reliance trades under Defendant Admiral's name after the acquisition" and "operates out of Defendant Admiral's regional offices" in New York (*id.* at 8).  It is true that a court reviewing a motion to dismiss for lack of personal jurisdiction can consider materials outside of the pleadings.  *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) ("[I]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid

Undeterred, Plaintiff argues that the Court has specific jurisdiction over Reliance under several alternative theories.  *First*, Plaintiff maintains that Reliance "avails itself to the laws of the state of New York by virtue of [its] status as a publicly traded corporation trading on the New York Stock Exchange" (the "NYSE").  (FAC ¶ 30).  Notably, however, the Second Circuit has explained that "the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making [Securities and Exchange Commission] filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."  *Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) (citations omitted).  Here, Plaintiff's claims are unrelated to Reliance's listing on the NYSE.  (*See generally* FAC).  Thus, Plaintiff's allegations that Reliance "avails itself" to the laws of New York by virtue of its status on the NYSE are insufficient to establish personal jurisdiction.  *See Stormhale, Inc.* v. *Baidu.com, Inc.*, 675 F. Supp. 2d 373, 376 (S.D.N.Y. 2009) ("[The] mere listing on NASDAQ and ancillary contacts with New York related to that listing do not

---

of the motion; or it may conduct an evidentiary hearing on the merits of the motion." (citation omitted)).  However, even accepting as true Plaintiff's factual assertions, the Court finds that the proffered contacts are still insufficient to render Reliance essentially "at home" in New York.  *Daimler AG* v. *Bauman*, 571 U.S. 117, 137-39 (2014).  Plaintiff's attempt to utilize the same facts to establish jurisdiction in accordance with New York's long-arm statute, C.P.L.R. § 302(a), is equally unavailing (Pl. Reliance Opp. 18-19), as Plaintiff's claims against Reliance do not arise from these enumerated acts, *see Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

allow the Court to exercise personal jurisdiction over [plaintiff's] ... copyright action.").

*Second*, Plaintiff argues that the Court has personal jurisdiction over Reliance based on an "agency theory." (Pl. Reliance Opp. 15). For an agency relationship to exist under C.P.L.R. § 302(a), "a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press Inc.* v. *Angleton,* 649 F.2d 121, 122 (2d Cir. 1981). Here, Plaintiff pleads "on information and belief, Defendant Admiral is an agent of Defendant Reliance." (FAC ¶ 168). However, Plaintiff fails to support its conclusory statement with any facts that Admiral's purchase of aluminum steel goods — three years prior to Reliance's acquisition — was "for the benefit" of Reliance, "with knowledge and consent of" Reliance, or evidence of Admiral's operation under "some control" of Reliance. Thus, this theory of jurisdiction fails. *Charles Schwab Corp.*, 883 F.3d at 86 ("Sparse allegations of agency ... are too conclusory to make a *prima facie* showing of personal jurisdiction.").

*Third*, Plaintiff argues that the Court has personal jurisdiction because Reliance is Admiral's "successor in interest" by "virtue of the corporate acquisition." (FAC ¶ 414). However, "[w]hether the Court has personal jurisdiction over [an alleged successor in interest] ... turns on whether the complaint plausibly alleges successor liability." *Snowbridge Advisors LLC* v. *ESO Capital Partners UK LLP*, 589 F. Supp. 3d 401, 415 (S.D.N.Y. 2022). To

17

state a claim based on successor liability, a plaintiff must plead an exception to the general rule that "a corporation that purchases the assets of another corporation is not liable for the seller's liabilities." *New York* v. *Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). Hence, a buyer of a corporation's assets will be liable as a successor only if "[i] it expressly or impliedly assumed the predecessor's tort liability, [ii] there was a consolidation or merger of seller and purchaser, [iii] the purchasing corporation was a mere continuation of the selling corporation, or [iv] the transaction is entered into fraudulently to escape such obligations." *Schumacher* v. *Richards Shear Co.*, 59 N.Y.2d 239, 245 (2d Cir. 1983). Here, Plaintiff states merely that Reliance acquired a "controlling interest" and "emerged as the owner of interest(s) and operations of Defendant Admiral." (FAC ¶¶ 167, 413). These statements alone are insufficient to plausibly allege successor liability. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Plaintiff also asserts several arguments that are variations on this theme; these arguments include: (i) the purchase of Admiral's assets was a "*de facto* merger,*" and (ii) the "[i]ntent of the acquisition was to defraud the seller's creditors." (Pl. Reliance Opp. 10, 13). Even reading the pleadings liberally and even accepting the factual assertions made in Plaintiff's FAC and opposition papers, the Court does not agree with Plaintiff's efforts to predicate personal jurisdiction on either theory.

The Second Circuit has adopted the doctrine of "*de facto* merger" to "avoid the patent injustice which might befall a party simply because a merger has been called something else." *Cargo Partner AG* v. *Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003). To find a *de facto* merger, courts look to four factors: whether there is (i) continuity of ownership, (ii) continuity of management, (iii) a dissolution of the selling corporation, and (iv) the assumption of liabilities by the purchaser. *Nat'l Serv. Indus., Inc.*, 460 F.3d at 209. New York courts have emphasized that "continuity of ownership is the essence of a merger" and is what helps courts "distinguish a merger from an asset sale." *Id.* at 211 (citation omitted).

Plaintiff fails to demonstrate the requisite "continuity of ownership" between Admiral and Reliance. In the FAC, Plaintiff alleges only that Reliance acquired Admiral on or about December 14, 2021, (FAC ¶¶ 11, 29, 62-64, 76, 166-168, 210, 413-414). In it opposition, Plaintiff adds that Reliance "acquired Defendant Admiral's assets," that Reliance "continues to operate Defendant Admiral's operation from the same physical locations," and that "by virtue of that," Reliance assumed Admiral's "ordinary course of business trade debt." (Pl. Reliance Opp. 11-12, 18). And while Plaintiff incorporates by reference an earlier-filed declaration containing a copy of Reliance's Form 10-K announcing the company's acquisition of Admiral (*see* Dkt. #58, 58-1), the Form 10-K speaks only to the acquisition of Admiral, and says nothing to suggest that the transaction was anything less than arms'-length. Accordingly, Plaintiff fails to

establish liability under a *de facto* merger theory.  *See Nat'l Serv. Indus., Inc.*, 460 F.3d at 215 (finding that "New York would not depart from the traditional common law to find a *de facto* merger in the absence of any evidence of continuity of ownership").

Finally, Plaintiff argues that Admiral "use[d] the transaction with Defendant Reliance as a means of avoiding and sidestepping its debts and liabilities to the plaintiff." (Pl. Reliance Opp. 14).  The only support that Plaintiff can muster for this claim is an email from Admiral's attorney that preceded the filing of this litigation — which email, according to Plaintiff, made "contradictory statements with the express purpose of delaying this lawsuit to allow Defendant Admiral and Defendant Reliance the unimpeded opportunity to consummate the transaction." (*Id.*).  As it happens, the proffered statements are not contradictory: Admiral's counsel's 2021 statements that its agreements were with Keili Trading and not Fometal are substantively indistinct from its 2019 statements about the parties to the relevant contract.  (*Compare* FAC, Ex. F, *with id.*, Ex. A).  More fundamentally, however, Plaintiff fails to allege that Reliance's acquisition of Admiral — undertaken some three years after the alleged breach — was done with the "intent to defraud."  *Schumacher*, 59 N.Y.2d at 245.

For all of these reasons, the Court grants Reliance's motion to dismiss for lack of personal jurisdiction.  Accordingly, the Court does not address the merits of Reliance's Rule 12(b)(6) motion to dismiss.  *See Oliveras* v. *United*

*States*, 371 F. Supp. 3d 105, 113-14 (S.D.N.Y. 2019) (citing *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009)) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions").

### b. The Court Lacks Personal Jurisdiction over Defendant Metalwest

Metalwest also moves to dismiss for lack of personal jurisdiction. As to this defendant, Plaintiff argues that jurisdiction is proper under New York's long-arm statute because Levitin was acting as Metalwest's "agent" in the transactions at issue. (Pl. Metalwest Opp. 6, 11).[7] Even construing the allegations in the light most favorable to the Plaintiff, Plaintiff fails to make a *prima facie* showing of personal jurisdiction.

As noted above, C.P.L.R. § 302(a) provides for personal jurisdiction over a non-New York domiciliary who, in person or through an agent, "transacts business within the state or contracts business within the state" or "commits a

---

[7]     Plaintiff argues in its opposition that the Court has personal jurisdiction as to Metalwest "based on civil conspiracy" and "a valid RICO claim." (Pl. Metalwest Opp. 8-9). Once again, however, Plaintiff "cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants" if the RICO claim is dismissed. *Cont'l Petroleum Corp.*, 2012 WL 1231775, at *8. Similarly, Plaintiff cannot use civil conspiracy to establish personal jurisdiction if it cannot "make a prima facie showing of conspiracy." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y.), *on reconsideration in part*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005), *and aff'd*, 538 F.3d 71 (2d Cir. 2008), *and aff'd*, 714 F.3d 118 (2d Cir. 2013). Because the Court ultimately finds that Plaintiff has failed to plead a viable RICO or civil conspiracy claim (*see* Section 2(c), *infra*), these jurisdictional arguments fail.

tortious act within the state" — but only where the cause of action arises from these enumerated acts.  Even assuming *arguendo* that Levitin was acting as Metalwest's agent, Plaintiff fails to connect its claims to business transactions or tortious acts within New York.

Metalwest is organized under Colorado law and has a principal place of business there.  (FAC ¶ 12).  Keili Trading is located in Seattle, Washington, and Levitin is a domiciliary there.  (*Id.* ¶¶ 3-4).  The Metalwest Goods were purchased via transactions that occurred between an Italian company and a Washington broker, and the Goods themselves were shipped from Italy to California.  (*Id.* ¶¶ 96-98).  As such, Plaintiff has not pleaded any facts that demonstrate a nexus between Metalwest's transactions and New York.  *Brown*, 814 F.3d at 624 ("Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in the state.").  Accordingly, Metalwest's motion to dismiss for lack of personal jurisdiction is granted.  As with Reliance, the Court declines to address the merits of Metalwest's Rule 12(b)(6) arguments.[8]

---

[8]     Because the Court lacks a statutory basis for exercising personal jurisdiction over Reliance or Metalwest, it need not reach the issue of whether the exercise of personal jurisdiction over either defendant would comport with the Due Process Clause of the United States Constitution.  *See Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 41 (2d Cir. 2010) ("We do not, as a general matter, conduct the due process analysis until we have first determined that there is personal jurisdiction under New York's Long-Arm Statute."), *certified question accepted*, 15 N.Y.3d 744 (2010), *and certified question answered*, 16 N.Y.3d 295 (2011).

2.   **The Court Dismisses All Claims Against Defendant Admiral for Failure to State a Claim Apart from Plaintiff's Breach of Contract Claims**

Having dismissed the claims against Defendants Reliance and Metalwest for lack of personal jurisdiction, the Court only considers the merits of Plaintiff's claims against Defendant Admiral, the one appearing defendant that acknowledged the Court's personal jurisdiction over it.  The FAC contains eight causes of action against Admiral: (i) breach of contract under the United Nations Convention on Contracts for the International Sale of Goods (the "CISG"); (ii) common-law breach of contract; (iii) fraud; (iv) conversion; (v) unjust enrichment; (vi) account stated; (vii) civil conspiracy; and (viii) civil violations of RICO.  For the reasons stated in the remainder of this section, the Court dismisses all of Plaintiff's claims against Admiral other than its claims for breach of contract.

a.   **Plaintiff Plausibly Alleges a Claim for Breach of Contract Against Admiral**

The FAC contains two causes of action for breach of contract against Admiral: one under the CISG and the other under common law.  (FAC ¶¶ 25-26).  As an initial matter, the Court notes that both causes of action implicate the same legal analysis.  The CISG is a multilateral treaty between several sovereign states, including the United States and Italy.  *Delchi Carrier SPA* v. *Rotorex Corp.*, 71 F.3d 1024, 1028 (2d Cir. 1995).  It provides a private right of action enforceable in federal court.  *Id.*, *see also Hanwha Corp.* v. *Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426, 430 (S.D.N.Y. 2011).  Among other

things, the CISG provides for damages where there is a breach of contract involving the sale of goods.  CISG art. 74, *reprinted in* 15 U.S.C. App.  "Because caselaw interpreting the CISG is relatively sparse," courts are "authorized to interpret it in accordance with its general principles."  *Hanwha Corp.*, 760 F. Supp. 2d at 430.

To state a claim for breach of contract, a plaintiff must allege four elements: "[i] the existence of a contract, [ii] performance of the contract by the plaintiff, [iii] breach by the defendant, and [iv] damages suffered as a result of the breach."  *Ebomwonyi* v. *Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020), *aff'd*, No. 20-3344, 2022 WL 274507 (2d Cir. Jan. 31, 2022) (summary order).  While these elements may have been adequately pleaded as to Keili Trading, Admiral argues that Plaintiff cannot maintain a cause of action for breach of contract against it under either theory because Admiral was neither a party nor a signatory to any contract with Plaintiff.  (Admiral Br. 3, 7 (noting that Plaintiff "fails to allege the existence of a contract between it and … Admiral")).[9]  Plaintiff counters, however, that "Keili [Trading] sign[ed] the purchase order on behalf of, and as the agent of Defendant Admiral," such that Admiral is liable for the non-payment.  (Pl. Admiral Opp. 7).[10]  At this stage of the litigation, the Court is constrained to agree with Plaintiff.

---

[9]    Keili Trading is a signatory to the agreements for aluminum steel with Plaintiff (*see* FAC ¶ 75); the goods were delivered to the intended recipient in accordance with the contract (*see id.* ¶ 87); and Plaintiff was never paid for the goods, causing it to suffer damage from the non-payment and expenses in transporting the goods (*see id.* ¶ 141).

[10]   Plaintiff also asserts a theory of liability under the third-party beneficiary doctrine.  (Pl. Admiral Opp. 4-7).  But while it is well-established under New York law that a third-

A plaintiff "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity" of contract. *Yucyco, Ltd.* v. *Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (quotation omitted).  However, "under New York law, when an agency relationship is established, the principal will be liable to third parties for the acts of its agent that were within the scope of the agent's actual or apparent authority."  *Amusement Indus., Inc.* v. *Stern*, 693 F. Supp. 2d 327 (S.D.N.Y. 2010); *see also Minskoff* v. *Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).  To survive a motion to dismiss, a plaintiff must allege facts that, if proved, would show that the plaintiff "reasonably believed that [the agent] entered into the agreement with [the plaintiff] on behalf of [the principal] and not on its own behalf."  *Dinaco, Inc.* v. *Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003).  This bar is low, as "courts have recognized that to survive a [Rule 12(b)(6) motion to dismiss … on this issue, a plaintiff need only 'raise[ ] a sufficient inference that some sort of agency relationship existed between' the purported principal and agent."  *Amusement Indus.*, 693 F. Supp. 2d at 344 (quoting *Commercial Fin. Servs., Inc.* v. *Great Am. Ins. Co. of N.Y.*, 381 F. Supp.

---

party beneficiary may, under certain circumstances, enforce the contract, the converse is not true, *i.e.*, a party to the contract cannot enforce the contract against the third-party beneficiary.  *Cf. Abraham Zion Corp.* v. *Lebow*, 761 F.2d 93, 103 (2d Cir. 1985) ("[A]s a matter of law, a trustee, unless he is also an agent for the trust beneficiary, cannot subject the beneficiary to personal liabilities." (citing RESTATEMENT (SECOND) OF TRUSTS § 275, cmt. a, b (1959); *id.* § 8, cmt. c)); *see also Arcadia Biosciences, Inc.* v. *Vilmorin & Cie*, 356 F. Supp. 3d 379, 390 (S.D.N.Y. 2019) ("Beginning with New York contract law, it is axiomatic that '[a] contract cannot bind a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the "alter ego" of the party.'" (internal citations omitted)).

2d 291, 302 (S.D.N.Y. 2005)); *cf. Skanga Energy & Marine Ltd.* v. *Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) ("To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority."), *aff'd sub nom. Skanga Energy & Marine Ltd.* v. *Petroleos de Venezuela S.A.*, 522 F. App'x 88 (2d Cir. 2013) (summary order).

Here, the FAC and the exhibits incorporated by reference plausibly allege an agency relationship between Admiral and Keili Trading, such that Keili Trading had at least apparent authority to enter into the agreement with Plaintiff for aluminum steel on Admiral's behalf.  *First*, Admiral admitted that it sought to purchase — and indeed placed — orders for steel from its broker, Keili Trading.  (Admiral Br. 9).  *Second,* Plaintiff pleads that Keili Trading purportedly held itself out as a broker to supply aluminum steel to its customer, *i.e.*, Admiral.  (FAC ¶¶ 38, 85).  *Third,* Admiral was listed as a consignee (and its address listed as the intended destination) on the confirmation order for three shipments of steel.  (*See id.*, Ex. A, B).  And *finally*, Admiral received the goods and accepted delivery.  (Admiral Br. 9).

Although the parties may later uncover evidence through discovery that rebuts the existence of an agency relationship, Plaintiff has satisfied its burden at this early stage of litigation.  *See Harte* v. *Ocwen Fin. Corp.*, No. 13 Civ. 5410 (MKB) (RER), 2016 WL 1275045, at *8 (E.D.N.Y. Mar. 31, 2016) ("Discovery

may clarify the relationship between [the purported principal and agent entities], but at this stage, [the p]laintiff has satisfied her burden.").  Thus, the Court finds that Plaintiff has plausibly alleged Admiral's liability, under both CISG and common-law contract theories, for Keili Trading's nonpayment. Accordingly, the Court denies Admiral's motion to dismiss Plaintiff's breach of contract claims.

> **b.**   **Plaintiff's Claims for Fraud, Conversion, Unjust Enrichment, and Account Stated Are Duplicative of Plaintiff's Breach of Contract Claim**

In addition to the breach of contract claims, the FAC alleges claims for fraud, conversion, unjust enrichment, and account stated against Admiral. For the reasons stated below, these claims are duplicative of Plaintiff's breach of contract claims and are, therefore, dismissed.

"[C]laims are duplicative of one another if they arise from the same facts and do not allege distinct damages."  *NetJets Aviation, Inc.* v. *LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008).  Here, it is readily apparent from the face of the FAC that the claims of conversion, unjust enrichment, and account stated arise out of the same facts as the breach of contract claim.  Taking each count in turn, (i) Plaintiff's conversion count alleges "Defendants exercised unauthorized dominion or control over its aluminum ... [and] never paid Plaintiff for the aluminum" (Pl. Admiral Opp. 11 (citing FAC ¶¶ 153-155)); (ii) Plaintiff's unjust enrichment count alleges "Defendant Admiral conferred a benefit upon Defendants Keili and

Levitin worth ... $151,171.79 ... [and] Defendants Admiral, Keili and Levitin never paid Plaintiff Fometal" (FAC ¶¶ 308-322); and (iii) Plaintiff's account stated count alleges "[p]ursuant to the terms of the purchasing order, Defendant Admiral was obligated to pay Plaintiff the sum of $151,171.79 ... [and] Admiral failed to discharge th[is] payment[] to Plaintiff" (*id.* ¶¶ 397-403).

Likewise, each of Plaintiff's damages allegations stems principally from the damages in connection with the breach of contract claim.  Plaintiff seeks compensatory damages of "no less than one million dollars" for all claims, but solely points to the cost of the contracts — namely, $223,617.07 — as a basis for recovery.  (*See* FAC ¶ 256 (noting in breach of contract claim that "Defendants are liable to Plaintiff in the sum of ... $223,617.07), ¶ 272 (same), ¶ 302 (same for conversion claim), ¶ 322 (same for unjust enrichment claim)).  While the remaining claims (common-law fraud and account stated) request "damages to be determined at trial" (*id.* ¶¶ 285, 410), the injury and harm resulting therefrom are all centered around and caused by the alleged breach of contract claim and, as such, are duplicative.  *See Purchase Partners, LLC* v. *Carver Federal Sav. Bank*, 914 F. Supp. 2d 480, 498-99 (S.D.N.Y. 2012).

Because these claims are duplicative of Plaintiff's breach of contract claim, they must be dismissed.  *See Pro. Merch. Advance Capital, LLC* v. *C Care Servs., LLC*, No. 13 Civ. 6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y.

July 15, 2015) (dismissing plaintiff's unjust enrichment and account stated claims as duplicative of its breach of contract claim where "there [was] an enforceable agreement and the same damages [were] sought"); *Media Tenor Int'l AG* v. *Medco Health Sols., Inc.*, No. 13 Civ. 7223 (DLC), 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) ("If plaintiff can prove an enforceable contract, then it will be able to recover under [that] cause of action, and the account stated claim can be dismissed." (internal quotation marks omitted)); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 327 (S.D.N.Y. 2010) ("Where a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights.").

A similar analysis imperils Plaintiff's common-law fraud claim. Courts have made clear that "a cause of action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *Nwagboli* v. *Teamwork Transp. Corp.*, No. 08 Civ. 4562 (JGK) (KNF), 2009 WL 4797777, at *5 (S.D.N.Y. Dec. 7, 2009) (internal citations omitted); *accord Astroworks, Inc.* v. *Astroexhibit, Inc.,* 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) ("[A] plaintiff cannot disguise a breach of contract claim as a fraud claim[.]"). "Thus, the 'critical question,' concerning whether separate breach of contract and fraud claims may be maintained, is whether the alleged misrepresentation was 'collateral or extraneous' to the contract in

question." *Nwagboli*, 2009 WL 4797777, at *5 (quoting *Astroworks,* 257 F.

Supp. 2d at 616 (citation omitted)).  Here, the thrust of Plaintiff's fraud

allegations concern Keili Trading and Levitin's alleged representations on behalf

of Admiral that payment would be made in fulfillment of the contracts — the

very "heart of the contract[s] between the parties." *Id.*[11]  As such, the fraud

claim is duplicative of Plaintiff's breach of contract claims and is, accordingly,

dismissed.[12]

### c.     Plaintiff Fails to Plead Civil Conspiracy and Civil RICO Claims

Plaintiff's final group of claims is for civil conspiracy and civil RICO

violations.  The former is easily dismissed, given the absence of a viable

underlying tort cause of action.  As the Court found in the preceding section,

Plaintiff has failed to plead claims for fraud or conversion.  Absent these

claims, "[i]t is textbook law that New York does not recognize an independent

tort of conspiracy." *Sepenuk* v. *Marshall*, No. 98 Civ. 1569 (RCC), 2000 WL

---

[11]     Specifically, the fraud count states "[o]n July 9, and July 11, 2019, Defendant Levitin and Defendant Keili, as Defendant[] Admiral['s] ... agent, represented as fact to Plaintiff that Defendant Keili Trading would send an international high-value wire to Plaintiff Fometal as payment for the [Admiral] Goods delivered by Plaintiff Fometal."  (FAC ¶ 275).

[12]     Plaintiff also argues in support of its fraud claim that Admiral's attorney's statements made on (i) September 30, 2021, that it "would have a valid indemnification defense against Defendant Keili [Trading]" (FAC ¶ 65) and (ii) November 8, 2021, that it "had no contact with Plaintiff Fometal" (*id.* ¶ 278), were false representations.  These allegations are devoid of any specific facts or circumstantial evidence that would demonstrate "a strong inference of fraudulent intent."  *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995), and fail for this reason.

1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citing *Sado* v. *Ellis*, 882 F. Supp. 1401, 1408 (S.D.N.Y. 1995)).

Even if Plaintiff had adequately pleaded an underlying tort, its civil conspiracy claim would independently fail because Plaintiff offers no more than vague and conclusory assertions of Admiral's involvement in the purported conspiracy. *See Fisk* v. *Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (discussing elements of civil conspiracy) ("even if [plaintiff] had adequately pled an independent tort, [plaintiff] has offered no more than conclusory assertions of [defendant's] involvement in the purported conspiracy, and [plaintiff's] civil conspiracy claim must therefore be dismissed"). Here, Plaintiff alleges only that "Defendants conspired with one another to defraud Plaintiff," "collectively participated in unlawful monetary transactions," and that the "conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff." (FAC ¶¶ 342, 349, 346). These statements lack "specific times, facts, and circumstances of the alleged conspiracy" to survive a motion to dismiss. *DDR Const. Servs., Inc.* v. *Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659-60 (S.D.N.Y. 2011) (dismissing a civil conspiracy claim because complaint did not "state any facts indicating the what, when, where, and how of the conspiracy"); s*ee also Ciambriello* v. *County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy ... are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified

by specific instances of misconduct." (quoting *Dwares* v. *City of New York*, 985 F.2d 94, 100 (2d Cir. 1993))).  For these reasons, Plaintiff's claim for civil conspiracy is dismissed.

Plaintiff also fails to plead the elements of a civil RICO claim.  To sustain a private right of action under RICO, a plaintiff must plead "[i] the defendant's violation of [18 U.S.C] § 1962, [ii] an injury to the plaintiff's business or property, and [iii] causation of the injury by the defendant's violation." *Commercial Cleaning Servs., L.L.C.* v. *Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001).  To plead a substantive civil RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must show that a person engaged in [i] conduct [ii] of an enterprise [iii] through a pattern [iv] of racketeering activity." *Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted); *see generally In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 114-27 (S.D.N.Y. 2021).

Here, among other deficiencies, the FAC does not adequately plead the existence of a RICO enterprise.  Plaintiff fails to provide any information whatsoever regarding the Defendants' respective roles in the enterprise.  Each allegation of purported conduct set out in the complaint is attributed to "Defendants" as a group.  The closest that Plaintiff comes to describing the nature of the enterprise is the bare allegation that "[u]pon information and belief," criminal conduct "was committed by Defendants Keili and Levitin in concert with Defendants Admiral and Metal West … and continued by

32

Defendant Reliance when they acquired Defendant Admiral." (FAC ¶ 76). *See First Cap. Asset Mgmt., Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (concluding that plaintiffs did not allege an enterprise where they "failed to provide ... solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise," from which the court "could fairly conclude that its 'members functioned as a unit'" (quoting *United States* v. *Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991))).

Because the FAC does not plausibly allege the existence of a RICO enterprise, its RICO claim fails. *See D. Penguin Bros.* v. *City Nat'l Bank*, Nos. 13 Civ. 41 (TPG), 13 Civ. 706 (TPG), 2014 WL 982859, at *4 (S.D.N.Y. Mar. 11, 2014) ("The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one."), *aff'd*, 587 F. App'x 663, 2014 WL 5293242 (2d Cir. Oct. 16, 2014) (summary order). Indeed, Plaintiff's RICO claims add up to no more than a reiteration of its fraud claim, using slightly different words. *See DLJ Mortg. Cap., Inc.* v. *Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations."); *see also Flexborrow LLC* v. *TD Auto Finance LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (observing that courts have frequently found that plaintiffs wielding the RICO statute "almost always miss the mark" (citing *Gross* v. *Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009)).

**CONCLUSION**

For the foregoing reasons, Defendants Reliance and Metalwest's motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) are GRANTED and Defendant Admiral's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is DENIED as to Plaintiff's claims for breach of contract and GRANTED as to all remaining claims.

The Clerk of Court is ordered to terminate the pending motions at docket number 99 and 102.  Defendant Admiral and Plaintiff are directed to meet and confer, and to submit a proposed case management plan on or before **February 16, 2024.**

SO ORDERED.

Dated:     January 26, 2024
           New York, New York

                                    _____
                                        KATHERINE POLK FAILLA
                                    United States District Judge

34